# In the United States Court of Federal Claims

|  |  |
|---|---|
| _____ ) | |
| ) | |
| ) | |
| Larry Golden ) | Case No. __23-185 C__ |
|  **Plaintiff(s),** ) | |
| ) | Judge _____ |
| **v.** ) | |
| ) | |
| **THE UNITED STATES,** ) | |
| ) | |
|  **Defendant.** ) | |
| Department of Homeland Security ) | |

## COMPLAINT

Your complaint must be clearly handwritten or typewritten, and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space, you may use another blank page.  A fillable pdf is available at http://uscfc.uscourts.gov/filing-a-complaint.

If you intend to proceed without the prepayment of filing fees (*in forma pauperis* (IFP)), pursuant to 28 U.S.C. § 1915, you must file along with your complaint an application to proceed IFP.

1.  **JURISDICTION.**  State the grounds for filing this case in the United States Court of Federal Claims. The United States Court of Federal Claims has limited jurisdiction (*see* e.g., 28 U.S.C. §§ 1491-1509).

Under the Tucker Act, the United States Court of Federal Claims has jurisdiction to adjudicate a claim if the statute, regulation, or constitutional provision that is the basis for that claim  "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained,"  United States v. Mitchell, 463 U.S. 206, 217 (1983), and the plaintiff is  "within the class of plaintiffs entitled to recover under the statute if the elements of [the] cause of action are established,"  Greenlee County, Arizona v. United States, 487 F.3d 871, 876 (Fed. Cir. 2007).  "There is no further jurisdictional requirement that plaintiff make [] additional nonfrivolous allegation[s] that [he] is entitled to relief under the relevant money-mandating source."  Jan's Helicopter Serv., Inc. v. Federal Aviation Agency. 525 F.3d 1299, 1307 (Fed. Cir. 2008)."

## 2. PARTIES

Plaintiff, Larry Golden                              , resides at 740 Woodruff Rd., #1102
                                                                      (Street Address)

Greenville, SC 29607                                  ,   864-288-5605
            (City, State, ZIP Code)                              (Telephone Number)

If more than one plaintiff, provide the same information for each plaintiff below.

## 3. PREVIOUS LAWSUITS. Have you begun other lawsuits in the United States Court of Federal Claims?   ☑ Yes  ☐ No

If yes, please list cases: 13-307C; 1:19-cv-00104-EGB

## 4. STATEMENT OF THE CLAIM. State as briefly as possible the facts of your case. Describe how the United States is involved. You must state exactly what the United States did, or failed to do, that has caused you to initiate this legal action. Be as specific as possible and use additional paper as necessary.

Plaintiff is alleging that before Plaintiff canceled the original claims, an unauthorized Government Agency (DHS); using unqualified patent references (Astrin, Breed, Mostov), was in the process of taking Plaintiff's property; and after Plaintiff added the new substitute claims, the same unauthorized Government Agency (DHS), continued to use the same unqualified patent references (Astrin, Breed, Mostov) continued to take Plaintiff's property.

It is irrelevant and of no consequence what Plaintiff did alone the way to try and maintain possession and ownership of his property; such as cancel and substitute claims. What's relevant here is the fact that the Government (DHS) took Plaintiff's property without paying "just compensation". The Government (DHS) has allegedly taken the three original claims; the three substitute claims; and, 110 dependent claims that depend on either the original claims or the substitute claims.

Since the America Invents Act of 2012, the Government was never considered a "person" authorized to petition the Patent Trials and Appeals Board (PTAB) to invalidate (take) Plaintiff's patent claims. " In Return Mail, Inc. v. United States Postal Service (Supreme Court 2019), in a 6-3 decision, the Supreme Court has decided the U.S. Government is not a "person" capable of petitioning for institution of AIA review proceedings. There is basically no indication that this particular use of " person" was designed to include the U.S. Government."

This case isn't about getting a certificate overturned and patent claims re-instated. It is only about Plaintiff being compensated for the property the Government has allegedly taken.

But-for test. The "but-for" test says that an action is a cause of an injury if, but for the action, the injury wouldn't have occurred. In other words, would the harm have occurred if the defendant hadn't acted in the way they did? If the answer is NO, then the action caused the harm. If the Government (DHS) hadn't acted in the way it did, Plaintiff's injury would not have occurred. The government's actions resulted in a reduction of value of Plaintiff's property, destroyed Plaintiff's competitive edge, and interfered with Plaintiff's "reasonable investment-backed expectations."

**5. RELIEF.** Briefly state exactly what you want the court to do for you.

Plaintiff seeks compensation for Plaintiff' s property the Government (DHS) has allegedly

"taken" , and any other relief the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 31st_____ day of January_____, 2023_____.
     (day)             (month)         (year)

Signature of Plaintiff(s)

Case No: _____

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Larry Golden

Plaintiff, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

(864) 992-7104

| | |
|---|---|
| LARRY GOLDEN,<br><br>*Plaintiff*,<br><br>V.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>*Defendant*. | **Unconstitutional Taking of Property Under the Fifth Amendment Clause of the United States Constitution**<br><br>January 31, 2023 |

## INFORMAL COMPLAINT

1.    Under the Tucker Act, the United States Court of Federal Claims has jurisdiction to adjudicate a claim if the statute, regulation, or constitutional provision that is the basis for that claim "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained," *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and the plaintiff is "within the class of plaintiffs entitled to recover under the statute if the elements of [the] cause of

Received - USCFC

FEB 0 7 2023

action are established," *Greenlee County, Arizona v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007). "There is no further jurisdictional requirement that plaintiff make [] additional nonfrivolous allegation[s] that [he] is entitled to relief under the relevant money-mandating source." *Jan's Helicopter Serv., Inc. v. Federal Aviation Agency*. 525 F.3d 1299, 1307 (Fed. Cir. 2008)."

2.      "In *Horne v. Department of Agriculture*, Chief Justice Roberts, writing for the Court, noted the long history of private property being secured against uncompensated "takings" by the government, beginning with the Magna Carta some 800 years ago."

3.      In further support, Roberts cited a Supreme Court opinion from the late nineteenth century: Nothing in this history suggests that personal property was any less protected against physical appropriation than real property. As the Supreme Court summed up in *James v. Campbell*, 104 U.S. 356, 358 (1882), a case concerning the alleged appropriation of a patent by the Government:

> *"[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser."*

## TUCKER ACT JURISDICTION

4.      In the United States Court of Appeals for the Federal Circuit; LARRY GOLDEN, Plaintiff-Appellant v. UNITED STATES, Defendant-Appellee; Case: 19-2134 Document: 37 Filed: 04/10/2020; Appeal from the United States Court of Federal Claims in No. 1:19-cv-00104-EGB, Senior Judge Eric G. Bruggink. Before O'MALLEY, MAYER, and WALLACH, Circuit Judges. Decided: April 10, 2020. **(Exhibit A)**

2

### *Decision on Golden's IPR-Based Takings Claims' "Jurisdiction"*

"We next turn to Golden's IPR-based takings claims. We first address whether the Claims Court had jurisdiction to hear these claims."

"The government alleges that, "upon further consideration," it has identified a jurisdictional problem that was not recognized below. Appellee's Br. 40. The government argues that the American Invents Act ("AIA")'s creation of *inter partes review* by the Board, followed by judicial review before this court, creates a "'self-executing remedial scheme' that 'supersedes the gap-filling role of the Tucker Act.'" *Id.* at 41 (quoting *United States v. Bormes*, 568 U.S. 6, 13 (2012)). According to the government, the AIA statutory scheme displaces Tucker Act jurisdiction because there is no procedural impediment to presentation of a takings claim to the agency and because the remedial scheme provides for judicial review of constitutional challenges to the agency's action. *Id.* at 43–49"

"The government's argument is without merit. In *Bormes*, the Supreme Court explained that Tucker Act jurisdiction is displaced "when *a law assertedly imposing monetary liability on the United States* contains its own judicial remedies." 568 U.S. at 12 (emphasis added). More recently, the Court explained that, "[t]o determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes.'" *Horne v. Dep't of Agric.*, 569 U.S. 513, 526–27 (2013) (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)). Thus, when there is a precisely defined statutory framework for a claim that could be brought against the United States, the Tucker Act gives way to the more specific statutory scheme."

"[T]he AIA is by no means "a law assertedly imposing monetary liability on the United States." *Borne*, 568 U.S. at 12. Accordingly, we reject the government's argument that the AIA displaced Tucker Act jurisdiction over Golden's IPR-based takings claims."

"As to the merits of Golden's IPR-based takings claims, on appeal, Golden argues, *inter alia*, that the government's actions (including in the IPR) resulted in a reduction of value of his property, destroyed his competitive edge, and interfered with his "reasonable investment-backed expectations." Appellant's Br. 7–8.

3

"Although it does not expressly address the issue here, the government has "not dispute[d] that a valid patent is private property for the purposes of the Takings Clause." *Celgene*, 931 F.3d at 1358. And, as we noted in *Celgene*, the Supreme Court's recent decision in *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365 (2018), is not to the contrary ... The Court admonished that its "decision should not be misconstrued as suggesting that patents are not property for purposes of the Due Process Clause or the Takings Clause."

"We are mindful, of course, of the unique circumstances of the IPR in Golden's case. This IPR was initiated by DHS, a federal agency. Following the cancellation of certain claims of his RE43,990 patent in the IPR, the Supreme Court made clear in *Return Mail* that "a federal agency is not a 'person' who may petition for post-issuance review under the AIA." 139 S. Ct. at 1867. Golden may argue that, in view of *Return Mail*, the cancellation of the patent claims in an *inter partes review* initiated by the government could be considered an unconstitutional taking under the Fifth Amendment."

## STATUTE OF LIMITATIONS / RIPENESS

5.        Takings actions must be filed within the requisite number of years after the date of the alleged taking. For takings actions against the United States, the limitations period is six years. While statutes of limitations seek to ensure that lawsuits are not filed too late, ripeness doctrine seeks to ensure they are not filed too early. The Supreme Court has developed a ripeness criteria for takings claims—the property owner must have obtained a "final decision" from the regulating authority.

6.  The "Final Written Decision" in Case No. IPR2014-00714, *United States Department of Homeland Security v. Larry Golden* was entered on October 1, 2015. Plaintiff first filed his alleged "unconstitutional taking under the Fifth Amendment" of Plaintiff's property, as a result of the unique circumstances of an *Inter Partes Review* (IPR), petitioned for and initiated by the

Department of Homeland Security, in *Larry Golden v. The United States*, Case No. 1:19-cv-00104-EGB Document 1 Filed 01/17/19 Page 23 ¶¶ 49-67 **(Exhibit B)**

## EQUITABLE TOLLING

7.      Equitable tolling is a common principle of law stating that a statute of limitations shall not bar a claim in cases where the Plaintiff, has shown reasonable good faith conduct, and despite use of due diligence, could not discover the injury until after the Government defaulted on defending against Plaintiff's alleged claim of an "unconstitutional taking under the Fifth Amendment" of Plaintiff's property, as a result of the unique circumstances of an *Inter Partes Review* (IPR) petitioned for and initiated by the Department of Homeland Security.

8.      It has been held that equitable tolling applies principally if the Plaintiff is actively misled by the Defendant (Government) about the cause of action or is prevented in some extraordinary way from asserting his rights.

9.      It has also been held that the equitable tolling doctrine does not require wrongful conduct on the part of the defendant, such as fraud or misrepresentation. 51 American Jurisprudence 2d Limitation of Actions § 174 (2007).

10.      In *Larry Golden v. The United States, Case No. 13-307C*; the Court of Federal Claims never decided whether the Department of Homeland Security (DHS) caused the 'use', 'manufacture by', or 'manufacture for' the United States; Plaintiff's invention described in and covered by a patent of the United States **(Exhibit C)** § 1498(a): "[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the

same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture" 28 U.S. Code § 1498(a). Causal effect:

      11.    "[T]he Department of Homeland Security's (DHS) Science and Technology Directorate (S&T), Cell-All aims to equip your cell phone with a sensor capable of detecting deadly chemicals ... '[o]ur goal is to create a lightweight, cost-effective, power-efficient solution,' says Stephen Dennis, Cell-All's program manager" ... "For years, the idea of a handheld weapons of mass destruction detector has engaged engineers. In 2007, S&T called upon the private sector to develop concepts of operations" ... "[t]oday, thanks to increasingly successful prototype demonstrations, the Directorate is actively funding the next step in R&D—a proof of principle—to see if the concept is workable" ... "three teams from Qualcomm, the National Aeronautics and Space Administration (NASA), and Rhevision Technology are perfecting their specific area of expertise ... Qualcomm engineers specialize in miniaturization and know how to shepherd a product to market. Scientists from the Center for Nanotechnology at NASA's Ames Research Center have experience with chemical sensing on low-powered platforms, such as the International Space Station. And technologists from Rhevision have developed an artificial nose—a piece of porous silicon that changes colors in the presence of certain molecules, which can be read spectrographically" ... "Similarly, S&T is pursuing what's known as cooperative research and development agreements with four cell phone manufacturers: Qualcomm, LG, Apple, and Samsung. These written agreements, which bring together a private company and a government agency for a specific project, often accelerate the commercialization of technology developed for government purposes. As a result, Dennis hopes to have 40 prototypes in about a year, the first of which will sniff out carbon monoxide and fire" ... Stephen Dennis envisions a chemical sensor in every cell phone in every pocket, purse, or belt holster." 2010 Archives: Official website of the Department of Homeland Security Cell-All: *"Super Smartphones Sniff Out Suspicious Substances"* **(Exhibit D)**

12.     Also, in *Larry Golden v. The United States*, Case No. 1:19-cv-00104-EGB
Document 1 Filed 01/17/19 Page 23 ¶¶ 49-67; the Court of Federal Claims never decided
whether the Department of Homeland Security (DHS) caused the alleged "unconstitutional
taking under the Fifth Amendment" of Plaintiff's property, as a result of the unique
circumstances of an *Inter Partes Review* (IPR) petitioned for and initiated by the Department of
Homeland Security. When Plaintiff filed the alleged "unconstitutional taking under the Fifth
Amendment" as a claim for relief in *Larry Golden v. USA* COFC Case No. 1:19-cv-00104-EGB,
for this matter, the Claims Court never considered the claim. **(Exhibit B)**

13.     The Federal Circuit; in the United States Court of Appeals for the Federal Circuit;
*Golden v. United States*; CAFC Case No. 19-2134 Dkt: 37 Filed: 04/10/2020: OPINION, stated:
"… an *inter partes review* initiated by the government could be considered an unconstitutional
taking under the Fifth Amendment." **(Exhibit A)**

14.     "We are mindful, of course, of the unique circumstances of the IPR in
Golden's case. This IPR was initiated by DHS, a federal agency. Following the
cancellation of certain claims of his RE43,990 patent in the IPR, the Supreme Court made
clear in *Return Mail* that "a federal agency is not a 'person' who may petition for post-
issuance review under the AIA." 139 S. Ct. at 1867. Golden may argue that, in view of
*Return Mail*, the cancellation of the patent claims in an inter partes review initiated by the
government could be considered an unconstitutional taking under the Fifth Amendment."

15.     In *Larry Golden v. The United States,* Case No. 13-307C, Dkt. 199 Filed
11/16/20. The Court of Federal Claims never decided whether the Department of Homeland
Security (DHS) caused the alleged "unconstitutional taking under the Fifth Amendment" of
Plaintiff's property, as a result of the unique circumstances of an Inter Partes Review (IPR)
petitioned for and initiated by the Department of Homeland Security. When Plaintiff filed the
alleged "unconstitutional taking under the Fifth Amendment" as a claim for relief in *Larry*

*Golden v. USA* COFC Case No. 13-307C Dkt. 199 Filed 11/16/20, for this matter, the Claims Court never considered the claim. **(Exhibit E—Count 1: Claim for Relief)**

## THE PARTIES

16.     Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business (ATPG Technology, LLC), and residence at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

17.     Defendant, the UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a federal agency; Alejandro Mayorkas, in his official capacity as Secretary of the United States Department of Homeland Security.

## STANDARD(S) FOR REVIEW

18.     But-for test. The "but-for" test says that an action is a cause of an injury if, but for the action, the injury wouldn't have occurred. In other words, would the harm have occurred if the defendant hadn't acted in the way they did? If the answer is NO, then the action caused the harm.

19.     Concurrent causes. Where two separate acts of negligence combine to cause an injury to a third party, each actor is liable. The injury could have been avoided by the elimination of either act of negligence, thus each is a "but for" cause of the injury.

20.     Sufficient combined causes. Where an injury results from two separate acts of negligence, either of which would have been sufficient to cause the injury, both actors are liable. In the United States, the rule of *Summers v. Tice* holds that where two parties have acted

negligently, but only one causes an injury to a third party, the burden shifts to the negligent parties to prove that they were not the cause of the injury.

21.     Substantial factor test. Under the substantial factor test, the court considered whether the defendant's actions were a substantial factor in causing the injury. This test gives the court more leeway to find that multiple parties caused an accident.

22.     Since "but-for" causation is very easy to show and does not assign culpability, there is a test used to determine if an action is close enough to a harm in a "chain of events" to be a legally culpable cause of the harm. This test is called proximate cause, from the Latin *proxima causa*.

23.     Proximate cause.  A proximate cause is an event sufficiently related to an injury that the courts deem the event to be the cause of that injury. There are two types of causation in the law: cause-in-fact, and proximate (or legal) cause. Cause-in-fact is determined by the "but for" test: But for the action, the result would not have happened.

24.     Foreseeability. The most common test of proximate cause under the American legal system is foreseeability. It determines if the harm resulting from an action could reasonably have been predicted.

25.     Threefold Test. A "threefold test" of foreseeability of damage, proximity of relationship and reasonableness was established in the case of *Caparo v Dickman* (1990) and adopted in the litigation between Lungowe and others and Vedanta Resources plc (Supreme Court ruling 2019).

26.     Risk enhancement/causal link. The plaintiff must demonstrate that the defendant's action increased the risk that the particular harm suffered by the plaintiff would occur. If the

action were repeated, the likelihood of the harm would correspondingly increase. This is also called foreseeable risk.

27.     Harm within the risk. The harm within the risk (HWR) test determines whether the victim was among the class of persons who could foreseeably be harmed, and whether the harm was foreseeable within the class of risks. The first element of the test is met if the injured person was a member of a class of people who could be expected to be put at risk of injury by the action.

28.     Due Process: Chairman Hank Johnson: House Committee on the Judiciary Subcommittee on Courts, Intellectual Property, and the Internet; July 211, 2022: "AIA proceedings before the PTAB can involve patents that are worth, sometimes, billions of dollars. For this reason, it is imperative that the parties who go before the PTAB are ensured due process and transparent treatment. But parties can get a fair hearing only if the judges presiding over that hearing are themselves free from bias and undue influence … We have heard, however, troubling reports that APJs are not always free to make decisions in an independent manner based on the evidentiary record and relevant legal authority. Instead—as I anticipate today's hearing will show—APJs are often subject to influence in their decision-making from higher-ups … I anticipate that the GAO's testimony will confirm that some of our concerns about due process and transparency before the PTAB are warranted … In *United States v. Arthrex*, the Supreme Court held that the structure of the PTAB violated the Constitution's Appointments Clause. The Court concluded that the constitutional violation could be remedied by giving the Director the authority to change the outcome of any proceeding by striking the portion of the Patent Act granting exclusive ability to grant ***rehearings*** to the PTAB … Nevertheless, as the Supreme Court observed in Arthrex, a director's unfettered political control over the pre-issuance

decisions of APJs is problematic. And, although the Court appeared to "fix" the Appointments Clause problem, it left open the question of whether Director control violates the Constitution's requirements for due process ...Thus, I believe it is Congress's responsibility to consider whether a legislative fix to the PTAB's structure—one that preserves both due process and transparency for the parties, and freedom from undue influence for the APJs—is needed."

29.     "The Transatlantic Slave Trade ostracized Black inventors from the patent system specifically because of their race, and diverted the profits from Black inventions into white communities that further entrenched racial inequality. This harm constitutes more than a mundane obstacle to patenting; it is a human rights violation that compounded mundane obstacles, resulting in enduring harm and necessitating direct repair. The diversion of profits from Black inventions into white communities hindered Black inventors' ability to defend their ideas and compromised their ability to market and further their inventions. This inquiry fails to acknowledge the duration of the Transatlantic Slave Trade, the routine theft of African-American inventions, and the institutional consequences that uniquely hinder African-Americans." Olivia Constance Bethea (2021). *THE UNMAKING OF "BLACK BILL GATES": HOW THE U.S. PATENT SYSTEM FAILED AFRICAN-AMERICAN INVENTORS*". University of Pennsylvania Law Review Online [Vol. 170: 17]

## NATURE OF THE CASE

30.     The Leahy-Smith America Invents Act (AIA) of 2011 created the Patent Trial and Appeal Board, 35 U. S. C. §6(c), and established three types of administrative review proceedings before the Board that enable a "***person***" other than the patent owner to challenge the

validity of a patent post-issuance: (1) "inter partes review," §311; (2) "post-grant review," §321; and (3) "covered-business-method review" (CBM review), note following §321.

31.     After an adjudicatory proceeding, the Board either confirms the patent claims or cancels some or all of them, §§318(b), 328(b). In addition to AIA review proceedings, a patent can be reexamined either in federal court during a defense to an infringement suit, §282(b), or in an ex parte reexamination by the Patent Office, §§301(a), 302(a).

32.     The Department of Homeland Security (DHS) and the Department of Justice (DOJ), (the "Government") who was defending the DHS in *Larry Golden v. United States* COFC Case No. 1:13-cv-00307, filed a petition on April 30, 2014 at the Patent Trials and Appeals Board (PTAB) for *Inter Partes Review* (IPR). Neither agency was considered a "person" with the legal right to do so:

> 33.     "In *Return Mail, Inc. v. United States Postal Service* (Supreme Court 2019) in a 6-3 decision, the Supreme Court has decided the U.S. Government is not a "person" capable of petitioning for institution of AIA review proceedings. There is basically no indication that this particular use of "person" was designed to include the U.S. Government. The majority also noted the awkwardness: *"Finally, excluding federal agencies from the AIA review proceedings avoids the awkward situation that might result from forcing a civilian patent owner (such as Return Mail) to defend the patentability of her invention in an adversarial, adjudicatory proceeding initiated by one federal agency (such as the Postal Service) and overseen by a different federal agency (the Patent Office)."* **(Exhibit F)**

34.     The Patent Trial and Appeal Board (PTAB) decided, to institute an *Inter Partes Review* (IPR) on 2 of 3 patents, 18 publications, and an Expert's Declaration, that do not antedate the Golden's '990 patent. (Case No. IPR2014-00714):

> 35.     "We instituted an inter partes review of claims 11, 74, and 81 of the '990 patent because Petitioner had demonstrated a reasonable likelihood of showing that these

claims were anticipated by Astrin (Ex. 1002)5 and Breed (Ex. 1004).6 Paper 16. We declined to institute on the grounds based on Mostov (Ex. 1003) because Astrin and Breed addressed all of the claims, and there was no explanation why that ground differed from the instituted grounds ..." Final Written Decision in Case No. IPR2014-00714; Entered: October 1, 2015. **(Exhibit G)**

36.    An *inter partes review* may be instituted upon a showing that there is a reasonable likelihood that the petitioner (DHS) would prevail with respect to at least one claim challenged.

37.    When the PTAB instituted review on October 8, 2014, there was no likelihood that the petitioner (DHS) would prevail with respect to at least one claim challenged, because the asserted references of Astrin, Breed, and Mostov does not antedate Golden's November 26, 2004 Disclosure Document (No. 565732) **(Exhibit H)** filed with the USPTO, and Golden's first patent (No. 7,385,497) priority application filing date of April 5, 2006.

38.    "We next consider Patent Owner's argument that Astrin, Mostov, and Breed are not prior art because the amended claims are entitled to the April 5, 2006 priority date." Mot. to Amend 2–7. Final Written Decision in Case No. IPR2014-00714; Entered: October 1, 2015. **(Exhibit G)**

| Reference | Filing Date | Publication Date | Basis for anticipation |
|---|---|---|---|
| U.S. Patent Application Publication No. 2006/0250235 ("Astrin") | | 11/09/2006 | 102(b) |
| U.S. Patent Application Publication No. 2006/0181413 ("Mostov") | | 08/17/2006 | 102(b) |
| U.S. Patent No. 7,961,094 ("Breed") | 11/29/2007 | | 102(e) |
| *Plaintiff-Appellant's First patent application No. 11/397,118 was filed with the USPTO* | *04/05/2006* | | |

39.     The Disclosure Document Program was a service provided by the United States Patent and Trademark Office (USPTO) that allowed inventors to file a description of their invention with the USPTO in order to establish the date of the invention. The purpose was to establish the date of the invention for the purpose of the then-existing patent law and its "first to invent" rule. [The Disclosure Document (No. 565732) was filed by Golden's patent prosecution Attorney]

40.     Before 2013, the U.S. patent law applied the "first to invent" rule and the Disclosure Document Program was part of that system. A patent was awarded to the inventor who could prove that they were the first to think of the invention and put it into practice. This was true, even if the first inventor [Golden] was not the first to present a patent application **(Exhibit H)**.

41.     *In re DeBaun*, 687 F.2d 459, 214 USPQ 933 (CCPA 1982) (Declaration submitted by DeBaun stated that he was the inventor of subject matter disclosed in the U.S. patent reference of DeBaun and Noll. Exhibits were attached to the declaration showing conception and included drawings DeBaun had prepared and given to counsel for purposes of preparing the application which issued as the reference patent. The court held that … diligence and/or reduction to practice was not required to show DeBaun invented the subject matter. Declarant's exhibits and statement that he conceived the invention first was enough to overcome the pre-AIA 35 U.S.C. 102(e) rejection.).

42.     To this point, after having a conversation with the PTAB Judge(s) on January 9, 2015 [transcript unavailable and the Petitioner did not attend], the PTAB made it quite clear they were not going to recognize Golden's RE43,990 patent priority date as antedating that of Astrin, Breed, and Mostov **(Exhibit I)**.

43.     After the conference, Golden believed: 1) the PTAB Judges had already made up their mines to cancel claims 11, 74, & 81 of the '990 patent; and, 2) he was left with no other

alternative but to cancel claims 11, 74, & 81 of the '990 patent in an effort to save the 110

dependent claims that depend on claims 11, 74, & 81 of the '990 patent **(Exhibit J)**.

44.     In an "Order" filed on 11/28/18 in *Larry Golden v. The United States*, COFC Case

No. 13-307C; eighteen of Plaintiff's patent infringement allegations that only allege infringement

of dependent claims, of the cancelled independent claims 11, 74, & 81 of the '990 patent and

substitute dismissed claims 154, 155, & 156, were dismissed as insufficient **(Exhibit K)**.

45.     Plaintiff has never argued; nor, is Plaintiff arguing against the following: 1)

"[u]nder *Celgene*, subjecting patents to inter partes review proceedings is not an unconstitutional

taking under the Fifth Amendment" ... 2) "under *Celgene*, cancellation of patent claims in inter

partes review cannot be a taking under the Fifth Amendment" ... 3) "cancellation of the claims

in the government-initiated inter partes review cannot be chargeable to the government under

any legal theory".

46.     There's no provision, statute, or law that relieves the Department of Homeland

Security (the "Government agency") from liability, for petitioning the Patent Trials and Appeals

Board (the "Government institution") to cancel claims 11, 74, & 81 of the Golden's '990 patent,

as a "person" not authorized to do so; for petitioning the PTAB to cancel Golden's '990 patent

claims under "102 anticipation" with the use of unqualified references; and, for petitioning the

PTAB to cancel Golden's '990 patent claims under provisions 120, 112, 112(b), and 101 [an IPR

challenge to a patent is limited to provisions 102 &103] **(Exhibit L)**.

47.     Further, there's no provision, statute, or law that relieves the Patent Trials and

Appeals Board (the "Government institution") from liability, for instituting an *Inter Partes*

*Review* (IPR) on 2 of 3 patents [Astrin and Breed], 18 publications, and an Expert's Declaration,

that do not antedate claims 11, 74, & 81 of Golden's '990 patent.

48.     The burden was on Golden to demonstrate by a preponderance of the evidence that the proposed substitute claims were patentable over the prior art [prior act that is still unqualified].

49.     In so doing, Golden sent the substitute claims (154-156) over to the USPTO for examination against the 3 patents of Astrin, Breed, and Mostov; the 18 publications; and, the Expert's Declaration. The USPTO cleared the amended patent claims; "the references do not cover the patent claims as a whole" **(Exhibit M)**.

50.     In addition to the three (3) substitute claims (154-156), the unqualified patent references of Astrin, Breed, and Mostov was used in the prosecution of nine (9) independent claims that was also submitted with patent application 14/021,693 [now issued patent no. 9,096,189] and covered the same invention.

51.     In addition to the three (3) unqualified patent references of Astrin, Breed, and Mostov, the examiner prosecuted the three (3) substitute claims (154-156) against 66 other qualified patent references.

52.     In addition to the eighteen (18) publications, the examiner prosecuted the three (3) substitute claims (154-156) against 30 other publications.

53.     In addition to the "102 anticipation" provision used with the Government's IPR petition, the examiner prosecuted the three (3) substitute claims (154-156) against provisions 101, 102, 103, 112, 112(b), and 120. The three (3) substitute claims (154-156) were cleared by the examiner and the nine (9) independent claims of patent application 14/021,693 was allowed.

54.     The PTAB rejected the USPTO results of the amended claims, but decided, only after the Golden had amended the claims, to drop the references of Astrin and Breed. The PTAB changed the "basis for participation" from a 102(b) to a 102(e) and re-entered Mostov:

16

55.    "Even accepting, for the sake of argument, that the substitute claims are entitled to this earlier priority date, at the very least, Mostov remains prior art under 35 U.S.C. § 102(e) because Mostov's non-provisional filing date is January 30, 2006. Ex. 1003, at [22]. The fact that we did not institute this proceeding on Mostov does not mean it is no longer relevant to the patentability of the substitute claims. In deciding not to institute on Mostov, we did not rule on the merits of Petitioner's case. Dec. to Inst. 28–29. We merely determined that, given the Astrin and Breed references, instituting on Mostov was not a necessary use of resources. We consider Mostov still to be relevant to the patentability of the claims. Thus, Petitioner's arguments regarding the priority date, even if accepted, do not show patentability over Mostov…" [Final Written Decision]

56.    The Golden's "Request for Rehearing" **(Exhibit N)** was filed on 10/24/15 with the PTAB; Case IPR2014-00714.  Request denied **(Exhibit O)**. Mostov's patent provisional filing date is Jan. 28, 2005. Golden's "Disclosure Document" filing date is Nov. 26, 2004.

| Reference | Filing Date | Publication Date | Basis for anticipation |
|---|---|---|---|
| U.S. Patent Application Publication No. 2006/0250235 ("Astrin") | | 11/09/2006 | 102(b) |
| U.S. Patent Application Publication No. 2006/0181413 ("Mostov") | | 08/17/2006 | 102(b) |
| U.S. Patent No. 7,961,094 ("Breed") | 11/29/2007 | | 102(e) |
| *Plaintiff-Appellant's First patent application No. 11/397,118 was filed with the USPTO* | *04/05/2006* | | |
| U.S. Patent provisional filing date is 01/28/2005. Application No. 11/343,560; Patent No. 7,990,270 ("Mostov") | 01/28/2005 | | 102(e) |
| *Plaintiff-Appellant's Disclosure Document filed with USPTO. Disclosure Doc. No. 565732* | *11/26/2004* | | |

## VIOLATION ALLEGED

## Count 1:

## Unconstitutional Taking of Plaintiff's Property Under the Fifth Amendment Clause of the United States Constitution

57.     The Fifth Amendment (Amendment V) to the United States Constitution creates several constitutional rights, limiting governmental powers regarding both criminal procedure and civil matters. It was ratified, along with nine other articles, in 1791 as part of the Bill of Rights. The Fifth Amendment applies to every level of the government, including the federal, state, and local levels, in regard to any "person".

58.     The Supreme Court furthered the protections of this amendment through the Due Process Clause of the Fourteenth Amendment. The Fifth Amendment's Due Process Clause applies to the federal government. The Fifth Amendment also contains the Takings Clause, which allows the federal government to take private property for public use if the government provides "just compensation".

59.     The Supreme Court has interpreted the Fifth Amendment's Due Process Clause to provide two main protections: procedural due process, which requires government officials to follow fair procedures before depriving a person of life, liberty, or property, and substantive due process, which protects certain fundamental rights from government interference.

60.     Since the America Invents Act of 2012, the Government was never considered a "person" authorized to petition the Patent Trials and Appeals Board (PTAB) to invalidate (take) Plaintiff's patent claims. "In *Return Mail, Inc. v. United States Postal Service* (Supreme Court 2019), in a 6-3 decision, the Supreme Court has decided the U.S. Government is not a "person"

capable of petitioning for institution of AIA review proceedings. There is basically no indication that this particular use of "person" was designed to include the U.S. Government."

61.     The Government (DHS) does have the right to "take" Plaintiff's patent claims (property) under the Fifth Amendment Clause of the United States Constitution, provided the Government (DHS) pays "just compensation".

62.     The Supreme Court has developed a ripeness criteria for takings claims—the property owner must have obtained a "final decision" from the regulating authority. When the "Final Written Decision" in Case No. IPR2014-00714, *United States Department of Homeland Security v. Larry Golden* was entered on October 1, 2015, the Government (DHS), who was not a person authorized to petition the PTAB for the "taking" of Plaintiff's property; had taken, for the benefit of the public use, Plaintiff's property without paying "just compensation".

63.     It is irrelevant and of no consequence what Plaintiff did alone the way to try and maintain possession and ownership of his property; such as cancel and substitute claims. What's relevant here is the fact that the Government (DHS) took Plaintiff's property without paying "just compensation".  The Government (DHS) has allegedly taken the three original claims; the three substitute claims; and, 110 dependent claims that depend on either the original claims or the substitute claims.

64.     Plaintiff is alleging that before Plaintiff canceled the original claims, an unauthorized Government Agency (DHS); using unqualified patent references (Astrin, Breed, Mostov), was in the process of taking Plaintiff's property; and after Plaintiff added the new substitute claims, the same unauthorized Government Agency (DHS), continued to use the same unqualified patent references (Astrin, Breed, Mostov) continued to take Plaintiff's property.

Plaintiff's claim became "ripe" when the final decision was entered and plaintiff had not been paid.

65.     But-for test. The "but-for" test says that an action is a cause of an injury if, but for the action, the injury wouldn't have occurred. In other words, would the harm have occurred if the defendant hadn't acted in the way they did? If the answer is NO, then the action caused the harm.

66.     If the Government hadn't acted in the way it did, Plaintiff's injury would not have occurred. The government's actions resulted in a reduction of value of Plaintiff's property, destroyed Plaintiff's competitive edge, and interfered with Plaintiff's "reasonable investment-backed expectations."

67.     This case isn't about getting a certificate overturned and patent claims re-instated. It is only about Plaintiff being compensated for the property the Government has allegedly taken.

68.     Apple refused a license because of the Government's actions **(Exhibit P)**.


## VIOLATION ALLEGED

### Count 2:

## Unconstitutional Taking of Plaintiff's Property Under the Fifth Amendment Clause of the United States Constitution

69.     Under the Tucker Act, the United States Court of Federal Claims has jurisdiction to adjudicate a claim if the statute, regulation, or constitutional provision that is the basis for that claim "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained," *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and the plaintiff is "within the class of plaintiffs entitled to recover under the statute if the elements of [the] cause of

action are established," *Greenlee County, Arizona v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007). "There is no further jurisdictional requirement that plaintiff make [] additional nonfrivolous allegation[s] that [he] is entitled to relief under the relevant money-mandating source." *Jan's Helicopter Serv., Inc. v. Federal Aviation Agency.* 525 F.3d 1299, 1307 (Fed. Cir. 2008)."

70.     The Federal Circuit's decision in *ATI Technologies ULC v. Iancu* (April 11, 2019) highlights that "under 37 CFR 1.131 (Rule 131) for patents and patent applications being evaluated under pre-AIA (America Invents Act) guidelines, a reference that would otherwise qualify as prior art under 35 U.S.C. § 102(e) can be eliminated as prior art ("antedated") if the claimed invention is shown to have been invented before the reference's effective date. Establishing invention for antedating purposes involves showing that the invention was conceived or was reduced to practice before the reference's effective date."

71.     It is irrelevant and of no consequence what Plaintiff did alone the way to try and maintain possession and ownership of his property; such as cancel and substitute claims. What's relevant here is the fact that the Government (DHS) took Plaintiff's property without paying "just compensation". The Government (DHS) has allegedly taken the three original claims; the three substitute claims; and, 110 dependent claims that depend on either the original claims or the substitute claims.

72.     Plaintiff is alleging that before Plaintiff canceled the original claims, an unauthorized Government Agency (DHS); using unqualified patent references (Astrin, Breed, Mostov), was in the process of taking Plaintiff's property; and after Plaintiff added the new substitute claims, the same unauthorized Government Agency (DHS), continued to use the same unqualified patent references (Astrin, Breed, Mostov) continued to take Plaintiff's property.

Plaintiff's claim became "ripe" when the final decision was entered and plaintiff had not been paid.

73.     But-for test. The "but-for" test says that an action is a cause of an injury if, but for the action, the injury wouldn't have occurred. In other words, would the harm have occurred if the defendant hadn't acted in the way they did? If the answer is NO, then the action caused the harm.

74.     If the Government (DHS) hadn't acted in the way it did, Plaintiff's injury would not have occurred. The government's actions resulted in a reduction of value of Plaintiff's property, destroyed Plaintiff's competitive edge, and interfered with Plaintiff's "reasonable investment-backed expectations."

75.     This case isn't about getting a certificate overturned and patent claims re-instated. It is only about Plaintiff being compensated for the property the Government has allegedly taken.

76.     Apple refused a license because of the Government's (DHS) actions **(Exhibit P)**. In a response email, Apple writes: "[f]or example, in IPR2014-00714, we understand from the Final Written Decision that the PTAB held that you had not shown that the three substitute claims 154-156 for RE43,990 were valid over the '*prior art of record*'".

77.     There's no "*prior art of record*", because the patent reference of Astrin, Breed, and Mostov asserted in the IPR by the Government, does not antedate Plaintiff's RE43,990 patent.


# RELIEF

A.  Plaintiff seeks compensation for Plaintiff's property the Government (DHS) has allegedly "taken", and any other relief the Court deems just and proper.

Sincerely,

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

Date: January 31, 2023