# Appendix to Defendant The United States' Motion to Dismiss Plaintiff's Complaint

## TABLE OF CONTENTS

| Document | Page Nos. |
| --- | --- |
| IPR2014-00714, Paper No. 23 (Jan. 13, 2015 Order) | A1 – A5 |
| IPR2014-00714, Paper No. 25 (Jan. 22, 2015 Non-Contingent Motion to Amend) | A6 – A10 |
| IPR2014-00714, Ex. 1025 (Feb. 3, 2015 Telephone Conference transcript) | A11 – A34 |
| IPR2014-00714, Paper No. 35 (Oct. 1, 2015 Final Written Decision) | A35 – A67 |
| IPR2014-00714, Paper No. 37 (Nov. 17, 2015 Decision) | A68 – A76 |
| July 2, 2019 Petition | A77 – A82 |
| June 25, 2020 Decision on Petition | A83 – A91 |
| *Golden v. United States*, Case No. 19-104 C, Dkt. 1 (Jan. 17, 2019 Complaint) | A92 – A144 |
| *Golden v. United States*, Case No. 19-104 C, Dkt. 12 (May 14, 2019 Order) | A145 – A148 |

Trials@uspto.gov                                           Paper 23
Tel: 571-272-7822                            Entered:  January 13, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
Petitioner,

v.

LARRY GOLDEN,
Patent Owner.
_____

Case IPR2014-00714
Patent RE43,990 E
_____

Before LORA M. GREEN, JON B. TORNQUIST, and
KEVIN W. CHERRY, *Administrative Patent Judges.*

GREEN, *Administrative Patent Judge*.

ORDER
Conduct of the Proceeding
*37 C.F.R. § 42.5*

A conference call was held on Friday, January 9, 2015, among

Mr. Larry Golden, who is proceeding *pro se*, and Judges Green, Tornquist,

and Cherry.  By email of January 8, 2015, Petitioner was informed of the

conference call, but did not participate.[1]  We requested a call with the parties

_____

[1] As we were discussing formalities, such as page lengths, we went forward

IPR2014-00714
Patent RE43,990 E

to discuss the Patent Owner Response and the Motion to Amend filed by Mr. Golden on January 7, 2015.

On the call, we informed Mr. Golden that the Patent Owner Response that was filed was over 165 pages long, but that under our rules (37 C.F.R. § 42.24) the Patent Owner Response is limited to sixty (60) pages.  We stated that Mr. Golden should refile the Patent Owner Response to conform to the sixty page limit.

We informed Mr. Golden that there is no presumption of validity in this proceeding.  Moreover, we stated that Mr. Golden should file any exhibits he is relying on in the Patent Owner Response as an exhibit, and that he should also file a list of exhibits identifying the exhibit, as well as the exhibit number.  We noted that, while we are not constraining what Mr. Golden can argue in the Patent Owner Response, he may be best served by focusing on the challenges on which trial was instituted.

As for the Motion to Amend, we noted that the Motion was over 25 pages, but that under our rules (37 C.F.R. § 42.24) it is limited to fifteen (15) pages.  We noted further that Mr. Golden had failed to meet the requirement of conferring with the Board before filing the Motion to Amend Claims, as required by 37 C.F.R. § 42.121(a).  We stated that Mr. Golden should refile the Motion to Amend to conform to the fifteen page limit, but authorized him to file the claim amendments in an appendix to the Motion.

We stated also that it was unclear whether the Motion to Amend was contingent on our finding the claims at issue unpatentable over the challenges brought by Petitioner.  We explained that for a contingent motion

---

in the absence of Petitioner joining the call.

IPR2014-00714
Patent RE43,990 E

to amend, we would look at the motion only if the claims at issue are found
to be unpatentable over the challenges brought by a petitioner.  We
explained further that a non-contingent motion to amend would be addressed
regardless of whether the claims at issue were found to be unpatentable.  In
that regard, we note that Petitioner has the burden of demonstrating that the
claims at issue are unpatentable by a preponderance of the evidence.  If the
Motion to Amend is non-contingent, Mr. Golden is, in essence, abandoning
the claims at issue, and saying that we should only look at the claims as
amended in the Motion to Amend.  Mr. Golden, however, has the burden of
demonstrating that the amended claims are patentable by a preponderance of
the evidence.

    We direct Mr. Golden's to the discussion in *Idle Free Systems, Inc. v.
Bergstrom, Inc.*, for the requirements of a motion to amend claims.  *See*
Decision—Motion to Amend Claims, IPR2012-00027, Paper 26 ("*Idle
Free*").  We further direct the parties to Paper 27 in IPR2012-00005, Paper
19 in IPR2013-00099, and Paper 16 in IPR2013-00088, for additional
guidance as to the requirements for a motion to amend claims.

    Specifically, Mr. Golden has the burden to show a patentable
distinction for each proposed substitute claim over the prior art.  37 C.F.R.
§ 42.20(c); *see also Idle Free* at 6-10.  Specifically, Mr. Golden should make
a representation about the specific technical disclosure of the closest prior art
known to him.  A conclusory statement that no prior art known to him
renders obvious the proposed substitution claim is insufficient.  When
establishing written description support in the specification, Mr. Golden
should make reference to the disclosure as originally filed, rather than to
portions of the issued patent, and provide sufficient explanation in addition

3

IPR2014-00714
Patent RE43,990 E

to citations to the originally filed disclosure.  In addition, if Mr. Golden is relying on any priority documents to establish an effective filing date, he should also point to where support occurs in those priority documents.

We emphasize that, in the absence of special circumstances, a challenged claim can be replaced by only one claim.  37 C.F.R. § 42.121(a)(3).  We note that this conference call meets Mr. Golden's requirement to confer with the Board before filing the motion to amend.  37 C.F.R. § 42.121(a).

We directed Mr. Golden's attention to the PTAB's website, where he can find the Office Trial Practice Guide, the rules that govern these proceedings, as well as representative orders and decisions.  We noted further that Mr. Golden can search proceedings on PRPS to find examples of patent owner responses and motions to amend claims in other proceedings that conform with the Board's rules and practices.

Mr. Golden is required to file a replacement Patent Owner Response and Motion to Amend Claims no later than January 23, 2015.  Finally, we informed Mr. Golden that the original Patent Owner Response and Motion to Amend Claims he filed on January 7, 2014 would be expunged as of that date, that is, on January 23, 2015.

We again urge Patent Owner to retain new counsel because of the possible consequences of this proceeding, as well as its very technical nature.

Accordingly, it is

ORDERED that Mr. Golden is required to file a revised Patent Owner Response that is no longer than 60 pages long;

FURTHER ORDERED that Mr. Golden is required to file a revised

4

IPR2014-00714
Patent RE43,990 E

Motion to Amend that is no longer than 15 pages, except that he may attach
the amended claims in an appendix to the Motion to Amend that does not
count toward the 15 page limit;

FURTHER ORDERED that the revised Patent Owner Response and
revised Motion to Amend Claims are to be filed no later than January 23,
2015; and

FURTHER ORDERED that the Patent Owner Response and the
Motion to Amend Claims filed by Mr. Golden on January 7, 2015, will be
expunged on January 23, 2015.

Petitioner:

Lavanya Ratnam
lavanya.ratnam@hq.dhs.gov

William Washington
William.Washington@tsa.dhs.gov

Patent Owner:

Larry Golden
atpg-tech@charter.net

Paper No. __
Date Filed: January 22, 2015

Filed on behalf of: Larry Golden

By:    Larry Golden, *Pro Se*
          740 Woodruff Rd. #1102
          Greenville, SC 29607
          (864)-288-5605
          Atpg-tech@charter.net

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

UNITED STATES DEPARTMENT OF HOMELAND SECURITY
Petitioner,
v.

LARRY GOLDEN,
Patent Owner.
————————

Case IPR2014-00714
U.S. Patent No. RE043,990
————————

**PATENT OWNER'S NON-CONTINGENT**

**MOTION TO AMEND CLAIMS**

## Non-Contingent

## Motion to Amend Claims

In this non-contingent motion to amend claims the Patent Owner is asking the PTAB to address the substitute claims regardless of whether the claims at issue are found to be unpatentable.

The substitute claim for claim 11 is claim 154; the substitute claim for claim 74 is claim 155; and the substitute claim for claim 81 is 156.

The Patent Owner understands that by abandoning the claims at issue, and saying that the PTAB should only look at the claims as amended in the "Motion to Amend". The Patent Owner also understands the burden of demonstrating the amended claims are patentable by a preponderance of the evidence.

The first step in demonstrating the amended claims are patentable by a preponderance of the evidence is made in the "Patent Owner's Response", the "Patent Owner's Declaration", and, the "Patent Owner's Exhibits".

The second step in demonstrating the amended claims are patentable by a preponderance of the evidence is made when the Patent Owner drafted nine (9) independent claims and submitted the claims to the PTO for examination of the pending patent application [14/021,693]. Three of the independent claims were similar to claim 11 of the '990 reissue patent; three of the independent claims were similar to claim 74 of the '990 reissue patent; and three of the independent claims were similar to claim 81 of the '990 reissue patent.

As required, the Patent Owner submitted to the PTO the references of Astrin, Mostov, and Breed. The Examiner signed off on the three references on 09/01/2014.

The Patent Owner submitted to the PTO the Petitioner's (DHS) "Inter Partes Review"; to include the Expert's Declaration. The Examiner signed off on the Petitioner's documents on 12/24/2014.

As required, the Patent Owner submitted to the PTO all the Petitioner's (DHS) publications submitted with the "Petition for Inter Partes Review". The Examiner signed off on the Petition documents on 12/24/2014.

On 01/20/2015 in an office action, the Examiner writes his opinion as follows: "The references of petitioner DHS such as Exhibit 1005, 1169, US patent No. 5,959,529 and 7,148,484 and US application No. 13/701,449 do not relevant to the independent claims as a whole. They just had one or more elements in the claimed limitations but do not meet as a whole invention".

The invention as a whole must be meet to show a claim is anticipated by the prior art. To view the nine claims submitted with the office action response of the 14/021,693 pending patent application, please go to the "Image File Folder" or to the "Patent Owner's Declaration"; *Exhibit 2003*.

The third step in demonstrating the amended claims are patentable by a preponderance of the evidence is made when the Patent Owner removed from the claims at issue any and all language, terms, clauses and phases that could be argued as new matter. Patent Owner explicitly disclosed devices in the '497 patent that perform the same function and have the same properties as the items removed in claims 11, 74, and 81.  By disclosing in a patent application a device that inherently performs a function or has a property, operates according to a theory or has an advantage, a patent application necessarily discloses that function, theory or advantage, even though it says nothing explicit concerning it.  The application may later be amended to recite the function, theory or advantage without introducing new matter.  *In re Reynolds*, 443 F.2d 384, 170 USPQ 94 (CCPA 1971); *In re Smythe*, 480 F.2d 1376, 178 (USPQ 279 (CCPA 1973). Please refer to the "Patent Owner's Motion to Amend" document for more details.

Patent Owner's date of invention is at least as early as April 5, 2006 which is before the publication dates of Astrin and Mostov, and the filing date of Breed.

The Patent Trials and Appeals Board (PTAB) is invited to contact the undersigned Patent Owner at the telephone number listed below if such a call would in any way facilitate acceptance of this document.

Dated: January 22, 2015

Respectfully submitted,

Larry Golden

By____/Larry Golden/_____

740 Woodruff Road

#1102

Greenville, SC 29607

(864) 228-5605 (phone)

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Patent Owner's "Non-Contingent Motion to Amend Claims" associated with the Response to the Department of Homeland Security's Petition for *Inter Partes* Review is being served on January 22, 2015 by causing it to be sent by e-mail to counsel for Petitioner at the following email addresses:

Lavanya Ratnam (Lavanya.Ratnam@hq.dhs.gov)

William Washington (William.Washington@tsa.dhs.gov)

Dated: January 22, 2015

___/Larry Golden/_____

Larry Golden

740 Woodruff Road

#1102

Greenville, SC 29607

(864) 228-5605 (phone)

A010

Page 1

1

2        UNITED STATES PATENT AND TRADEMARK OFFICE

3                    _____

4        BEFORE THE PATENT TRIAL AND APPEAL BOARD

5    - - - - - - - - - - - - - - - - -x

6    UNITED STATES DEPARTMENT OF
     HOMELAND SECURITY,

7

                         Petitioner,

8            v.

9    LARRY GOLDEN,

10                      Patent Owner.
     - - - - - - - - - - - - - - - - -x

11   Case IPR2014-00714
     U.S. Patent No. RE043,990

12

13                TELEPHONE CONFERENCE

14            Tuesday, February 3, 2015

15                    10:00 a.m.

16

17   Before:

18               HON. LORA GREEN

19               HON. JON TORNQUIST

20               HON. KEVIN CHERRY

21

22

23   Reported by:

24   JEFFREY BENZ, CRR, RMR

25   Job No. 90017

1

2    A P P E A R A N C E S:

3

4         U.S. Department of Homeland Security

5         Attorneys for Petitioner

6              Mail Stop 0205, 245 Murray Lane

7              Washington, D.C.  20528

8    BY:    LAVANYA RATNAM, ESQ.

9              WILLIAM WASHINGTON, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          Telephone Conference

2      THE COURT:  Who do I have for

3  petitioner?

4      MS. RATNAM:  Good morning, Judge.

5  This is Lavanya Ratnam for the petitioner.

6      MR. WASHINGTON:  Good morning, Judge.

7  This is William Washington.

8      THE COURT:  Thank you.

9      And, Mr. Golden, are you on the line?

10      MR. GOLDEN:  Yes, ma'am.

11      THE COURT:  And do we have a court

12  reporter on the line?

13      THE COURT REPORTER:  Yes, indeed.

14      THE COURT:  Petitioner, did you

15  arrange for the court reporter?

16      MS. RATNAM:  Yes, Judge.

17      THE COURT:  And you can submit a

18  transcript of this call in due course?

19      MS. RATNAM:  Yes.

20      THE COURT:  Thank you.

21      It's my understanding that Ms. Ratnam

22  requested this call to discuss multiple

23  issues regarding the responses filed by

24  patent owner.  I would like to start with

25  the motion to amend.

1              Telephone Conference

2        According to petitioner, patent owner

3    filed both a contingent and noncontingent

4    motion to amend claim.  Mr. Golden, when I

5    was going through the file, I actually saw

6    only one amendment, which I think is

7    Exhibit 2020; is that correct?

8        MR. GOLDEN:  Exhibit 2020.  That was

9    the appendix that carried the claims and

10   the claims only.

11       THE COURT:  Right.  But that is the

12   actual claim amendment?

13       MR. GOLDEN:  Yes, ma'am.

14       THE COURT:  Okay.  So then what is

15   Paper 25, and what is Paper 26?

16       MR. GOLDEN:  Well, maybe I was a

17   little confused about it.  The actual

18   motion to amend, as I've looked at the

19   order, I thought that I was to designate

20   explanations on why I was amending and

21   where that information could be found.

22       But in the order on page 3, where it

23   says I should enter a non -- if I wanted

24   to, a noncontingent motion to amend, I

25   didn't know if I needed to do the motion to

Telephone Conference

1                    Telephone Conference

2  amend and the contingent -- noncontingent

3  emphasis separate.

4     So as a cautionary measure for that, I

5  made sure I didn't go over the page limit.

6  Because in Paper 20 -- let me see if -- in

7  opposition -- Paper 27 and Paper 26,

8  Paper 27 --

9     THE COURT:  Paper 27 we're not going

10  to talk about yet, because that was not

11  filed as of January 23.  I'm just talking

12  about Papers 25 and 26.  And Paper 25

13  appears to just be about two pages, and it

14  is designated a noncontingent motion to

15  amend.

16     MR. GOLDEN:  Yes, ma'am.

17     THE COURT:  Okay.  And then Paper 26

18  is entitled motion to amend claims, and

19  there you seem to be arguing the amendment;

20  is that correct?  Why the --

21     MR. GOLDEN:  I made the --

22     THE COURT:  -- claims should be --

23  pardon?

24     MR. GOLDEN:  I was stating why I made

25  the changes.

1          Telephone Conference

2          THE COURT:  Right.

3          MR. GOLDEN:  Well, changes -- yes,

4    ma'am.

5          THE COURT:  So my understanding is

6    that you want this to be a noncontingent

7    motion to amend?

8          MR. GOLDEN:  Yes, ma'am.

9          THE COURT:  You do understand that

10   you're giving up your original claims, and

11   that the burden is now on you to show the

12   patentability of your new claims, correct?

13         MR. GOLDEN:  Yes, ma'am.

14         THE COURT:  So you understand that?

15         MR. GOLDEN:  Yes, ma'am.

16         THE COURT:  Okay.  So, Ms. Ratnam,

17   given that explanation, I think we do only

18   have one actual motion to amend, and we

19   have two papers, one of about two pages and

20   one paper of about thirteen pages, to

21   support that one amendment.  And it has

22   been clarified that it is a noncontingent

23   motion to amend.

24         MS. RATNAM:  Okay.  Judge, so just for

25   my own clarity, so when we respond to

1          Telephone Conference

2    Mr. Golden's documents, we are to respond

3    to this noncontingent motion; is that

4    correct?  I'm sorry if I don't understand

5    what you're saying.

6          THE COURT:  Well, I think he filed two

7    separate papers, but he actually only filed

8    one appendix, so there's only one amendment

9    on the table, and that's Paper 2020.

10          MS. RATNAM:  So for the purposes of

11    our response, we are to assume that

12    Exhibit 2020 is the claim amendment on the

13    table that we are arguing?

14          THE COURT:  Yes.  Because if you look

15    at Papers 25 and 26, there are no actual

16    amendments in there.

17          MS. RATNAM:  Okay.

18          THE COURT:  I understand that it's

19    confusing but I think that's the best.

20          MS. RATNAM:  Okay.  So when we file

21    our response, we will assume that the --

22    the -- the substitute claims are

23    Exhibit 2020?  And --

24          THE COURT:  Correct.

25          MS. RATNAM:  -- and we are to assume

                 Telephone Conference

1    it's not contingent?

2        THE COURT:  Yes.  So, Mr. Golden, you

3    do understand with a noncontingent motion

4    to amend, your patent owner -- is your

5    patent owner response supporting the

6    patentability of new claims?  Because to a

7    certain extent you're arguing the claims as

8    originally presented.

9        And to a certain extent, also when you

10   file a motion, a noncontingent motion to

11   amend, you no longer need a response.  So

12   that's -- I think that's why everybody is

13   confused.

14       MR. GOLDEN:  Well, I didn't know that

15   didn't need a response, but --

16       THE COURT:  I am just trying to figure

17   out, what is your response arguing the

18   patentability of?  Is it arguing the

19   patentability of the claims that were

20   challenged as were originally presented in

21   the patent at issue, or is it arguing

22   the -- the newly amended claim?

23       MR. GOLDEN:  The -- the biggest thing

24   that the response covers is the 120

1          Telephone Conference

2  objection and the 112 objection, and I

3  thought that you -- I thought that the

4  Court would still need an explanation of

5  that, even having filed a noncontingent

6  motion to amend, because I thought that

7  that was still on the table.

8       THE COURT:  Ms. Ratnam, I think at

9  this point the best thing to do is, you can

10 also file a reply to the patent owner

11 response as well as to the opposition to

12 the motion to amend.

13      MS. RATNAM:  Okay, Judge.  So am I to

14 assume that the claims at issue were

15 cancelled and then substituted with those

16 exhibits -- the claims that are presented

17 in the exhibits?

18      THE COURT:  That is my understanding,

19 yes, that Mr. Golden is clear that it's a

20 noncontingent motion to amend.

21      Correct, Mr. Golden?

22      MR. GOLDEN:  Yes, ma'am.

23      THE COURT:  Okay.  So, yes, so I think

24 you only have to argue the claims as

25 amended.  I mean, you only have to argue

1        Telephone Conference

2  the claims as amended.  Let's make that

3  clear.

4     Mr. Golden has stated several times

5  for the record it is a noncontingent motion

6  to amend.  We did explain that in our

7  order, so I think we have done our best to

8  apprise Mr. Golden of the risks of taking

9  that position.

10     MS. RATNAM:  Okay.  Thank you for the

11  clarity, Judge.

12     THE COURT:  Now, let's move to the

13  issue of the deposition.  It's my

14  understanding, Mr. Golden, that you filed a

15  declaration of patent owner, which is

16  Exhibit 2003?

17     MR. GOLDEN:  Yes, ma'am.

18     THE COURT:  Okay.  When I looked

19  through your response -- and correct me if

20  I'm wrong -- I only saw that you referenced

21  that exhibit once in your response.  And I

22  do also notice that your page numbers in

23  your response aren't numbered, which makes

24  these more difficult.

25     But what I see is, the only thing that

1               Telephone Conference

2 you cite that exhibit for is for the nine

3 claims submitted with the office action

4 response of the 14021693 pending patent

5 application.

6       MR. GOLDEN:  In the declaration?

7       THE COURT:  I'm looking at your patent

8 owner response that you filed on

9 January 23, 2015, which is Paper 24.

10       MR. GOLDEN:  Yes, ma'am.

11       THE COURT:  When I search that, I only

12 see one reference to Exhibit 2003, which is

13 your declaration.  And I can't point to a

14 page number, because you didn't provide

15 page numbers on the response.

16       MR. GOLDEN:  Okay.

17       THE COURT:  Oh, no, actually where it

18 is, it's in the patent owner's

19 noncontingent motion to amend claims, which

20 would be Paper 25, and it would be one --

21 two pages in.

22       MR. GOLDEN:  Contingent, noncontingent

23 motion to amend?

24       THE COURT:  Paper --

25       MR. GOLDEN:  25?

1                 Telephone Conference

2          THE COURT:  Patent owner's

3    noncontingent motion to amend claims, which

4    would be Paper 25.  And two pages in, in

5    the middle of the page you cite

6    Exhibit 2003, which is your declaration,

7    correct?

8          MR. GOLDEN:  Yes, ma'am.

9          THE COURT:  Okay.  Do you cite your

10   declaration anyplace else in the responses

11   that you filed on January 23?

12         MR. GOLDEN:  It's cited in the actual

13   patent owner response.

14         THE COURT:  It is?

15         MR. GOLDEN:  Yes, ma'am, there is --

16   because, for instance, I have a section in

17   there --

18         THE COURT:  Can you point me to the

19   pages?

20         MR. GOLDEN:  Let me give you the first

21   title to it.

22         THE COURT:  The reason I ask is, and

23   maybe this will clarify, petitioner does

24   have a right to depose you if you file a

25   declaration.

1          Telephone Conference

2      MR. GOLDEN:  Yes, ma'am.

3      THE COURT:  And you do not have an

4  attorney.  If petitioner does depose you, I

5  would highly suggest you have an attorney

6  represent you during the deposition.

7      It's very hard to be a witness and

8  make your own objections at the same time.

9  And you have to make objections on the

10  record at the time of deposition to

11  preserve them for later use.

12      I can't find in your response where

13  you actually cite your own declaration,

14  except for in your noncontingent motion to

15  amend.  So you basically have two choices.

16  You can be subject to deposition by the

17  petitioner, or we can strike the

18  declaration and then there will be no need

19  to have a deposition.

20      So that's why I'm trying to get to

21  where you actually relied upon that

22  declaration, because if you didn't rely

23  upon it, there's no reason to have a

24  deposition, because we're not going to look

25  at it, and we can just expunge that

1           Telephone Conference

2    exhibit.

3         MR. GOLDEN:  The declaration, just --

4    can I explain, further explain what I

5    actually put in the response?

6         THE COURT:  I understand that.  But if

7    you didn't cite to the declaration in your

8    response, we're not going to go look at

9    that declaration separately.

10         MR. GOLDEN:  Okay.

11         THE COURT:  So you have to actually

12    say, I cite to Exhibit 2003 and this is

13    why, in your response for us to go look at

14    it.  We just don't go looking for exhibits

15    if you don't cite to them in your papers.

16         MR. GOLDEN:  Oh, okay.

17         THE COURT:  Do you understand that?

18         MR. GOLDEN:  Yes, ma'am.

19         THE COURT:  Okay.  So I'm trying to

20    find out if you actually relied upon your

21    response -- your declaration, that

22    Exhibit 2003, in any of the papers that you

23    filed, which would be your patent owner

24    response, your noncontingent motion to

25    amend, and your motion to amend claims.

1          Telephone Conference

2          When I searched, I downloaded it and

3     searched 2003, I only found that you cited

4     to that exhibit once, and that was the

5     noncontingent motion to amend claims, and

6     that was only as to the nine claims

7     submitted with the office action response.

8          MR. GOLDEN:  Okay.

9          THE COURT:  Do you see what I'm

10    saying?

11         MR. GOLDEN:  Yes, ma'am.  It's not

12    needed.

13         THE COURT:  It's not needed?

14         MR. GOLDEN:  Because it's just a

15    longer version of what I had actually put

16    into response.

17         MS. RATNAM:  Your Honor, this is the

18    petitioner.  I think I found one cite in

19    the response that cites Exhibit 2002, the

20    declaration.  It would be on page 43.

21         THE COURT:  Page 43?

22         MS. RATNAM:  Yes.

23         THE COURT:  Okay.  You have better

24    eyes than I do.  But Exhibit 2002 is patent

25    owner's exhibit list.

1         Telephone Conference

2    MS. RATNAM:  Okay.  Perhaps I'm

3 getting confused, because it says patent

4 owner's declaration.

5    THE COURT:  Yes, it does say that.

6 But I think even at page 43, he doesn't --

7 Mr. Golden does not explain very much,

8 doesn't point to any places in his

9 declaration.

10    I think at this point the easiest

11 thing to do, if you are amenable, is just

12 to expunge Exhibit 2003, and then we won't

13 rely upon it at all, and there will be no

14 need for a cross-examination.

15    MS. RATNAM:  Are you waiting for a

16 response from Mr. Golden?

17    THE COURT:  Well, Mr. Golden says that

18 he didn't need it, so I'm actually waiting

19 for a response from you.

20    MS. RATNAM:  Okay.  Well, I guess we

21 can strike the declaration.  And any

22 reliance maybe we find in the response or

23 the exhibits, Judge, if they can also be

24 stricken, so we don't have to respond to

25 that.

1          Telephone Conference

2          THE COURT:  Yes.  And I think to the

3     extent that the argument was not made in

4     the patent owner response, we won't rely on

5     anything that was said in the declaration

6     to support that argument, any additional

7     argument that we've made in Exhibit 2003.

8          So I'm not going to ignore any

9     argument that was made in the patent owner

10    response, but we're not going to go any

11    further than the argument that was made

12    there.  Do you understand?

13         MS. RATNAM:  Yes, I think so.

14         THE COURT:  Okay.  Mr. Golden, do you

15    understand that?

16         MR. GOLDEN:  Yes, ma'am.

17         THE COURT:  Okay.  So you are okay

18    with expunging Exhibit 2003?

19         MR. GOLDEN:  Yes, ma'am, the

20    declaration.

21         THE COURT:  Your declaration.

22         MR. GOLDEN:  Yes, ma'am.

23         THE COURT:  Okay.  And, Ms. Ratnam,

24    you agree to that as well?

25         MS. RATNAM:  Yes, Judge.

1          Telephone Conference

2          THE COURT:  Okay.  Let's move on to

3    the next issue.  Petitioner objects to the

4    motion to amend response that was submitted

5    January 25, 2015.  Mr. Golden, you are

6    aware that your deadline was January 23,

7    correct?

8          MR. GOLDEN:  Yes, ma'am.

9          THE COURT:  Okay.  And did you get

10   permission from the Board to file this

11   motion to amend response?

12         MR. GOLDEN:  No, ma'am, it was on the

13   weekend, and I...

14         THE COURT:  We have pointed you many

15   times towards our rules and towards getting

16   an attorney.  This is the kind of thing, we

17   can't look at this because it's not part of

18   your response, it was filed after your due

19   date, and you did not receive permission to

20   file it.  So we are going to have to

21   expunge Paper 27.

22         MR. GOLDEN:  Okay.  I have a question.

23         THE COURT:  Sure.

24         MR. GOLDEN:  When you expunge an item,

25   because the only thing that the paper did

1          Telephone Conference

2     was offer an explanation of support, it

3     goes all the way back to my priority

4     application.  When we get down to Due Date

5     5, and I get a chance to respond to the

6     petitioner's response to my response, is

7     that barred from being resubmitted if I

8     need it?

9          THE COURT:  Technically, you are only

10    allowed to respond to things that they

11    bring up in their reply.  So if they don't

12    bring it up in their reply, you can't bring

13    it back in again.

14         MR. GOLDEN:  Okay.

15         THE COURT:  And actually, I -- and I'm

16    sorry, I'm getting confused.  That's only

17    as to the motion to amend claims, which is

18    what I assume that you were talking about.

19         As to the petitioner's reply to your

20    response, petitioner has the last word

21    there as to your -- so petitioner files a

22    petition, patent owner files a patent owner

23    response, and then petitioner gets to

24    reply.  And that is the last word on that,

25    and you cannot file a response to their

1        Telephone Conference

2 reply unless you get permission from the

3 Board first.

4     As to the motion to amend claims, you

5 filed that first, so petitioner now gets to

6 file an opposition to the motion to amend

7 claims, and then you get a limited response

8 to that.  But that is limited to what

9 petitioner brings up in their opposition to

10 your motion to amend claims.  That is the

11 scope of a proper reply.  You can't bring

12 in other issues.

13     MR. GOLDEN:  Okay.

14     THE COURT:  Do you understand?

15     MR. GOLDEN:  Yes, ma'am.

16     THE COURT:  Okay.  So I can't tell you

17 whether or not you can bring that in or

18 not, because it depends on what petitioner

19 brings in in their opposition to your

20 motion to amend claims.

21     MR. GOLDEN:  Okay.

22     THE COURT:  Okay?

23     MR. GOLDEN:  Yes, ma'am.

24     THE COURT:  Okay.  So do you have any

25 other questions about that, Mr. Golden?

1          Telephone Conference

2          MR. GOLDEN:  No, ma'am.

3          THE COURT:  Okay.  Petitioner, are you

4    okay with that?  We'll go ahead and expunge

5    Paper 27?

6          MS. RATNAM:  Yes, Judge.

7          THE COURT:  Okay.  And then I have one

8    last question.  I was looking at the record

9    this morning in preparation for this phone

10   call, and I noticed Exhibit 1, which was

11   filed January 7, 2015, apparently by patent

12   owner -- and I'm assuming that was in

13   support of your original response,

14   Mr. Golden?

15         MR. GOLDEN:  You said Exhibit?

16         THE COURT:  Exhibit 1.

17         MR. GOLDEN:  Exhibit 1.  Yeah, that's

18   where I made a mistake.

19         THE COURT:  Okay.  So I can go ahead

20   and expunge that exhibit?

21         MR. GOLDEN:  Yes, ma'am.  That was

22   part of the record that was supposed to be

23   expunged.

24         THE COURT:  Right.  And I think it

25   just was mistakenly -- I put down the

1             Telephone Conference

2  papers but I didn't put down the exhibit,

3  so I just wanted to clarify and make sure

4  that that was correct, that my

5  understanding was correct that that was

6  filed with the original patent owner

7  response, which we expunged, so I'll go

8  ahead and expunge that exhibit as well.

9      MR. GOLDEN:  Okay.

10     THE COURT:  Ms. Ratnam, do you have

11  any concerns about that?

12     MS. RATNAM:  No, Judge.

13     THE COURT:  Okay.  Mr. Golden, is

14  there anything else?

15     MR. GOLDEN:  No, ma'am.

16     THE COURT:  Ms. Ratnam, is there

17  anything else you would like to discuss at

18  this time?

19     MS. RATNAM:  I just have one question,

20  Judge.  When the Board instituted the

21  proceedings, the Board had made a holding

22  about the priority dates and the effective

23  filing date of the patent at issue.  In the

24  patent owner's response, the patent owner

25  revisits that topic.

Page 23

```
 1              Telephone Conference
 2        Seeing that the Board has already made
 3   a holding regarding that, do I have to
 4   address that again?  You know, ordinarily,
 5   I don't think we'd be visiting it again,
 6   but these proceeding are just a little bit
 7   different than what we normally do.
 8        THE COURT:  Right.  Our decision to
 9   institute is just given the evidence that
10   we have at that time.  Patent owner can
11   come back and argue whether or not they
12   deserve priority back -- back past what we
13   found, given the evidence that we had at
14   the time of institution.  So that's fairly
15   normal for these proceedings.  We don't
16   make a final determination till our final
17   decision.
18        MS. RATNAM:  Okay.  Thank you, Judge.
19   I don't have any more questions.
20        THE COURT:  Okay?  Mr. Golden, did you
21   understand that?
22        MR. GOLDEN:  Yes, ma'am.
23        THE COURT:  Okay.  Thank you both.
24   And this call is adjourned.
25        (Time noted: 10:24 a.m.)
```

Page 24

1

2                C E R T I F I C A T E

3

4   STATE OF NEW YORK      )

5                          )  Ss.:

6   COUNTY OF NEW YORK     )

7

8

9        I, JEFFREY BENZ, a Certified Realtime

10   Reporter, Registered Merit Reporter and Notary

11   Public within the State of New York, do hereby

12   certify that the foregoing transcription, taken at

13   the time and place aforesaid, is a true and

14   correct transcription of my shorthand notes.

15        I further certify that I am neither counsel

16   for nor related to any party to said action, nor

17   in any wise interested in the result or outcome

18   thereof.

19        IN WITNESS WHEREOF, I have hereunto set my

20   hand this 13th day of February, 2015.

21

22                    _____

                           JEFFREY BENZ, CRR, RMR

23

24

25

Trials@uspto.gov
571-272-7822

Paper 35
Entered: October 1, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
Petitioner,

v.

LARRY GOLDEN,
Patent Owner.

_____

Case IPR2014-00714
Patent RE43,990 E

_____

Before LORA M. GREEN, JON B. TORNQUIST, and
KEVIN W. CHERRY, *Administrative Patent Judges*.

CHERRY, *Administrative Patent Judge*.

FINAL WRITTEN DECISION
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2014-00714
Patent RE43,990 E

## I.  INTRODUCTION

The United States Department of Homeland Security ("Petitioner") filed a Petition requesting an *inter partes* review of claims 11, 74, and 81 of U.S. Patent No. RE43,990 E (Ex. 1001, "the '990 patent").  Paper 1 ("Pet.").  Larry Golden ("Patent Owner") timely filed a Patent Owner Preliminary Response.  Paper 10 ("Prelim. Resp.").  In a Decision to Institute (Paper 16, "Dec. to Inst.") issued October 8, 2014, we instituted an *inter partes* review of claims 11, 74, and 81 of the '990 patent.

On January 13, 2015, Patent Owner filed a Patent Owner Response (Paper 24 ("PO Resp.")), a Non-Contingent Motion to Amend (Paper 25 ("Non-Cont. Mot. to Amend")), and a Motion to Amend (Paper 26 ("Mot. to Amend")).[1]  Petitioner filed a Reply to Patent Owner's Response (Paper 31, "Pet. Reply") and an Opposition to the Motion to Amend (Paper 32, "Opp.").  Patent Owner filed a Reply to Petitioner's Opposition.  Paper 33 ("PO Reply").  No oral hearing was held.

With its Petition, Petitioner provided a declaration from Dr. Sriram Vishwanath, dated April 29, 2014.  Ex. 1005 ("Vishwanath Decl.").

---

[1] As explained in our February 4, 2015 order, Patent Owner confirmed in a conference call with the Board that the Motion to Amend is non-contingent. Paper 29, 2 ("We reminded Mr. Golden that, as set forth in our order of January 13, 2015 (Paper 23), with a noncontingent motion to amend, he bears the burden of demonstrating that the claims are patentable, and that he is abandoning the claims on which trial was instituted.  Mr. Golden confirmed again that the motion to amend was a non-contingent motion to amend.").  As we further explained in that order, we are treating Paper 25 and Paper 26 collectively as the Motion to Amend.  *Id.*

2

IPR2014-00714
Patent RE43,990 E

We have jurisdiction under 35 U.S.C. § 6(c). This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73, and addresses issues raised during trial.

In the Motion to Amend, Patent Owner requests cancellation of claims 11, 74, and 81, and substitution of those claims with proposed claims 154–156. Non-Cont. Mot. to Amend 1.[2] For the reasons discussed below, Patent Owner's Motion to Amend is *granted* with respect to the cancellation of claims 11, 74, and 81, and *denied* with respect to the proposed substitution of claims 154–156.

### A.  Related Proceedings

Patent Owner and Petitioner note that the '990 patent is asserted in a proceeding pending before the U.S. Court of Federal Claims, *Golden v. United States*, Case No. 13-307 C. Paper 5, 2; Pet. 1. Patent Owner also identifies a related pending patent application: U.S. Application No. 14/021,693 ("the '693 application"). Non-Cont. Mot. to Amend 1.

### B.  The '990 Patent (Ex. 1001)

The '990 patent is a reissue of U.S. Patent No. 7,636,033 ("the '033 patent"). Ex. 1001, at [64]. The '033 patent issued from U.S. Application No. 12/155,573 ("the '573 application), which was filed on June 6, 2008. *Id.* The '573 application, in turn, was a continuation-in-part of U.S. Application No. 11/397,118 ("the '118 application") that was filed on April 5, 2006. *Id.* at [63].

---

[2] Paper 24 has no page numbers. We treat the first page after the caption page as page 1 and number the pages consecutively from there.

IPR2014-00714
Patent RE43,990 E

The '990 patent relates generally to a multi-sensor detection and lock disabling system for detecting agents, such as, chemical, biological, and radiological agents in, for example, cargo containers, shipping containers, and tractor trailers. *Id.* at col. 3, ll. 16–26, 37–41. Specifically, one embodiment of the system of the '990 patent includes detector cases for holding interchangeable detectors. Ex. 1001, Abstract. The detectors sample for chemical, biological, and radiological compounds. *Id.* Each detector case is disposed in, or upon, a monitored product, such as a shipping container or tractor trailer. *Id.* If a specific nuclear, chemical, or other agent is detected, alarm indicators on the detector case light up, and the detector case transmits information to a monitoring computer. *Id.* The detector case may lock or unlock the monitored product by communicating with a lock disabler in the container or may perform other actions based on instructions received directly from the monitoring site. *Id.*

Figure 16 of the '990 patent is reproduced below:



**Fig. 16**

4

Figure 16 is representation of an embodiment of the multi-sensor detection system of the '990 patent.

Figure 16 shows an embodiment of the multi-sensor detection and lock system that incorporates satellite 136 for signal receipt and transmission from vehicle 130, in which the detector system is placed, to a monitoring site with monitoring equipment 138.  Ex. 1001, col. 11, ll. 1–22.

### C. Proposed Substitute Claims

In the Motion to Amend, Patent Owner proposes to add substitute claims 154–156.  Proposed substituted claims 154–156 are reproduced below, with bracketed, italicized subject matter indicative of subject matter deleted from challenged claims 11, 74, and 81 and underlined subject matter indicative of subject matter added to challenged claims 11, 74, and 81:

154.  (Substitute to claim 11) A communication device of at least one of *[a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site]* the products grouped together by common features in the product groupings category of design similarity (e.g., computer terminal, personal computer (PC)) for monitoring products, interconnected to a product for communication therebetween, comprising:

at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, a network processor which is specifically targeted at the networking application domain, or a front end processor for communication between a host computer and other devices;

a transmitter for transmitting signals and messages to at least one of plurality product groups based on the categories of a multi-sensor detection device, a maritime cargo container, *[a cell phone detection device,]* a locking device, a device for stalling and stopping a vehicle, or a building monitoring device;

a receiver for receiving signals, data or messages from at least one of plurality product groups based on the categories of a multi-sensor

5

detection device, a maritime cargo container, *[a cell phone detection device,]* a locking device, a device for stalling and stopping a vehicle, or a building monitoring device;

at least one satellite connection, *[Bluetooth connection, WiFi connection,]* internet connection, radio frequency (RF) connection, *[cellular connection, broadband connection,]* long and short range radio frequency (RF) connection, or GPS connection;

the communication device is at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween; and

whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to lock or unlock doors, stall, stop, or slowdown vehicles, activate <u>or</u> deactivate security systems, or activate or deactivate multi-sensor detection systems *[, or to activate or deactivate cell phone detection systems]*;

*[wherein, the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories;]*

wherein at least one satellite connection, *[Bluetooth connection, WiFi connection,]* internet connection, radio frequency (RF) connection, *[cellular connection, broadband connection,]* long and short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the communication device and transceivers of the products.

\*            \*            \*

155.  (substitute to claim 74)  A built-in *[embedded]* multi sensor detection system for monitoring products with a plurality of sensors detecting at least one chemical, biological, radiological, nuclear, explosive, human, contraband agent;

comprising at least one built-in *[embedded]* sensor for detecting at least one of the following: motion, perimeter, temperature, tampering, breach, and theft;

comprising a built-in *[embedded]* sensor array or fixed detection device into the product that detects an agent that includes at least one

6

of a chemical agent, a biological agent, a nuclear agent, an explosive agent, a human agent, contraband, or a radiological agent; and

wherein, when an alarm occurs, the built-in *[embedded]* multi sensor detection system communicates the alarm by way of at least one of, product-to-product, product-to-satellite, *[product-to-cellular]*, product-to-long or short range radio frequency, product-to-radio frequency (RF), product-to-internet, *[product-to-broadband, product-to-smartphone or cell phone,]* product-to-monitoring site *[or central controlling station, product-to-WiFi or WiMax]*, product-to-authorized persons, *[product-to-handheld,]* or product-to-laptop or desktop.

*          *          *

156.  A multi-sensor detection system for monitoring products and for detecting at least one explosive, nuclear, contraband, chemical, biological, human, or radiological agents and compounds, comprising:

a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within a multisensor detection device

monitoring equipment *[located at a determinate site, comprising at least one of plurality product groups based on the categories of a computer, laptop, notebook, PC, handheld, reader, cell phone, PDA or smart phone]* <u>of at least one of the products grouped together by common features in the product groupings category of design similarity (e.g., computer terminal, personal computer (PC))</u> for the receipt and transmission of signals therebetween;

*[at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom;]*

at least one satellite capable of transmitting signals to the monitoring equipment *[and receiving signals from the monitoring equipment]*;

*[at least one satellite or at least one cell phone tower capable of two-way signal communication between the multi sensor detection device and the monitoring equipment;]*

7

IPR2014-00714
Patent RE43,990 E

at least one *[modem]* transceiver for short *[and/or]* and long range radio frequency communication with the monitoring equipment; and at least one internet connection capable of communication between the multi sensor detection device and the monitoring equipment;

whereupon a signal sent *[from]* to the multi sensor detection device *[to]* from a satellite; *[or to a cell phone tower;]* or through short *[and/or]* and long range radio frequency; causes a signal to be sent to the monitoring equipment that includes location data and sensor data;

*[wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories;]*

wherein at least one satellite connection, *[Bluetooth connection, WiFi connection,]* internet connection, radio frequency (RF) connection, *[cellular connection, broadband connection,]* long and short range radio frequency (RF) connection is capable of signal communication with the transmitter and the receiver of the *[communication device]* monitoring equipment and transceivers of the products.

Claims Appendix (Ex. 2020), 1–6

## II.  ANALYSIS

### A.  Claim Construction

In an *inter partes* review, we interpret claim terms in unexpired patents according to their broadest reasonable construction in light of the specification of the patent in which they appear.  37 C.F.R. § 42.100(b); *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1276–79 (Fed. Cir. 2015).  There is a "heavy presumption" that a claim term carries its ordinary and customary meaning.  *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).  However, a "claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a

8

IPR2014-00714
Patent RE43,990 E

definition of the disputed claim term in either the specification or

prosecution history." *Id*.

In the Decision to Institute, we construed certain claim terms. Those

constructions are reproduced in the chart below.

| Claim Term | Construction |
|---|---|
| "built in, embedded" (claim 74) | "something is included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the device" |
| "communication device" (claim 81) | "monitoring equipment" |

Dec. to Inst. 11–16.

No party challenges these constructions. Both of these terms were

modified or removed in the amendment. To the extent that any of these

constructions remain relevant after the amendment, we see no reason to

modify them.

We further determined that no explicit construction was necessary for

any other claim terms. Dec. to Inst. 10–11. Based on the record adduced

during trial, we see no need to construe any other terms.

### B. Patent Owner Response

The Patent Owner Response contains arguments directed both to

claims 11, 74, and 81 and to the proposed substitute claims. To the extent

Patent Owner argues the patentability of claims 11, 74, and 81, those

arguments are moot because Patent Owner has cancelled those claims. To

the extent that Patent Owner wishes us to apply the arguments made

regarding claims 11, 74, and 81 to the patentability of the amended claims or

incorporate arguments regarding claims 154–156 from the Patent Owner

9

IPR2014-00714
Patent RE43,990 E

Response into the Motion to Amend, we decline to do so.  Pursuant to
37 C.F.R. § 42.6(a)(3), "[a]rguments must not be incorporated by reference
from one document into another document.  Combined motions, oppositions,
replies, or other combined documents are not permitted."  Patent Owner is
precluded from incorporating arguments regarding the patentability of
claims 11, 74, and 81 from the Patent Owner Response into the Motion to
Amend to address how proposed substitute claims 154–156 are patentable.
Such incorporation by reference circumvents our rule limiting the pages in a
motion to amend to twenty-five pages.  *See* 37 C.F.R. § 42.24(a)(v).
Arguments that are not developed and presented in the Motion to Amend,
itself, are not entitled to consideration.  *See Intellectual Ventures Mgmt.,
LLC v. Xilinx, Inc.*, Case IPR2012-00023, slip op. at 41 (PTAB Feb. 11,
2014) (Paper 35).

    We do address two arguments that Patent Owner raises in the Patent
Owner Response that are applicable to the proceeding generally:  (1) Patent
Owner's contention that Petitioner failed to name all of the real-parties-in-
interest (PO Resp. 6–8); and (2) Patent Owner's contentions regarding
Petitioner's expert (*id.* at 8–11).

*i.*     *Real Party In Interest*

    Petitioner has identified itself, the U.S. Department of Homeland
Security, as the real party in interest.  Pet. 1.  Patent Owner contends that
Petitioner should also have identified "the United States Department of the
Treasury, seven (7) Government Agencies named as indirect infringers [in
Patent Owner's U.S. Court of Federal Claims action], and the at least
twenty-seven (27) third-party direct infringing Companies."  PO Resp. 7.

10

IPR2014-00714
Patent RE43,990 E

A petition for *inter partes* review must identify "all real parties in interest." 35 U.S.C. § 312(a)(2).  The Office Patent Trial Practice Guide provides guidance regarding factors to consider in determining whether a party is a real party in interest. 77 Fed. Reg. 48,756, 48,759–60 (Aug. 14, 2012).  Considerations may include whether a non-party "funds and directs and controls" an IPR petition or proceeding.  *Id.* at 48,760.  Additional relevant factors include:  the non-party's relationship with the petitioner; the non-party's relationship to the petition itself, including the nature or degree of involvement in the filing; and the nature of the entity filing the petition. *Id.*  Generally, a party does not become a "real party-in-interest" merely through association with another party in an unrelated endeavor.  *Id.*  A party also is not considered a real party in interest in an *inter partes* review solely because it is a joint defendant with a petitioner in a patent infringement suit or is part of a joint defense group with a petitioner in the suit.  *Id.*

Whether a party who is not a named participant in a given proceeding is a "real party-in-interest" to that proceeding "is a highly fact-dependent question."  *Id.* at 48,759.  There is no "bright line test."  *Id.*  Courts invoke the term "real party-in-interest" to describe relationships and considerations sufficient to justify applying conventional principles of estoppel and preclusion.  *Id.*

Here, even assuming this contention is timely, Patent Owner has failed to provide any evidence, besides the mere fact that the other parties are co-defendants in a lawsuit or alleged infringers, to support the contention that Petitioner has failed to name all of the real parties in interest.  That one fact, without any further proof of control or involvement by these parties in this proceeding, is insufficient to establish that Petitioner has failed to name

11

A045

IPR2014-00714
Patent RE43,990 E

all of the real parties in interest.  *See Sony Computer Entmt. Am., LLC v. Game Controller Tech. LLC*, Case IPR2013-00634, slip op. 8 (PTAB Apr. 2, 2015) (Paper 31) (denying request to terminate based on failure to name all real parties in interest when Patent Owner failed to provide sufficient evidence that other parties were a real party in interest); *see also First Quality Baby Prods., LLC v. Kimberly-Clark Worldwide, Inc.*, Case IPR2014-01021, slip op. 3–7 (PTAB July 16, 2015) (Paper 42) (same).

### ii.    Petitioner's Expert

Patent Owner asks that we "dismiss [Petitioner's] Expert Declaration and disqualify [Petitioner's Declarant] for making and using a false writing." PO Resp. 9.  Patent Owner contends that Petitioner's Declarant falsely claimed that certain patent applications were patents by listing them under the heading "Patents" in his Resume.  *Id.* at 8–9.  A Patent Owner Response is not the proper vehicle to seek to exclude testimony.  *See* 37 C.F.R. § 42.64(c).  Moreover, even if it were the proper vehicle, we are not persuaded that the alleged "falsehood" that Patent Owner identified—listing patent applications, which are clearly identified as such, under a heading titled "Patents"—is, in any way, misleading.  Thus, we decline Patent Owner's request that we dismiss Dr. Vishwanath's testimony.[3]

### C. Motion to Amend

As discussed above, in the Motion to Amend, Patent Owner requests that challenged claims 11, 74, and 81 be canceled and replaced with

---

[3] Patent Owner also argues that Petitioner's declarant has a conflict of interest because he has received grants from the federal government.  PO Resp. 10–11.  Patent Owner, however, does not ask for any relief on this basis.  *Id.*

12

IPR2014-00714
Patent RE43,990 E

proposed substitute claims 154–156.  Non-Cont. Mot. to Amend 1; *see*
35 U.S.C. § 316(d)(1); 37 C.F.R. § 42.121(a)(3) ("A motion to amend may
cancel a challenged claim or propose a reasonable number of substitute
claims.").  Patent Owner's request to cancel challenged claims 11, 74, and
81 is not contingent on the claims being determined to be unpatentable.  *Id.*
Patent Owner's request to cancel challenged claims 11, 74, and 81 is *granted*
and we need not address these claims further.  Instead, we analyze proposed
substitute claims 154–156 set forth in the Claims Appendix (Ex. 2020) to the
Non-Contingent Motion to Amend.

### i.   *Level of Ordinary Skill in the Art*

Neither party puts forward a succinct definition of the level of
ordinary skill in the art.  Petitioner's declarant, however, has put forward a
detailed discussion of various references dated before April 2006[4] (the date
Patent Owner now alleges is the priority date) related to subject matter of the
'990 patent.  *See* Ex. 1005 ¶¶ 20–74, 94–99.  We have reviewed that
discussion and the references cited in those paragraphs.  We have found it
accurately reflects the teachings of the references.  Moreover, we agree with
Petitioner's declarant that the references are analogous to the claimed
invention, and, as such, represent the level of skill in the relevant art at the
time of the invention.  *See In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir.
1995) (finding that the Board did not err in concluding that the level of
ordinary skill was best determined by the references of record); *In re
Oelrich*, 579 F.2d 86, 91(CCPA 1978) ("[T]he PTO usually must evaluate . .
. the level of ordinary skill solely on the cold words of the literature."); *see*

---

[4] We accept this date as the priority date only for the sake of argument.

13

IPR2014-00714
Patent RE43,990 E

*also Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) ("[T]he absence of specific findings on the level of skill in the art does not give rise to reversible error 'where the prior art itself reflects an appropriate level and a need for testimony is not shown.'").

## ii.    *Proposed Substitute Claims*

Unlike examination, entry of the proposed substitute claims in an *inter partes* review is not automatic.  As the moving party, Patent Owner must establish that it is entitled to the requested relief.  *See Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1304 (Fed. Cir. 2015); *see also* 37 C.F.R. § 42.20(c) (movant bears burden of showing entitlement to relief).  In its motion to amend, a patent owner bears the burden to show, *inter alia*, that a reasonable number of substitute claims is proposed, there is no broadening of scope, the proposed claims are supported adequately by the written description of the application as filed originally, and the proposed claims are patentable over the prior art.  *See* 37 C.F.R. § 42.121; *Idle Free Sys. Inc. v. Bergstrom, Inc.*, Case IPR2012-00027, slip op. at 5–6 (PTAB June 11, 2013) (Paper 26) ("*Idle Free*") (informative).  We address each of these requirements in turn.

## a.  *Reasonable Number of Substitute Claims*

A patent owner may propose a reasonable number of substitute claims for each challenged claim. 35 U.S.C. § 316(d)(1)(B).  Absent special circumstances, it is presumed that only one substitute claim is needed to replace each challenged claim. 37 C.F.R. § 42.121(a)(3).  This presumption may be rebutted by showing that the substitute claims are patentably distinct from each other.  *Idle Free*, Paper 26, 8–9.  To the extent that no patentable

14

IPR2014-00714
Patent RE43,990 E

distinction is shown, we may deny entry of the excess claims, or group them together for purposes of considering patentability over the prior art. *See id.* In the Motion to Amend, Patent Owner proposes adding three new claims, 154, 155, and 156, as substitutes for the three challenged claims, 11, 74, and 81, respectively. Given this one to one correspondence, we determine the number of proposed substitute claims to be reasonable.

### b. No Broadening of Scope

Proposed substitute claims in an *inter partes* review "may not enlarge the scope of the claims of the patent." 35 U.S.C. § 316(d)(3); *see* 37 C.F.R. § 42.121(a)(2)(ii). In the Motion to Amend, Patent Owner proposes claim 154 as a substitute for claim 11, claim 155 as a substitute for claim 74, and claim 156 as a substitute for claim 81. Non-Cont. Mot. to Amend 1. Patent Owner has deleted limitations from each of the challenged claims in the proposed substitute claims. *See* Ex. 2020, 1–6.

Patent Owner does not represent that the proposed substitute claims do not enlarge the scope of the challenged claims of the '990 patent. Mot. to Amend 2–7. Instead, Patent Owner appears to argue, as discussed below, that the amended claims are at least as broad as claims 11, 74, and 81 ("the original claims"). *Id.* Indeed, it appears that the purpose of Patent Owner's amendment is not to narrow the claims to overcome the prior art, but rather to remove any matter in the claims supported only by the disclosure added in the '573 application, so that the claims can receive the April 5, 2006 priority date of the '118 application. *Id.* at 2. Patent Owner also appears to seek to correct some of the claim defects we noted, but did not act on, in our Decision to Institute. *Id.* at 7–9.

15

IPR2014-00714
Patent RE43,990 E

Petitioner argues that Patent Owner has enlarged the scope of challenged claims.  Opp. 2–5.  We agree with Petitioner that Patent Owner impermissibly has attempted to broaden the scope of the challenged claims. We consider each of the substitute claims in detail below.

*1.  Proposed Substitute Claim 154*

With respect to claim 154, Petitioner points to two changes in the claim language that it contends broaden the scope.  Opp. 3.  First, Petitioner points to the amendment in the claim preamble.  *Id.*  Second, Petitioner points to the deletion of the entire claim passage "wherein the communication device receives a signal via any of the one or more products listed in any of the plurality of product grouping categories . . . ."  *Id.*  We agree with Petitioner that both of these amendments impermissibly broaden the scope of claim 154.

Beginning with the claim preamble amendment, the preamble of claim 11 originally read:  "A communication device of at least one of *a cell phone a smart phone a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site* for monitoring products for communication therebetween, comprising…."  In claim 154, the language in italics has been eliminated and replaced with "the products grouped together by common features in the product groupings category of design similarity (e.g., computer terminal, personal computer (PC))…."  Patent Owner contends that this new language is consistent with words found in the disclosure of the '118 application.  Mot. to Amend 4.  Patent Owner further contends that this new language is broad enough to include the removed items, such as cell phones and smart phones, because those items are "species terms" that are "included in the genus 'monitoring equipment' and 'communication device'

16

IPR2014-00714
Patent RE43,990 E

when the clause 'products grouped together by common features in the product groupings category of design similarity' is included."  *Id.*  Patent Owner argues that "[t]he specific devices removed, such as the cell phones and smart phones would be recognized by one of ordinary skill in the art as a type of communication device or monitoring equipment because cell phones and smartphones are devices that are capable of communication and are capable of receiving signals."  *Id.*

We agree with Petitioner and find, based on the Patent Owner's own arguments, that these terms improperly broaden the scope of the claims.  As Patent Owner explains, the added language is broad enough to include the removed items, and is intended to reflect the entire genus of "monitoring equipment" and "communications devices" that "are capable of communication and capable of receiving signals."  Mot. to Amend 4, 5.  Thus, the claim has been broadened to not only include the listed species that have been removed, but anything falling within the claimed genus.  Accordingly, we find that this amendment impermissibly broadens the claim.

As for the second change in the claim language, we find that Patent Owner has failed to show why removal of the entire passage "wherein, the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories," would not impermissibly broaden the scope of claim 154.  The deletion of this limitation necessarily broadens the claim in that limitation's aspect.  *See In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997) ("For example, a reissue claim that deletes a limitation or element from the patent claims is broader in that limitation's aspect.").  Given that Patent Owner has entirely deleted this

17

A051

limitation and Patent Owner bears the burden of showing entitlement to the amendment, it was incumbent on Patent Owner to explain why removing this entire passage from claim 154 would not broaden the scope of the claim. *See In re Bennett*, 766 F.2d 524, 526 (Fed. Cir. 1985) (en banc) ("[A] claim is broadened if it is broader in any respect than the original claim, even though it may be narrowed in other respects.").

### 2. *Proposed Substitute Claim 155*

The amendment of claim 155 deletes, among other things, the claim term "embedded" from wherever it is found in claim 74.  Ex. 2020, 3–4. Petitioner argues that deleting this limitation broadens the claim.  Opp. 3. Patent Owner merely states that "a built-in component could be an embedded component" (Mot. to Amend 3) and "that the term (embedded) has been examined, reviewed and accepted by the patent Examiner and was found to have a genus, species relationship with the term (built-in)" (Mot. to Amend 7).

We agree with Patent Owner's understanding that "built-in" reflects a broader genus of which "embedded" is a particular species.  As we explained in the Decision to Institute, the term "built-in" generally means "constructed to form an integral part of a larger unit."  Dec. to Inst. 12 (quoting OED ONLINE (OXFORD ENGLISH DICTIONARY (3d ed. 2003)) available at http://www.oed.com/view/Entry/24414 (accessed: Oct. 6, 2014) (Ex. 3003)).  As also discussed in the Decision to Institute, the term "embedded" is alternatively defined as "to enclose closely in or as if in a matrix" and "to make something an integral part of."  Dec. to Inst. 12 (quoting MERRIAM-WEBSTER.COM, available at http://www.merriam-webster.com/ dictionary/embedded (accessed: Aug. 24, 2015) (Ex. 3007));

IPR2014-00714
Patent RE43,990 E

*see also* OED ONLINE (OXFORD ENGLISH DICTIONARY (3d ed. 2003))

available at http://www.oed.com/view/Entry/60835 (accessed: Oct. 6, 2014)

("to enclose firmly") (Ex. 3006). Thus, the ordinary meaning would suggest

that something "embedded" necessarily is "built-in," and that something

"built-in" could be, but is not necessarily, "embedded." As such, the term

"built-in" alone would imply a broader genus than "built-in embedded."

Moreover, as discussed above, the removal of a limitation implies that the

claim has been broadened. *See In re Clement*, 131 F.3d at 1468; *In re

Bennett*, 761 F.2d at 526. Patent Owner has not shown otherwise. Thus, we

find that Patent Owner has failed to show that claim 155 is not

impermissibly broadened.

### 3. *Proposed Substitute Claim 156*

As for proposed claim 156, there are a number of amendments, but

Petitioner directs our attention to four changes to the language of the claim.

First, Petitioner points to the limitation reciting "monitoring equipment."

Opp. 4. In claim 81, the limitation originally recited "monitoring equipment

*located at a determinate site, comprising at least one of plurality product

groups based on the categories of a computer, laptop, notebook, PC,

handheld, reader, cell phone, PDA or smart phone* for the receipt and

transmission of signals therebetween." In claim 156, the italicized portion

was deleted, and replaced by the limitation that the "monitoring equipment"

be "of at least one of the products grouped together by common features in

the product groupings category of design similarity (e.g., computer terminal,

personal computer (PC))." This amendment is nearly identical to the change

to the preamble of claim 154. For the same reasons discussed above with

respect to the similar amendment to the preamble of claim 154, we find that

19

IPR2014-00714
Patent RE43,990 E

Patent Owner has failed to demonstrate that this claim amendment would not broaden the scope of the claim 156, as compared to claim 81.

Second, Petitioner argues that the removal of the limitation "at least one cell phone tower interconnected to the monitoring equipment for sending signals thereto and receiving signals therefrom" impermissibly broadened claim 156.  Opp. 4.  Patent Owner provides no argument why this would not broaden the scope.

Claim 156, unlike claim 81, has no requirement of a cell phone tower that is connected to the monitoring equipment and can send and receive signals to the monitoring equipment.  The elimination of an entire physical structure from the claim has broadened its scope to include systems that do not include a cell phone tower.  Moreover, as discussed above, the removal of a limitation implies that the claim has been broadened.  *See In re Clement*, 131 F.3d at 1468.  Patent Owner has not shown otherwise.  Thus, we find that Patent Owner has failed to show this amendment would not impermissibly broaden the claim.

Third, claim 156 also has been amended to remove the entire limitation that "at least one satellite or at least one cell phone tower capable of two-way signal communication between the multi sensor detection device and the monitoring equipment."  Thus, in claim 156, there is no requirement, as was the case in claim 81, that there be a cell phone tower, or any requirement that the satellite be capable of two-way communication with the monitoring equipment.  This impermissibly broadens the scope.  In addition, as discussed above, the removal of an entire limitation implies that the scope is broader.  *See In re Clement*, 131 F.3d at 1468; *In re Bennett*, 766 F.2d at

20

IPR2014-00714
Patent RE43,990 E

526.  Patent Owner has not shown otherwise.  Thus, we agree with Petitioner that this amendment is also impermissibly broadening in scope.

Finally, Petitioner points to the deletion of the entire limitation "wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories." Opp. 4.  This amendment is identical to an amendment made in claim 154. For the reasons discussed above with respect the same change in claim 154, we also determine that Patent Owner has failed to show that this amendment is also not broadening in scope.

### 4.  Conclusion

In sum, the proposed amendments either replace existing claim language with new, broader claim language or delete entire limitations from claims without replacing them.  For the reasons discussed above, we determine that Patent Owner has failed to show that any of the claims were not impermissibly broadened in scope.  Accordingly, we find this sufficient by itself to deny the motion to amend as to claims 154–156.

### c.  Written Description Support

Pursuant to 37 C.F.R. § 42.121(b), Patent Owner bears the burden in the Motion to Amend to set forth "[t]he support in the original disclosure of the patent for each claim that is added or amended," and "[t]he support in an earlier-filed disclosure for each claim for which benefit of the filing date of the earlier filed disclosure is sought."  The test for written description support is "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  The purpose of the

21

A055

IPR2014-00714
Patent RE43,990 E

written description requirement is to convey with reasonable clarity to those skilled in the art that, as of the filing date sought, applicant was in possession of the invention as now claimed. *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991).

Patent Owner has provided written description support only for the amendments to the claims, and has not provided written description support for the amended claims as a whole. Mot. to Amend 2–6. Without any explanation why a person of ordinary skill in the art would have recognized that the inventor possessed the claimed subject matter as a whole, we find that Patent Owner's citation to written description support only for the added claim language is inadequate to satisfy the written description requirement for the claims overall. *See Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013) (claim is considered as an "integrated whole" when assessing written description). Accordingly, we find that Patent Owner has failed to show adequate written description support for the amended claims in their entirety, and that this defect is also sufficient to serve as a basis to deny the Motion to Amend. *See Microsoft Corp. v. Surfcast, Inc.*, Cases IPR2013-00292, IPR2013-00293, IPR2013-00294, IPR2013-00295, slip op. at 46 (PTAB Oct. 14, 2014) (Paper 93); *Nichia Corp. v. Emcore Corp.*, Case IPR2012-00005, slip. op. at 4 (PTAB Feb. 11, 2014) (Paper 27).

### d. *Patentability Over the Prior Art*

In a motion to amend, the patent owner bears the burden of proof to demonstrate patentability of its proposed substitute claims over the prior art, and, thus, entitlement to the claims. *Idle Free* at 7. This does not mean that the patent owner is assumed to be aware of every item of prior art known to

22

a person of ordinary skill in the art.  *See MasterImage 3D, Inc. v. RealD, Inc.*, Case IPR2015-00040, slip op. at 2 (PTAB July 15, 2015) (Paper 42) ("*MasterImage 3D*") (representative).  The patent owner, however, should explain in its motion why the proposed substitute claims are patentable over the prior art of record, as well as prior art known to the patent owner:

> A patent owner should identify specifically the feature or features added to each substitute claim, as compared to the challenged claim it replaces, and come forward with technical facts and reasoning about those feature(s), including construction of new claim terms, sufficient to persuade the Board that the proposed substitute claim is patentable over the prior art of record, and over prior art not of record but known to the patent owner.  The burden is not on the petitioner to show unpatentability, but on the patent owner to show patentable distinction over the prior art of record and also prior art known to the patent owner.   Some representation should be made about the specific technical disclosure of the closest prior art known to the patent owner, and not just a conclusory remark that no prior art known to the patent owner renders obvious the proposed substitute claims.

*Idle Free* at 7.   These requirements include addressing the basic knowledge and skill set possessed by a person of ordinary skill in the art even without reliance on any particular item of prior art.   *Id*. at 7–8.   Prior art of record includes "any material art in the current proceeding, including art asserted in grounds on which the Board did not institute review."  *MasterImage 3D*, at 2.

The petitioner then has the opportunity, in its opposition, to argue any deficiency in the patent owner's motion and "come forward with specific evidence and reasoning, including citation and submission of any applicable

IPR2014-00714
Patent RE43,990 E

prior art," to rebut the patent owner's position on patentability.
*Idle Free* at 8.

This case is unusual because the amendments at issue here did not add limitations to the claims, but rather, removed limitations from the claims. As we found above, the result of these amendments is that the substitute claims are not narrower, but broader than the original claims.

We instituted an *inter partes* review of claims 11, 74, and 81 of the '990 patent because Petitioner had demonstrated a reasonable likelihood of showing that these claims were anticipated by Astrin (Ex. 1002)[5] and Breed (Ex. 1004).[6] Paper 16. We declined to institute on the grounds based on Mostov (Ex. 1003) because Astrin and Breed addressed all of the claims, and there was no explanation why that ground differed from the instituted grounds.[7]

In the Motion to Amend, Patent Owner states that in addition to these references, the closest "prior art of which the [Patent Owner] is aware" is U.S. Patent No. 8,564,661 to Lipton.[8] Mot. to Amend 11–13. Patent Owner argues Lipton does not render claims 154–156 unpatentable. Mot. to Amend 11–13. Patent Owner submits that the proposed substitute claims are similar to claims that were submitted in the pending '693 application. Non-Cont. Mot. to Amend 1–2. Patent Owner further asserts that Astrin, Mostov,

---

[5] Astrin, US 2006/0250235 A1, published November 9, 2006, filed April 28, 2006.
[6] Breed, US 7,961,094 B2, issued June 14, 2011, filed November 29, 2007.
[7] Mostov, US 2006/0181413 A1, published Aug. 17, 2006, filed January 30, 2006.
[8] Lipton, US 8,564,661 B2, issued October 22, 2013, priority date October 24, 2000.

24

and Breed were submitted to the Examiner in the '693 application and were not found to be relevant.  *Id.* at 2.

We do not consider Patent Owner's arguments that the examiner of the '693 application considered Astrin, Breed, and Mostov and found them irrelevant to the patentability of the claims in the '693 application to be entitled to any weight in this proceeding for several reasons.  First, the actions of an examiner in another, related case pending in the PTO are not necessarily binding upon us.  *See Sze v. Block*, 458 F.2d 137, 140–41 (CCPA 1972) (*inter partes* interference not bound by prior *ex parte* examination); *Switzer v. Sockman*, 333 F.2d 935, 940–43 (CCPA 1964) (*ex parte* proceeding not binding on subsequent *inter partes* proceeding); *see also Dayco Prods. Inc. v. Total Containment Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003) (noting examiners are not bound to follow other examiners' interpretations).  Thus, the mere fact that an examiner made statements in the '693 application regarding these references does not require us to follow them in this proceeding.  Second, Patent Owner fails to establish that the claims at issue in this proceeding are identical to the claims in the '693 application.  Thus, there is no link shown between this proceeding and the claims in the '693 application to allow us to assess accurately the relevance of that examiner's action.  Finally, it is unclear precisely what feature that examiner found to be lacking from Astrin, Breed, and Mostov.  Thus, Patent Owner has failed to provide adequate support for us to assess whether that examiner is correct.  Accordingly, we do not find that the examiner's statements in the '693 application are sufficient to establish the patentability of the substitute claims here.

25

IPR2014-00714
Patent RE43,990 E

We next consider Patent Owner's argument that Astrin, Mostov, and Breed are not prior art because the amended claims are entitled to the April 5, 2006 priority date.  Mot. to Amend 2–7.  Even accepting, for the sake of argument, that the substitute claims are entitled to this earlier priority date, at the very least, Mostov remains prior art under 35 U.S.C. § 102(e) because Mostov's non-provisional filing date is January 30, 2006.  Ex. 1003, at [22].  The fact that we did not institute this proceeding on Mostov does not mean it is no longer relevant to the patentability of the substitute claims.  In deciding not to institute on Mostov, we did not rule on the merits of Petitioner's case.  Dec. to Inst. 28–29.  We merely determined that, given the Astrin and Breed references, instituting on Mostov was not a necessary use of resources.  We consider Mostov still to be relevant to the patentability of the claims.  Thus, Petitioner's arguments regarding the priority date, even if accepted, do not show patentability over Mostov, which we discuss below.

### *Mostov (Exhibit 1003)*

Mostov is titled "Transportation Security System and Associated Methods."  Ex. 1003, at [54].  Mostov describes a security system for monitoring shipping containers by the use of Container Security Devices (CSDs) 140 within the containers.  Ex. 1003, Abstract, Figs. 1–3.  Figure 22 of Mostov is reproduced below:

26



FIG. 22 NOC Structure 170

Figure 22 of Mostov is a block diagram illustrating the structure of
Network Operations Center 170.

Network Operations Center (NOC) 170 (or 2200) consists of servers
and computer terminals.  *Id.* ¶¶ 9, 22, 28, 47, 88, 89.  NOC 170 (or 2200)
is interconnected to and serves to monitor containers 130 containing CSDs
(not depicted).  *Id.* ¶¶ 11–13.  NOC 170 (or 2200) includes communication
capabilities to communicate with CSDs.  *Id.* ¶¶ 44, 45, 48, 93, 96, 97, 98,
102, 106, 112, 113, 117, Figs. 1, 2, 22, 23, 25.  The CSDs report condition
information to Network Operations Center 170 via a bridge, cellular, or
satellite antenna.  *Id.* ¶¶ 44, 46, 48, 112, 113.  Based on the condition
information received, NOC 170 (or 2200) may use the same
communications channels to transmit instructions (e.g., an activate or
deactivate instruction) back to CSD 140.  *Id.* ¶¶ 96, 113, Fig. 24.

27

IPR2014-00714
Patent RE43,990 E

CSD 140 contains a number of built-in sensors for detecting various conditions (e.g., temperature, humidity, tampering, theft, breach, personal conditions, physical load, explosions, gunshots, etc.).[9] *Id.* ¶¶ 4, 9, 11, 22, 28, 47, 61, 88, 89, 115, Figs. 3, 4, 10.  CSD 140 can contain a variety of communications devices including cellular model 350A and satellite modem 350B, which CSD 140 uses to communicate with NOC 170 (or 2200).  *Id.* ¶¶ 93, 112, Figs. 1, 3.  Figure 3 of Mostov is reproduced below.



FIG.3

Figure 3 of Mostov is a block diagram of CSD 140.

---

[9]  To the extent that Patent Owner contends that the sensors are RFID tags (PO Resp. 46), we do not agree.  As paragraphs 47 and 58 of Mostov, which were cited by Patent Owner, make clear, the RFID reader is in addition to the sensors and receives data from sources other than the sensors.  *See* Ex. 1003 ¶¶ 47, 58.

28

IPR2014-00714
Patent RE43,990 E

*Proposed substitute claim 154*

As discussed above, Patent Owner does not contend that claim 154 has been narrowed in any way over claim 11, or that any individual claim element of claim 154 is meaningfully narrower than the corresponding claim element of claim 11. *See* Mot. to Amend 5–6. Mostov discloses a PC at a monitoring site (NOC 170 (or 2200)) that can communicate, via cellular or satellite connections, with containers containing CSDs 140. Ex. 1003 ¶¶ 9, 22, 28, 44, 45, 47, 48, 88, 89, 93, 96, 97, 98, 102, 106, 112, 113, 117, Figs. 1, 2, 22, 23, 25. CSDs 140 include a number of different sensors and can be activated or deactivated by NOC 170 (or 2200). *See* ¶¶ 4, 9, 11, 22, 28, 47, 61, 88, 89, 93, 112, 115, Figs. 1, 3, 4, 10. We have reviewed Petitioner's evidence and arguments regarding why Mostov anticipates claim 11. Pet. 29–35; Ex. 1005 ¶¶ 95–99. We are persuaded that the evidence and citations establishes that claim 154, which is at least as broad in every element as claim 11, is anticipated by Mostov. Patent Owner presents no persuasive evidence or argument addressing why Mostov, which is prior art of record in this proceeding, does not anticipate claim 154, nor any persuasive evidence or argument addressing Petitioner's analysis with respect to this reference. Patent Owner bears the burden of showing that claim 154 is patentable, but has failed to show that Mostov does not anticipate claim 154. Thus, we find that Patent Owner has failed to meet the burden of showing that claim 154 is patentable over Mostov.

*Proposed Substitute Claim 155*

As discussed above, Patent Owner does not contend that claim 155 has been narrowed in any way over claim 74, or that any individual claim element in claim 155 is meaningfully narrower than the corresponding

29

IPR2014-00714
Patent RE43,990 E

element in claim 74. Mot. to Amend 3–4. Indeed, as discussed above, one of Patent Owner's amendments to claim 74 was to remove the limitation "embedded" wherever it was found in the claim. Ex. 2020, 3–4. Thus, as discussed above, Patent Owner broadened the claim to include not only those sensors that were "built-in embedded," but also those that were merely "built-in." *See supra* § II.C.ii.b.2. Patent Owner's other amendments remove certain communication techniques from the claim (*see* Ex. 2020, 4), but not satellite communications, which Mostov discloses (Ex. 1003 ¶¶ 44, 46, 48, 112, 113).

Mostov discloses a multi-sensor detection system for monitoring products with a plurality of sensors including sensors built into CSDs 140 for detecting chemical agents and explosives, that CSDs may be fixed to the container, and that CSDs 140 can communicate alarms to the monitoring site, NOC 170. Ex. 1003 ¶¶ 4, 9, 11, 22, 28, 46, 47, 61, 87, 88, 89, 97, 112, 115, Fig. 3, 4, 25. We have reviewed Petitioner's evidence and arguments regarding why Mostov anticipates claim 74. Pet. 36–38; Ex. 1005 ¶¶ 95–99. We are persuaded that the evidence and citations also establish that claim 155 is anticipated by Mostov. Patent Owner presents no persuasive evidence or argument addressing why Mostov, which is prior art of record in this proceeding, does not anticipate claim 155, nor any persuasive evidence or argument addressing Petitioner's analysis with respect to this reference. Patent Owner bears the burden of showing that claim 155 is patentable, but has failed to show that Mostov does not anticipate claim 155. Thus, we find that Patent Owner has failed to show that claim 155 is patentable over, at the very least, Mostov.

30

*Proposed Substitute Claim 156*

As discussed above, Patent Owner does not contend that claim 156 has been narrowed in any way over claim 81, or that any individual claim element in claim 156 is meaningfully narrower than claim 81. Mot. to Amend 3–7. As described above, Mostov discloses a multi-sensor detection system for detecting explosives and other compounds, including a plurality of sensors in CSD 140, and monitoring equipment, such as PCs at the NOC. In addition, both the CSDs and NOC including satellite and other types of radio transmission, to allow internet communication between the NOC and CSD. Ex. 1005 ¶¶ 95–99; Ex. 1003 ¶¶ 9, 11, 89, 90, 101–103; Figs. 1, 3, 22. We have reviewed Petitioner's evidence and arguments regarding why Mostov anticipates claim 81. Pet. 37–42; Ex. 1005 ¶¶ 95–99. We are persuaded that the evidence and citations establish that claim 156 is anticipated by Mostov. Patent Owner presents no persuasive evidence or argument addressing why Mostov, which is prior art of record in this proceeding, does not anticipate claim 156, nor any persuasive evidence or argument addressing Petitioner's analysis with respect to this reference. Patent Owner bears the burden of showing that claim 156 is patentable, but has failed to show that Mostov does not anticipate claim 156. Thus, we find that Patent Owner has failed to show that claim 156 is patentable over, at the very least, Mostov.

*e.    Conclusion*

In sum, Patent Owner has failed to show that the motion to amend to substitute claims 154–156 should be granted. Specifically, Patent Owner has failed to show that claims 154–156: (1) are not broader in scope than

31

IPR2014-00714
Patent RE43,990 E

claims 11, 74, and 81; (2) have written description support in the originally filed application; and (3) are patentable over the prior art of record.

## III.  CONCLUSION

Patent Owner has not demonstrated by a preponderance of the evidence that proposed substitute claims 154–156 are patentable over the prior art of record.  Moreover, Patent Owner fails to demonstrate that the Motion to Amend complies with our requirements that the claims not be broadening in scope, and that the amended claims have written description support.  Therefore, we grant Patent Owner's Motion to Amend solely as to the non-contingent request to cancel challenged claims 11, 74, and 81 of the '990 patent, and deny the Motion to Amend as to the proposed substitution of claims 154–156.

## IV. ORDER

Accordingly, it is

ORDERED that Patent Owner's Motion to Amend is *granted* as to the request to cancel claims 11, 74, and 81 of the '990 patent; and

FURTHER ORDERED that Patent Owner's Motion to Amend is *denied* as to the request to add proposed substitute claims 154–156.

Because this is a Final Written Decision, the parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

A066

IPR2014-00714
Patent RE43,990 E

For PETITIONER:

Lavanya Ratnam
lavanya.ratnam@hq.dhs.gov

Nathan Grebasch
nathan.grebasch@hq.dhs.gov

William Washington
william.washington@tsa.dhs.gov

For PATENT OWNER:

Larry Golden
atpg-tech@charter.net

33

Trials@uspto.gov
571.272.7822

Paper No. 37
Filed: November 17, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
Petitioner,

v.

LARRY GOLDEN,
Patent Owner.
_____

Case IPR2014-00714
Patent RE43,990 E
_____

Before LORA M. GREEN, JON B. TORNQUIST, and
KEVIN W. CHERRY, *Administrative Patent Judges*.

CHERRY, *Administrative Patent Judge*.

DECISION
Denying Patent Owner's Request for Rehearing
*37 C.F.R. § 42.71(d)*

Larry Golden ("Patent Owner") timely filed a request for rehearing
("Rehearing Request" or "Request") of our Final Written Decision
(Paper 35, "Final Decision" or "Final Dec.") granting-in-part and denying-in
part Patent Owner's non-contingent motion to amend.  Paper 36 ("Req.

IPR2014-00714
Patent RE43,990 E

Reh'g").[1]  In particular, the Request seeks rehearing of the portion of the
Final Decision denying Patent Owner's motion to amend U.S. Patent No.
RE43,990 E (Ex. 1001, "the '990 patent") to add substitute claims 154–156.
*Id.* at 2–3.  For the reasons given below, we deny the Rehearing Request.

## I.  LEGAL STANDARDS

"A party dissatisfied with a decision may file a request for rehearing,
without prior authorization from the Board."  37 C.F.R. § 42.71(d).  "The
burden of showing [the] decision should be modified lies with the party
challenging the decision."  *Id.*  The request for rehearing "must specifically
identify all matters the party believes the Board misapprehended or
overlooked, and the place where each matter was previously addressed in a
motion, an opposition, or a reply."  *Id.*

## II.  ANALYSIS

In our Final Decision, we granted Patent Owner's non-contingent
motion to cancel claims 11, 74, and 81 of the '990 patent, which were the
only claims challenged in this *inter partes* review.  We also denied Patent
Owner's non-contingent motion to amend the '990 patent to add substitute
claims 154–156.  In particular, we found that Patent Owner had failed to
carry Patent Owner's burden of showing entitlement to the amendment for

---

[1]  Patent Owner sent two emails to the Board on October 2, 2015 and
October 11, 2015 arguing that the Board erred in rejecting Patent Owner's
motion to amend.  In view of Patent Owner's *pro se* status, we offered to
treat those emails collectively as a request for rehearing.  Reh'g Req. 3.  In
an email on October 24, 2015, Patent Owner accepted that offer.  *Id.* at 2–3.
Thus, we treat Patent Owner's October 2, 2015 and October 11, 2015 emails
collectively as a request for rehearing.  We have entered these emails as a
captioned document in the record as Paper 36.  We also have entered certain
papers attached to the October 2, 2015 email as Exhibits 3008 and 3009 and
the paper attached to the October 11, 2015 email as Exhibit 3010.

IPR2014-00714
Patent RE43,990 E

three independent reasons:  (1) substitute claims 154–156 are impermissibly broader than the claims they replaced; (2) Patent Owner failed to show written description support for substitute claims 154–156 as a whole; and (3) Patent Owner failed to show that claims 154–156 were patentable over the prior art of record.  Final Dec. 15–21 (improper broadening), 21–22, (written description), 22–31 (prior art of record).  Therefore, to succeed on this Rehearing Request, Patent Owner must show that we misapprehended or overlooked matters in reaching each of these determinations.  Patent Owner has not done so.  We address Patent Owner's arguments in detail below.

## A. Improper Broadening

In the Rehearing Request, Patent Owner argues:

> When the Board agreed with the Petitioner, the Examiner of the '990 patent, and the Patent Owner that the entire genus of "monitoring equipment" and "communication devices" includes as species cell phones and smartphones, the support for an April 5, 2006 priority date had already been established.  Therefore, when the Board writes in its "Final Written Decision", pg. 15: "to remove any matter in the claims supported only by the disclosure added in the '573 application, so that the claims can receive the April 5, 2006 priority date of the '118 application" is not true.

Reh'g Req. 4.

We initially note that this argument (and the supporting arguments that appear on Reh'g Req. 4–5) appears to be directed at our decision to institute review on cancelled claims 11, 74, and 81.  This and other complaints about our decision to institute review of claims 11, 74, and 81 are not persuasive of error because Patent Owner cancelled claims 11, 74, and 81, so they are no longer at issue in this proceeding.  As we explained to

IPR2014-00714
Patent RE43,990 E

Patent Owner (*see* Paper 23, 2–4; Paper 29, 2; Ex. 1025, 3–10), a non-contingent motion to amend is, in essence, an abandonment of claims 11, 74, and 81, and he bears the burden of showing newly presented claims 154–156 are patentable.  If Patent Owner believed that Petitioner failed to show claims 11, 74, and 81 were unpatentable or that our priority date determination for those claims was incorrect, Patent Owner could have filed a contingent motion to amend.

In any event, this priority date argument does not contain any reason why our determination that substitute claims 154–156 are broader in scope than cancelled claims 11, 74, and 81 that they seek to replace was in error. Reh'g Req. 4–5.  To the extent that Patent Owner does contest our finding that the claims are broader in scope, we do not find it persuasive because Patent Owner does not show amending a claim to replace a particular species with an entire genus would not be broadening.  Thus, this argument regarding priority date does not persuade us that we erred in denying Patent Owner's motion to amend.

Patent Owner goes on to argue that "[t]he Patent Owner was aware and made all claim amendments in accordance to a clause in the general rule of Broad[en]ing that allows for the justifiable deviation from the general rule if there are adequate and persuasive explanations to justify a 'special circumstance.'" *Id.* at 5.  Patent Owner provides no citation for this "clause in the general rule . . . that allows for justifiable deviation from the general rule," and we are not aware of such a rule in the context of claim amendments in *inter partes* reviews.  Indeed, 35 U.S.C. § 316(d) and 37 C.F.R. § 42.121, which govern amendments, contain no such exception. Moreover, even if such an exception existed, Patent Owner made no

4

IPR2014-00714
Patent RE43,990 E

arguments in its Patent Owner Response or Motion to Amend that such an exception should apply, so we could not misapprehended or overlooked them.

To the extent that Patent Owner submits that we "coerced" Patent Owner into filing a motion to amend or "advised" him to do so, we note that, as the record reflects (Paper 23, 2–3), Patent Owner filed the motion to amend without ever discussing the motion with the Board. We never advised Patent Owner that a motion to amend was the proper course in this proceeding, and repeatedly warned Patent Owner of the difficulties presented by, and consequences that result from, a non-contingent motion to amend. *See* Paper 23, 2–4; Paper 29, 2; Ex. 1025, 3–10.

### B.    *Lack of Written Description Support*

Patent Owner argues that we should also excuse Patent Owner's failure to identify written description support for the entire claim because of the "special circumstances" discussed above. Reh'g Req. 2–3. Without determining whether such an exception exists for the requirement of providing written description support for the entire claim, Patent Owner fails to identify anywhere in the Patent Owner Response or Motion to Amend where this argument was raised. Because the argument was not raised, we could not have misapprehended or overlooked it. Thus, we determine that Patent Owner has failed to show that we erred in our determination that the Motion to Amend failed to show written description support for the claim as a whole.

### C.  *Failure to Show Patentability Over the Prior Art of Record*

Patent Owner argues that the Board erred in determining that Patent Owner failed to meet the burden of showing that claims 154–156 were

IPR2014-00714
Patent RE43,990 E

patentable over the prior art of record for three reasons.  Reh'g Req. 7–9.

First, Patent Owner argues that Petitioner only introduced Mostov[2] as prior

art under § 102(b) based on a June 6, 2008 priority date.  *Id.* at 7–8.  Patent

Owner argues that Petitioner never alleged that Mostov was prior art under

§ 102(e).  *Id.*  This argument does not persuade us that our determination

was in error because the burden of showing patentability was on Patent

Owner.  Mostov unambiguously has a non-provisional filing date that is

earlier than the priority date of April 5, 2006 that Patent Owner argued in the

Motion to Amend.  *See* Paper 26, 2 (arguing for an April 5, 2006 filing date).

Thus, the burden was on Patent Owner to show why Mostov did not render

the claim unpatentable.  *See Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d

1292, 1304 (Fed. Cir. 2015); *see also* 37 C.F.R. § 42.20(c) (movant bears

burden of showing entitlement to relief).  Patent Owner failed to do so.

Second, Patent Owner now argues that claims 154–156 are entitled to

a November 26, 2004 priority date, which is before Mostov's filing date and

provisional date.  Reh'g Req. 8–9.  Patent Owner does not direct us to where

he made this argument in the Patent Owner Response, Motion to Amend, or

Reply.  Thus, Patent Owner has not demonstrated that we misapprehended

or overlooked his argument.  Moreover, even if we were able to consider it

for the first time on rehearing, Patent Owner fails to attach the complete

copy of the Disclosure Document (*see* Ex. 3009), let alone show how the

Disclosure Document actually supports claims 154–156, such that the

substitute claims are entitled to the earlier filing date.  *See Dynamic*

*Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1379–80 (Fed. Cir.

---

[2] Mostov, US 2006/0181413 A1, published Aug. 17, 2006, filed January 30, 2006.

IPR2014-00714
Patent RE43,990 E

2015) (discussing what is required to meet the burden of showing a claim is entitled to an earlier priority date). Thus, we are not persuaded that we overlooked or misapprehended Patent Owner's argument with respect to entitlement to the November 26, 2004 priority date.

Finally, Patent Owner argues "it is difficult, if not impossible, for someone who is examining the claims for anticipation to establish anticipation without examining each and every element of the broader claims." Reh'g Req. 9. Patent Owner further argues that "Mostov has not identified a single, 'communication device', 'multi-sensor detection device', or a single piece of monitoring equipment that comprises all the elements of any of the claims." *Id.* Patent Owner continues that "Mostov is all over the place and is combining elements to justify anticipation." *Id.* We have reviewed the disclosure of Mostov and Patent Owner's arguments and, respectfully, disagree with Patent Owner's assessment of the reference. Mostov is unambiguous that Figures 1, 3, and 22 are all part of a single embodiment. *See* Ex. 1003 ¶ 40 ("Fig. 22 shows a diagrammed depiction of one exemplary Network Operations Center depicted in Fig. 1."), 46 ("FIG. 3 is a block diagram illustrat[ing] one exemplary CSD 300. CSD 300 may, for example, represent CDS 140 of Fig. 1."). Thus, a single embodiment disclosed in Mostov meets the limitations of the substitute claims. For example, as we explained with respect to claim 154, Mostov discloses in Figures 1, 3, and 22, a PC ("[a] communication device . . .for monitoring products") at monitoring site (NOC 170 (or 2200)) that can communicate with CSDs ("multi-sensor detection device") via cellular or satellite communications, the CSDs include sensors and can be activated or deactivated by the PC at the monitoring site (Ex. 1003 ¶ 113). Final Dec.

IPR2014-00714
Patent RE43,990 E

29; *see also id.* at 29–31 (similar analysis for claims 155 and 156).  Patent Owner does not explain with any specificity how this analysis is in error. Thus, we are not persuaded that we erred in finding that Patent Owner failed to demonstrate the patentability of claims 154–156 over the prior art of record.

## D.  Conclusion

We have reviewed Patent Owner's other arguments and find them to be without merit.  For the reasons given, Patent Owner has not shown anything that we misapprehended or overlooked in our Final Decision and that our Final Decision denying Patent Owner's Non-Contingent Motion to Amend the '990 patent to add substitute claims 154–156 was in error.

## III.  ORDER

Accordingly, it is:

ORDERED that Patent Owner's Request for Rehearing (Paper 36) is *denied*.

IPR2014-00714
Patent RE43,990 E

PETITIONER:

Lavanya Ratnam
lavanya.ratnam@hq.dhs.gov

Nathan Grebasch
nathan.grebasch@hq.dhs.gov

William Washington
william.washington@tsa.dhs.gov

PATENT OWNER:

Larry Golden
atpg-tech@charter.net

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| Title:  Multi Sensor Detection, Stall | ) | Examiner:  N/A |
| To Stop and Lock Disabling System | ) | |
| | ) | |
| Inventor:      Larry Golden | ) | Confirmation No.: 8250 |
| | ) | |
| Patent No.:    RE43,990 | ) | Atty. Docket No.: Golden-1 |
| | ) | |
| Issue Date:    Feb. 12, 2013 | ) | Art Group: N/A |
| | ) | |
| Certificate No.: US RE43,990 K1 | ) | |
| | ) | |
| Certificate Date: July 24, 2018 | ) | |

**PETITION TO STRIKE *ULTRA VIRES***
**INTER PARTES REVIEW CERTIFICATE**
**FROM THE PROSECUTION FILE OF RE43,990**
**BASED ON *RETURN MAIL V. U.S. POSTAL SERVICE***

To: **Director of the United States Patent and Trademark Office**, and **Commissioner for Patents**, and **Office of Petitions**
P.O. Box 1450
Alexandria VA 22313

Honorable Director and Commissioner:

Patent Owner Larry Golden respectfully submits this Petition to strike from the prosecution file of his U.S. Patent No. Re43,990 a purported Inter Partes Review Certificate (Exhibit A), ostensibly created under 35 U.S.C. § 318(b). The USPTO lacked statutory authorization to generate this document. The existence of the Certificate is *ultra vires* agency authority. The fact of the Certificate being outside agency authority only became apparent on June 10, 2019, with issuance of the Supreme Court's opinion in *Return Mail, Inc. v. United States Postal Service* (Slip Opinion attached as Exhibit B). Mr. Golden invokes 37 C.F.R. § 1.182 (petitions to the Director for questions not specifically provided for), and submits the $200 fee under 37 C.F.R. § 1.17(f) (small entity) with this petition.

The Certificate is the culmination of an inter partes review (IPR) proceeding commenced (unlawfully, it turns out) by an agency of the United States government: the Department of Homeland Security ("DHS"). DHS filed its original IPR petition in 2014, a time when the USPTO was freely accepting and ruling on Federal Government agency-filed petitions. Mr. Golden appeared *pro se* and attempted to defend his patent. Eventually, though, the Patent Trial and Appeal Board sided with DHS under the claim construction and review standards of the time, finding all three challenged claims unpatentable.

## BACKGROUND OF THE *RETURN MAIL* DECISION

Under *Return Mail*, the Supreme Court determined that no agency of the Federal Government has a right to file an IPR petition, thus the USPTO has no subject matter or statutory jurisdiction to entertain it. In *Return Mail*, the Supreme Court "granted certiorari to determine whether a federal agency is a 'person' capable of petitioning for post-issuance review under the AIA." (Slip op. at 6). Since there was no statutory definition of "person" for the AIA, the Court applied the "'longstanding interpretive presumption that "person" does not include the sovereign,' and thus excludes a federal agency . . . ." (Slip op. at 7, citations omitted).

The Court considered (but rejected) the Postal Service's attempt to evoke "some affirmative showing of statutory intent to the contrary." (Slip op. at 8, rejecting argument that presumption is "weakest" when the sovereign obtains a benefit and "strongest" when it evades a liability). The Court particularly rejected three arguments made by the Postal Service. None of these rebutted the presumption that "person" excludes an agency. (Slip op. at 9-17).

First, the Postal Service pointed to other places in the Patent Act that appeared to include the Federal Government within the scope of "person," arguing that the same term must be construed the same way throughout the statute. The Court disagreed, finding in "18 different

places" that "person" sometimes clearly included the Federal Government, sometimes clearly excluded the Federal Government, and sometimes did not make it clear. (Slip op. at 9-10). The Court then analyzed more deeply the right of federal agencies to apply for patents spelled out in 35 U.S.C. § 207(a)(1). There, the Court held that this provision "provides no clue as to the interpretation of the AIA review provisions because it implies nothing about what a federal agency may or may not do following the issuance of someone else's patent." (Slip op. at 11).

Second, the Postal Service pointed to the Federal Government's longstanding history with the patent system. The pertinent argument here was that the USPTO, via "executive interpretation," has permitted federal agencies to be "persons" who seek ex parte reexamination since 1981. (Slip op. at 13). This argument, too, failed because 1981 MPEP statements about reexamination had "no direct relevance" to the separate question of the no-sovereign presumption under the 2011 AIA: ex parte reexamination is "a fundamentally different process than an AIA post-issuance review proceeding." (Slip op. at 14).

Finally, the Postal Service pointed to the fact that the Federal Government, like other potential infringers, is subject to civil liability and can assert a defense of patent invalidity. (Slip op. at 15). The Court saw "no oddity" and believed that the Postal Service "overstates the asymmetry." (Slip op. at 15-16). This was because non-governmental actors "face greater and more uncertain risks if they misjudge their right to use technology that is subject to potentially invalid patents." (Slip op. at 16). "Because federal agencies face lower risks, it is reasonable for Congress to have treated them differently." (Slip op. at 16). The exclusion of federal agencies was also not "sufficiently anomalous to overcome the presumption that the Government is not a 'person' under the Act" because such exclusion "avoids the awkward situation" of a "civilian

patent owner" defending patentability in a proceeding initiated by one part of the government but overseen by another. (Slip op. at 17).

## ARGUMENT

The USPTO should strike the IPR Certificate from the file of Re43,990 because, respectfully, this agency had no statutory authorization to create it.

With this Petition, the USPTO may set precedent for the orderly correction of the "awkward situation" recognized as unlawful in *Return Mail*: post-grant review outcomes reached without any Patent Act authority. At oral argument in *Return Mail*, Federal Government counsel for the Postal Service stated that "in the years since the AIA was enacted, federal agencies have submitted 20 requests for all forms of AIA post-issuance review combined." (Supreme Court Transcript, at 61:1-5).[1] The '990 reissue patent led DHS—a Federal Government agency—to commence one of those few *ultra vires* proceedings. Mr. Golden respectfully submits that striking the *ultra vires* certificate is the most efficient and least disruptive way for the USPTO to set things right, and regain compliance with the law.

It is an elementary principle of administrative law that agencies have only the power that Congress grants them. *See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power . . . is limited to the authority delegated by Congress.").[2] Agencies should not read authority into statutes where none exists. "[I]f we were to '*presume* a delegation of power' from the absence of 'an express *withholding* of such power,

---

[1]*See* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2018/17-1594_5iel.pdf
[2] In the Federalist No. 14, James Madison wrote of the limited government and enumerated powers implied under our Constitution: "In the first place it is to be remembered that the general [federal] government is not to be charged with the whole power of making and administering laws. Its jurisdiction is limited to certain enumerated objects. . . ." The Federalist No. 14, at 61 (James Madison) (Cambridge Univ. Press, 2003).

agencies would enjoy virtually limitless hegemony . . . .'" *American Bar Ass'n v. FTC*, 430 F.3d 457, 468 (D.C. Cir. 2005) (*quoting Ry. Labor Exec. Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 571 (D.C. Cir. 1994)) (*en banc*) (emphasis in original). To recognize an executive agency's aggrandizement to itself of nontextual powers:

> would deal a severe blow to the Constitution's separation of powers. Under our system of government, Congress makes laws and the President, acting at times through agencies like EPA, "faithfully execute[s]" them. The power of executing the laws necessarily includes both authority and responsibility to resolve some questions left open by Congress that arise during the law's administration. But it does not include a power to revise clear statutory terms that turn out not to work in practice.

*Util. Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2446 (2014) (citations omitted) (overturning air pollutant rules).

Here, the only way for the USPTO Director and staff to comply with the law, and respect the Constitution, is to grant this petition. The IPR Certificate now lodged in the prosecution file should never have existed. Its continued presence directly violates the *Return Mail* holding, because it directly violates the established presumption that the Federal Government was not a "person" with any right to seek IPR in the first place.

No time limit or waiver argument applies to a petition like the present one, because statutory limits on an agency's authority to act are "'jurisdictional' in the sense that a challenge brought under it cannot be forfeited by failure to raise it before the agency." *Advanced Disposal Servs. East, Inc. v. NLRB*, 820 F.3d 592, 600 n.6 (3d Cir. 2016). "Agency actions beyond delegated authority are '*ultra vires*,' and courts must invalidate them." *Transohio Sav. Bank. v. Director, Office of Thrift Supervision*, 967 F.2d 598, 621 (D.C. Cir. 1992); *see also Catholic Health Initiatives v. Sebelius*, 617 F.3d 490, 497 (D.C. Cir. 2010) ("It is a cardinal principle of administrative law that an agency may act only pursuant to authority delegated to it by Congress.

. . . When an agency has acted beyond its delegated authority, a reviewing court will hold such action *ultra vires* . . . or a violation of the [APA]. . . ." (citations omitted)). By analogy, motions under Federal Rule of Civil Procedure 60(b)(4) brought based on "voidness" of a federal court judgment for lack of subject matter jurisdiction have no time limit. *Norris v. Causey*, 869 F.3d 360, 365 (5th Cir. 2017).

It also makes good sense to grant the requested relief, and would create no burden. The USPTO has plenary control over the materials deposited into patent prosecution files. To remove *ultra vires* papers would serve the interests of justice by vindicating the rights of inventors and patentees not to be harassed by Federal Government IPRs—a right the Supreme Court just recently held that they possess.

## CONCLUSION

For the foregoing reasons, the Director and/or the Commissioner for Patents, and/or any authorized officer of the USPTO including the Office of Petitions, should grant the foregoing petition and strike the IPR Certificate from the prosecution file for U.S. Patent No. Re43,990.

Patentee believes that no additional fees are required; however, if necessary, the USPTO is authorized to deduct/credit any under/over payment from/to Deposit Account No. 601428. Should there be any questions or comments from the Office, the Office is invited to contact the undersigned at the below listed address.

July 1, 2019

Respectfully submitted,
 /Robert Greenspoon/
Robert Greenspoon
USPTO Reg. No. 40,004
*Attorney for Patentee Larry Golden*

Flachsbart & Greenspoon, LLC
333 N. Michigan Ave., 27th Floor
Chicago, IL 60601
Tel: 312-551-9500
Cc: Counsel for DHS in IPR2014-00714

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**U.S. Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 13/199,853 | | | |

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

Larry Golden
740 Woodruff Rd. #1102
Greenville, SC 29607

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/25/2020 | PAPER |

Please find below and/or attached an Office communication concerning this application or proceeding.

The time period for reply, if any, is set in the attached communication.

MOD PTOL-90A (Rev. 06/08)

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

LARRY GOLDEN,
*Patent Owner*

———————

Patent RE43,990
Application 13/199,853

———————

DECISION ON PETITON

This is a Decision denying Patent Owner's "PETITION TO STRIKE
*ULTRA VIRES INTER PARTES* REVIEW CERTIFICATE FROM THE
PROSECUTION FILE OF RE43,990 BASED ON *RETURN MAIL v. U.S.
POSTAL SERVICE*" filed July 2, 2019 (petition). In the petition, Patent
Owner requests that the *Inter Partes* Review Certificate[1] be stricken from
the prosecution file of U.S. Patent No. RE43,990. Petition 1. The petition is
stated to be filed under 37 C.F.R. § 1.182. *Id.* The petition fee pursuant to
37 C.F.R. § 1.17(g) of $200.00 was charged to Patent Owner's credit card on
July 3, 2019.

———————

[1] The *Inter Partes* Review Certificate for IPR2014-00714 issued July 24,
2018

Patent RE43,990
Application 13/199,853

## PROCEDURAL HISTORY

1. A Petition requesting *inter partes* review of claims 11, 74, and 81 of U.S. Patent No. RE43,990 was filed by the United States Department of Homeland Security (Petitioner) on April 30, 2014, and was assigned trial number IPR2014-00714 (Paper 1).

2. On July 30, 2014, Larry Golden (Patent Owner) filed a preliminary response to the Petition in IPR2014-00714 (Paper 10).

3. A Decision to institute the *inter partes* review of claims 11, 74, and 81 was entered in IPR2014-00714 on October 8, 2014 (Paper 16).

4. On January 22, 2015, Patent Owner filed a Response and a non-contingent Motion to Amend (MTA) in IPR2014-00714, which requested cancellation of claims 11, 74, and 81, and proposed substitute claims 154, 155, and 156 (Papers 25, 26).

5. On April 15, 2015, Petitioner filed a Reply to Patent Owner's Response and Opposition to the Motion to Amend (Papers 31, 32).

6. In a Final Written Decision (FWD) entered in IPR2014-00714 on October 1, 2015, the PTAB granted Patent Owner's MTA with respect to cancellation of patent claims 11, 74, and 81, and denied the MTA with respect to the proposed substitution of claims 154, 155, and 156 (Paper 35).

7. Patent Owner filed a Request for Rehearing in IPR2014-00714 on October 17, 2015, requesting reconsideration of the portion of the FWD that denied the proposed substitution of claims 154, 155, and 156 (Paper 36).

8. A Decision denying the Request for Rehearing was entered in IPR2014-00714 on November 17, 2015 (Paper 37).

2

Patent RE43,990
Application 13/199,853

9. An *Inter Partes* Review Certificate for IPR2014-00714 issued on July
24, 2018, and a copy of the Certificate was entered in the underlying
patent application 13/199,853 of U.S. Patent No. RE43,990 ('853
application).

10. Patent Owner filed the instant petition in the '853 application on July
2, 2019.

## RELEVANT AUTHORITY

35 U.S.C. § 318 provides in pertinent part:

(a) FINAL WRITTEN DECISION.—If an inter partes review is
instituted and not dismissed under this chapter, the Patent Trial and
Appeal Board shall issue a final written decision with respect to the
patentability of any patent claim challenged by the petitioner and any
new claim added under section 316(d).
(b) CERTIFICATE.—If the Patent Trial and Appeal Board issues a final
written decision under subsection (a) and the time for appeal has expired
or any appeal has terminated, the Director shall issue and publish a
certificate canceling any claim of the patent finally determined to be
unpatentable, confirming any claim of the patent determined to be
patentable, and incorporating in the patent by operation of the certificate
any new or amended claim determined to be patentable.

37 C.F.R. § 1.181 provides in pertinent part:

(f) The mere filing of a petition will not stay any period for reply that
may be running against the application, nor act as a stay of other
proceedings. Any petition under this part not filed within two months
of the mailing date of the action or notice from which relief is
requested may be dismissed as untimely, except as otherwise
provided. This two-month period is not extendable.

37 C.F.R. § 1.182 provides:

All situations not specifically provided for in the regulations of
this part will be decided in accordance with the merits of each

3

Patent RE43,990
Application 13/199,853

> situation by or under the authority of the Director, subject to
> such other requirements as may be imposed, and such decision
> will be communicated to the interested parties in writing. Any
> petition seeking a decision under this section must be
> accompanied by the petition fee set forth in § 1.17(f).

37 C.F.R. § 42.80 provides:

> After the Board issues a final written decision in an *inter partes*
> review, post-grant review, or covered business method patent
> review and the time for appeal has expired or any appeal has
> terminated, the Office will issue and publish a certificate
> canceling any claim of the patent finally determined to be
> unpatentable, confirming any claim of the patent determined to
> be patentable, and incorporating in the patent any new or
> amended claim determined to be patentable by operation of the
> certificate.

## DISCUSSION

In the petition, Patent Owner requests that the *Inter Partes* Review

Certificate be stricken from the prosecution file of U.S. Patent No.

RE43,990. Petition 1. Patent Owner asserts that the USPTO lacked

statutory authorization to generate this document and that the issuance of the

Certificate was thus *ultra vires*. *Id*. Patent Owner indicates that the fact of

the Certificate being outside agency authority only became apparent on June

10, 2019, with issuance of the Supreme Court's opinion in *Return Mail, Inc.*

*v. United States Postal Service* (Slip Opinion attached as Exhibit B). *Id*.

Patent Owner states:

> The Certificate is the culmination of an *inter partes* review
> (IPR) proceeding commenced (unlawfully, it turns out) by an agency
> of the United States government: the Department of Homeland
> Security ("DHS"). DHS filed its original IPR petition in 2014, a time
> when the USPTO was freely accepting and ruling on Federal
> Government agency-filed petitions. Mr. Golden appeared *pro se* and

4

Patent RE43,990
Application 13/199,853

> attempted to defend his patent. Eventually, though, the Patent Trial
> and Appeal Board sided with DHS under the claim construction and
> review standards of the time, finding all three challenged claims
> unpatentable.
>
> . . . .
>
> Under *Return Mail*, the Supreme Court determined that no
> agency of the Federal Government has a right to file an IPR petition,
> thus the USPTO has no subject matter or statutory jurisdiction to
> entertain it. In *Return Mail*, the Supreme Court "granted *certiorari* to
> determine whether a federal agency is a 'person' capable of
> petitioning for post-issuance review under the AIA" (Slip op. at 6).
> Since there was no statutory definition of "person" for the AIA, the
> Court applied the "'longstanding interpretive presumption that
> "person" does not include the sovereign,' and thus excludes a federal
> agency ..." (Slip op. at 7, citations omitted).

*Id.* at 2.

Patent Owner filed the instant petition on July 2, 2019, nearly a year

after the issuance of the *Inter Partes* Review Certificate on July 24, 2018.

Hence, the petition is not filed timely pursuant to 37 C.F.R. § 1.181(f) which

sets forth that "[a]ny petition under this part not filed within two months of

the mailing date of the action or notice from which relief is requested may

be dismissed as untimely." However, even if filed timely, the petition would

be denied. A petition under 37 C.F.R. § 1.182 is appropriate for requesting

relief not specifically provided for in the regulations, and is decided in

accordance with the merits of each situation. Patent Owner has not provided

sufficient cause to merit granting the requested relief in accordance with

37 C.F.R. § 1.182 because Patent Owner voluntarily filed a non-contingent

Motion to Amend (MTA), which requested cancellation of claims 11, 74,

and 81 and Patent Owner did not appeal the Final Written Decision.

Patent RE43,990
Application 13/199,853

In IPR2014-00714, the Board instituted an *inter partes* review of claims 11, 74, and 81 on October 8, 2014. After institution, Patent Owner filed a Patent Owner Response and voluntarily filed a non-contingent Motion to Amend (MTA), which requested cancellation of claims 11, 74, and 81, and proposed substitute claims 154, 155, and 156. An Order entered on February 4, 2015, states that in a conference call with the Board, Patent Owner confirmed that he elected to abandon the claims upon which trial was instituted. The Order states in pertinent part:

> We reminded Mr. Golden that, as set forth in our order of January 13, 2015 (Paper 23), with a noncontingent motion to amend, he bears the burden of demonstrating that the claims are patentable, and **that he is abandoning the claims on which trial was instituted. Mr. Golden confirmed again that the motion to amend was a non-contingent motion to amend.** (emphasis added).

Order (Paper 29) at 2.

The Board entered a Final Written Decision on October 1, 2015, which granted Patent Owner's MTA with respect to cancellation of claims 11, 74, and 81, and denied proposed substitute claims 154-156. *See* 35 U.S.C. § 318(a). Patent Owner filed a Request for Rehearing to request reconsideration of the portion of the FWD that denied proposed substitute claims 154, 155, and 156. The Board entered a Decision denying the Request for Rehearing on November 17, 2015. Notably, Patent Owner did not appeal the Board's Final Written Decision to the U.S. Court of Appeals for the Federal Circuit. Consequently, the Board issued the *Inter Partes* Review Certificate on July 24, 2018 in accordance with 35 U.S.C. §§ 318(b) and 37 C.F.R. § 42.80.

Patent RE43,990
Application 13/199,853

For these reasons, Patent Owner has failed to provide sufficient cause to merit the requested relief to strike the Certificate. Indeed, given that the IPR involving Patent Owner's patent is no longer pending before the USPTO or any other forum – and that the USPTO was therefore required to issue the *Inter Partes* Review Certificate pursuant to 35 U.S.C. § 318(b) – there does not appear to be any mechanism for granting the Patent Owner the relief he requests. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."); *Harper v. Va. Dep't of Taxation,* 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect <u>in all cases still open on direct review</u> and as to all events, regardless of whether such events predate or postdate our announcement of the rule.") (emphasis added). Accordingly, the petition is **<u>denied</u>**.

CONCLUSION

In view of the foregoing, Patent Owner's petition is DENIED.


<u>/s/ Scott C. Weidenfeller</u>
Scott C. Weidenfeller
Vice Chief Administrative Patent Judge


<u>Patent Owner</u>:
Larry Golden
740 Woodruff Rd.
#1102
Greenville, SC 29607

7

Patent RE43,990
Application 13/199,853


<u>Attorney for Patentee</u>:
Robert Greenspoon
Flachsbart & Greenspoon, LLC
333 N. Michigan Ave., 27th Floor
Chicago, IL 60601

8

Receipt Number CFC100004418

# In the United States Court of Federal Claims

Larry Golden

_____

**Plaintiff(s),**

v.

**THE UNITED STATES,**

**Defendant.**

_____

Case No. _____19-104 C_____

Judge _____

## COMPLAINT

Your complaint must be clearly handwritten or typewritten, and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space, you may use another blank page.

If you intend to proceed without the prepayment of filing fees (*in forma pauperis* (IFP)), pursuant to 28 U.S.C. § 1915, you must file along with your complaint an application to proceed IFP.

1. **JURISDICTION.** State the grounds for filing this case in the United States Court of Federal Claims. The United States Court of Federal Claims has limited jurisdiction (*see e.g.,* 28 U.S.C. §§ 1491-1509).

This is a claim pursuant to 28 U.S.C. 1491(a) for recovery of Plaintiff's reasonable and entire compensation for the unlicensed use and manufacture, for and by the United States, of inventions described in and covered by United States Patent Numbers: 7,385,497; 7,636,033; 8,106,752; 8,334,761; 8,531,280; ,RE43,891; RE43,990; 9,096,189; 9,589,439; and, 10,163,287. The jurisdiction of this Court is based on the provisions of 28 U.S.C. 1491(a): 28 U.S.C. 1491 : "The United States Court of Federal Claims shall have jurisdiction to render judgement upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with bthe United States, or for liquidated or unliquidated damages in cases not sounding in tort". The Fifth Amendment of the United States Constitution includes a provision known as the Taking Clause, which states that "private property [shall not] be taken for public use, without just compensation."

Received - USCFC
JAN 17 2019

## 2. PARTIES

Plaintiff, Larry Golden _____, resides at 740 Woodruff Road, #1102 _____

(Street Address)

Greenville, SC 29607 _____, 864-288-5605 _____

| (City, State, ZIP Code) | (Telephone Number) |

If more than one plaintiff, provide the same information for each plaintiff below.

_____

_____

_____

**RELATED CASES.** Is this case directly related to any pending or previously filed cases in the United States Court of Federal Claims? ⦿ Yes ◯ No

If yes, please list the case(s) below, including case number(s):

Larry Golden v. The United States; Case No. 13-307 C

## 3. STATEMENT OF THE CLAIM. 
State as briefly as possible the facts of your case. Describe how the United States is involved. You must state exactly what the United States did, or failed to do, that has caused you to initiate this legal action. Be as specific as possible and use additional paper as necessary.

PLAINTIFF LARRY GOLDEN, (hereinafter, "Complainant", " Plaintiff", or "Patent Owner") individually files this Complaint against Defendant UNITED STATES OF AMERICA (hereinafter, " Defendant", "Government", "United States", "DOJ", "DHS", " Claims Court", "PTAB Court", or "Appeals Court"). Plaintiff alleges the following based on information and belief, and personal knowledge as to the allegations pertaining to itself. Plaintiff Larry Golden makes the following allegations in support of his claim for relief and recovery of Plaintiff's reasonable and entire compensation under 28 U.S.C. 1491(a): " Government" 'Takings' of a Patent under the Fifth Amendment Clause" (hereinafter, "Fifth Amendment Takings" or "Takings"). PLAINTIFF LARRY GOLDEN, is filing this Complaint pursuant to RCFC 40(b): Seperate Trails. "For convenience, to avoid prejudice, or to expedite and economize...

A-6

**4.  RELIEF.**  Briefly state exactly what you want the court to do for you.

Enter judgement that the "Government" has "Taken" Plaintiff's property within the meaning of the Fifth Amendment to the United States Constitution, and award Plaintiff his full and just compensation for the unconstitutional "Takings" of Plaintiff's prop

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___17th___ day of ___January___, ___2019___.
         (day)           (month)         (year)

_____
(Signature of Plaintiff(s)

A094

A-7

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LARRY GOLDEN,

               Plaintiff,

               V.

UNITED STATES,

               Defendant.

Case No: **19-104 C** _____

Judge:_____

January 17, 2019

## <u>COMPLAINT</u>

PLAINTIFF LARRY GOLDEN (hereinafter, "Complainant", "Plaintiff" or "Patent Owner") individually files this Complaint against Defendant UNITED STATES OF AMERICA (hereinafter, "Defendant", "Government", "United States", "DOJ", "DHS", "Claims Court", "PTAB Court", or "Appeals Court"). Plaintiff alleges the following based on information and belief, and personal knowledge as to the allegations pertaining to itself.

Plaintiff Larry Golden makes the following allegations in support of its claim for relief and recovery of Plaintiff's reasonable and entire compensation under 28 U.S.C. § 1491(a): "Government 'Takings' of a Patent under the Fifth Amendment Clause" (hereinafter, "Fifth Amendment Takings" or "Takings").

## PARTIES

Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

The United States is the Defendant to this action based upon the actions and conduct of its agents, including at least the following: Court of Federal Claims (CFC); Department of Justice (DOJ); Department of Homeland Security (DHS), Court of Appeals for the Federal Circuit (CAFC) and all other Government Agencies and personnel named in this pleadings.

## MANDATORY NOTICE OF RELATED PROCEEDINGS

The Plaintiff's United States Patents: 7,385,497; 7,636,033; 8,106,752; 8,334,761; 8,531,280; RE43,891; RE43,990; 9,096,189; 9,589,439; and, 10,163,287 is being asserted by Patent Owner against the UNITED STATES OF AMERICA in the United States Federal Court of Claims (CFC) through a suit *Larry Golden v. United States*, Case No. 13-307 C. The case was filed on May 1, 2013 under the statutes: 28 U.S.C. § 1491(a) "Government Takings of a Patent under the Fifth Amendment Clause" and 28 U.S.C. § 1498(a) "Government Infringement". The 28 U.S.C. § 1491(a) "Government Takings of a Patent under the Fifth Amendment Clause" alleged in this complaint is POST the May 1, 2013 filing date of Case No. 13-307 C currently pending in the United States Federal Court of Claims (CFC). See Final Amended Complaint (Dkt. No. 121) filed 08/10/2017 and Final Claim Chart (Dkt. No. 121) filed 08/10/2017

## PARTIES

Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

The United States is the Defendant to this action based upon the actions and conduct of its agents, including at least the following: Court of Federal Claims (CFC); CFC Senior Judge

Susan G. Braden, CFC Senior Judge Eric G. Bruggink, Department of Justice (DOJ);

Department of Homeland Security (DHS), Court of Appeals for the Federal Circuit (CAFC) and

all other Government Agencies and personnel named in this pleadings.

## JURISDICTION

This is a claim pursuant to 28 U.S.C. § 1491(a) for recovery of Plaintiff's reasonable and

entire compensation for the unlicensed use and manufacture, for and by the United States, of

inventions described in and covered by United States Patent Numbers: 7,385,497; 7,636,033;

8,106,752; 8,334,761; 8,531,280; RE43,891; RE43,990; 9,096,189; 9,589,439; a Continuation

Patent Application 15/530,839 filed March 06, 2017 that published on 06/29/2017 under

Publication No: US 2017-0186259 A1 and Issued as Patent Number 10,163,287 on December

25, 2018; a Continuation Patent App. to the now issued patent 10,163,287, filed January, 2019

The jurisdiction of this Court is based on the provisions of 28 U.S.C. § 1491(a): 28

U.S.C. § 1491(a): The United States Court of Federal Claims shall have jurisdiction to render

judgment upon any claim against the United States founded either upon the Constitution, or any

Act of Congress or any regulation of an executive department, or upon any express or implied

contract with the United States, or for liquidated or unliquidated damages in cases not sounding

in tort.

The Fifth Amendment of the United States Constitution includes a provision known as

the Takings Clause, which states that "private property [shall not] be taken for public use,

without just compensation."

## CONSTITUTIONAL PROVISION: 28 U.S.C. §§ 1491

When the Government takes property without following the eminent domain procedure,

the affected property owner (Plaintiff) has the right to bring an inverse condemnation "Takings"

lawsuit against the Government entity(s) that has taken his property The "Government Fifth Amendment Takings" lawsuit that is filed under 28 U.S.C. § 1491 by the Plaintiff is "inverse" rather than "direct" because it is brought by the patent owner, not by the Government agency(s) or other entities having eminent domain power.  Therefore, the Plaintiff understands he carries the burden of proof that his property rights were taken without the payment of compensation. This differs from a direct condemnation following eminent domain procedures which places the burden of proof upon the Government.

Inverse condemnation is not limited to the permanent physical taking of the Plaintiff's property.  Rather, it can include a temporary taking or occupation of private or personal property that includes government regulation which burdens the property in such a way that the Patent Owner cannot derive any economical use out of it.  When Government regulation significantly burdens private or personal property the inverse condemnation may be referred to as a "regulatory taking."  Most importantly, in an inverse condemnation or regulatory taking scenario the government has failed to pay just compensation for the private property rights that have been taken.

Intangible assets are non-physical assets (such as franchises, trademarks, patents, copyrights, and goodwill) that grant the potential for certain rights and privileges as well as the possibility for economic benefits to the owner. The subject matter of a patented invention is considered intangible. In Ruckelshaus v. Monsanto Company, 467 U.S. 986 (1984) the Court held that a trade secret (i.e. intellectual property) is constitutionally protected property, and a claim for its taking is within Tucker Act cognizance: "Although this Court never has squarely addressed the question whether a person can have a property interest in a trade secret, which is admittedly intangible, the Court has found other kinds of intangible interests to be property for

4

purposes of the Fifth Amendment's Taking Clause." See, e.g., Armstrong v. United States, 364 U.S. 40, 44, 46 (1960) (materialman's lien provided for under Maine law protected by Taking Clause); Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 596 -602 (1935) (real estate lien protected); Lynch v. United States, 292 U.S. 571, 579 (1934) (valid contracts are property within meaning of the Taking Clause). . . ." 467 U.S. at 1003. That patent rights are property rights, entitled to just compensation when taken by the United States, is not subject to revision at this late date. The premises as explained in 1910 remain intact, as explained in the record of that enactment: Rep. Dalzell. But if the Government, through an authorized officer, has seen fit to appropriate a patent of a citizen… every time that the United States Government assumes to take forcibly, without the consent of the owner, a patented process, it violates the constitutional provision which says no man's property shall be taken without compensation and without due process of law. 45 Cong. Rec. 8755 at 8780.

## STATEMENT OF FACTS

1. Between the years 2003-2006 the Plaintiff presented three "Economic Stimulus and Terrorist Prevention Packages" to President Bush, his Cabinet, the Council of Economic Advisers, the Black Congressional Caucus, the U.S. Senate, and the vast majority of the U.S. Congress, that detailed the strategy of "Product Grouping" CD of Patent Owner's Discovery Documents **Vol. I, Appx.1.** The "Product Grouping" strategy detailed how we as a Nation could not only deter and prevent terrorist acts and activities, but would also stimulate the economy as well. The strategy involved the grouping of products, devices, and systems needed from the different industries; the grouping of products, devices, and systems needed to form a network(s) for the ubiquitous communicating, monitoring, detecting (sensing), and controlling the events and activities of our Nation's land, sea, and air.

5

A099

2.  The Government's job in the strategy was to create competition through
solicitations that would drive the cost down; making the cost to participate in the ubiquitous
communicating, monitoring, detecting (sensing), and controlling, affordable to everyone and
every industry (e.g. the government, the military, first responders, Law enforcement, the
automobile industry, the lock industry, the detection industry, the medical industry, the
telecommunication industry, and the security industry).

3.  The next step was to innovate: Plaintiff filed with the USPTO on November 17,
2004 a Disclosure Document that is used as evidence of conception of a device that is capable of
communicating, monitoring, detecting, and controlling. The device was designed for
Government and military use and therefore had to include security features (e.g. biometric
technology that includes at least fingerprint and facial; disabling lock to deny entry after multiple
failed attempts; radio frequency (RF) near-field communication (NFC) as a safer option to RFID.

4.  The Product Groupings strategy for preventing terrorism and stimulating the
economic was started by the Plaintiff in the year 2004. NASA, Apple, Samsung, LG, and
Qualcomm began administrating the strategy in the year 2008 when the DHS S&T Directorate
awarded the Companies contracts to develop a modified a cell phone (smartphone) device for
communicating, monitoring, detecting (sensing), and controlling. The development contracts
were based on the same technology Plaintiff shared with the Department of Homeland Security
(DHS) in a response to their Cell-All solicitation in the year 2007. Plaintiff also shared the same
technology in a discussion with Mr. Edward Turner, Program Manager; DHS/S&T Directorate
during an invite to the DHS in January, 2008. Example of stimulus strategy:

5.  Apple's total revenue for the year 2008 was $11.9 billion; Apple's total revenue
for the year 2016 was $246.3 billion. Apple's market capitalization for the year 2008 was $88.68

6

A100

billion; Apple's market capitalization for the year 2016 was $625.27 billion, and as of Dec. 6,

2017, Apple's market capitalization was $867.75 billion. Apple is on track to having $1 trillion in

market capitalization by year-end 2018. Apple's total number of employees for the year 2008

was 32,000; Apple's total number of employees for the year 2016 was 123,000.

6.      The Plaintiff wouldn't be here if the Government had authorized Apple, Samsung,

LG, and Qualcomm to develop a different version of a modified smartphone. The Government

authorized Apple, Samsung, LG, and Qualcomm to develop the Plaintiff's version of a

communicating, monitoring, detecting and controlling (CMDC) device but chose to keep the

same generic name of their product (e.g. smartphone).

7.      Based on hindsight, Plaintiff understands it seems like all of what Plaintiff

mentioned above was obvious to the development of the smartphone and was done first by

Apple, Samsung, LG, and Qualcomm. But that's not possible when the Plaintiff's CMDC device,

which was conceived in the year 2004, antedates Steve Job's smartphone that was introduced in

January of 2007 and only introduced GPS for the smartphone in January of 2008.

8.      Upon information and belief, the United States has "taken" and continues to

"take" the Plaintiff's personal property for the benefit of the public without paying just

compensation for the "takings". Plaintiff believes the first Government solicitation (request) for a

cell phone device capable of detecting chemical and biological agents, that included the subject

matter for the Plaintiff's Communicating, Monitoring, Detecting, Controlling (CMDC) Device

was issued on October 20, 2007 when the Department of Homeland Security (DHS) published a

pre-solicitation (Solicitation number BAA07-10), titled "Cell-All Ubiquitous Biological and

Chemical Sensing" ("Cell-All Solicitation"). The Cell-All Solicitation called for multiple

miniaturized sensors to be integrated with common devices ("Cell-All Devices"). Cell-All

Devices are cell phones equipped with multiple sensors used to identify and alert individuals and agencies of potential biological, chemical, radiological, or explosive threats.

9.　　On November 28, 2007, the Plaintiff responded to the Cell-All Solicitation with a proposal, and in that proposal notified the agency that the Cell-All Solicitation called for a multi sensor detection system that incorporated the '497 Patent's technology: "CELL-ALL technical approach & rational taken from, 'Multi Sensor-Detection and Lock Disabling System.' (Patent Pending; Pub., 10-18-07; App. #11/397,118)."

10.　　On September 28, 2011, the Department of Homeland Security gave a Cell-All Live Demonstration for Environmental Sensing. During this presentation the NASA Ames Research Center, Synkera Technologies, NC4, and Qualcomm gave a demonstration of prototype Cell All Devices. These prototypes utilized a separate sensor module, which communicates via Bluetooth with Qualcomm software to an Android phone. The cellphone, via a wireless network, sends the sensor data to a monitoring system. The monitoring system can send messages back to the phone to receive more or less information, and can contact emergency responders if necessary.

11.　　Plaintiff is submitting a CD that illustrates at least an implied or express contract between DHS, NASA Ames Research Center, Synkera Technologies, NC4, and Qualcomm. Upon information and belief the elements of the at least implied or express contract between DHS, NASA Ames Research Center, Synkera Technologies, NC4, and Qualcomm are listed below. The passages provides proof of  such a contract; authorization and consent; and, Government use (Fitzpatrick—Attorney Work Product—CD; 11-09-27-cellall-v-all.mp4) **Vol. I Appx.2** Below is a summary of the CD:

8

A102

Welcome and Introduction made by Stephen Dennis, DHS Program Manager for the "Cell-All Ubiquitous Chemical Sensing Project".

- 16 minutes in: diagram of Qualcomm's sensing device and the needed specifications for the Apple iPhone.
- 21 minutes in: Cell-All prototype demonstration begins.
- 32 minutes in: quote from Dr. Jing Lee, "we have many phones in the field".
- 37 minutes in: diagram featuring Qualcomm.
- 38 minutes in: quote from Doug Hoffman, Program Manager for Qualcomm, "use commercial cell phone ecosystem".
- 41 minutes in: diagram showing at least twenty-five (25) necessary stakeholders (far exceeds the four (4) stakeholders of Apple, Samsung, LG, and Qualcomm named in Plaintiff-Appellant's complaint).
- 1:19 minutes in: quote from the "DHS Program Manager for the "Cell-All Ubiquitous Chemical Sensing Project" Stephen Dennis, "already for sell this week".
- 1:44 minutes in: quote from the "DHS Program Manager for the "Cell-All Ubiquitous Chemical Sensing Project" Stephen Dennis, "cooperative agreements".

12. The Cell-All CD **Vol. I Appx.2** is Plaintiff's factual evidence and proof of Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) Device, "manufactured for and by the Government" with "authorization and consent" on the heightened standard of "clear and convincing evidence.

13. "*In Larson v. United States*, the Claims Court recognized that implied authorization "may be found under the following conditions: (1) the government expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the government had some knowledge of the infringement." The purpose behind permitting the government's authorization or consent to be implied is tied to the

government's need to procure items without disruption, and avoid the need for government agencies to perform an exhaustive patent search for products or services they wish to procure.

14. *In TVI Energy*, "the Federal Circuit found implied authorization or consent where the government required a contractor to demonstrate an allegedly infringing device as part of bidding requirements under a United States military solicitation for disposable thermal targets." The Government has "taken" and is using the Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) Device without a license. For that reason alone, the Plaintiff has stated a claim for which relief may be granted.

## THE GOVERNMENT'S CONTINUED REQUEST FOR PLAINTIFF'S "COMMUNICATING, MONITORING, DETECTING, AND CONTROLLING (CMDC) DEVICE"

15. 2013: Smartphones and Handheld Devices for Defense and Homeland Security Strategies, Plans, Challenges & Opportunities Symposium:

"U.S. Coast Guard Smartphones Needs, Challenges & Opportunities" Rear Admiral Robert E. Day, Jr., Assistant Commandant for Command, Control, Communications, Computers & Information Technology, (C4IT) & Director, Coast Guard Cyber Command, Pre-Commissioning Detachment, U.S. Coast Guard.

"DoD Mobile Strategy" Mr. Mark Norton, Senior Engineer, Department of Defense, Office of the Chief Information Officer, Office of the Under Secretary of Defense (CIO/OSD).

"Update on Spectrum Sharing for Mobile Devices at the Tactical Edge" Mr. Julius Knapp, Chief Engineer, Office of Engineering and Technology, Federal Communications Commission (FCC).

A104

"Secure Smartphone Computing, Needs and Opportunities for a Secure yet Mobile Platform" Mr. Keith Trippie, Executive Director, Enterprise System Development, Office of the Chief Information Officer, Department of Homeland Security (DHS).

"DISA's Strategic Mobility Vision" Mr. Gregory Youst, Chief Mobility Engineer, Technology and Integration Division, Chief Technology Officer, Defense Information Systems Agency (DISA) (invited).

"Content-Based Mobile Edge Networking (CBMEN)" Dr. Keith Gremban, PhD., Program Manager, Content Based Mobile Edge Networking (CBMEN), Defense Advanced Research Project Agency (DARPA).

"Transformative Apps Program" Mr. Doran Michaels, Program Manager, Transformative Apps, DARPA.

"Windshear II Update" Mr. John-Isaac Clark, Chief Innovation Officer, Thermopylae Sciences & Technology & Mr. Lenwood Washington, Senior Systems Engineer, Mission Integration Directorate, Acquisition and Engineering, National Reconnaissance Office (NRO).

"Advancements in Mobile Devices for Chem-Bio Detection and Characterization" Dr. Calvin CHUE, PhD., Research Biologist, U.S. Army Research, Development and Engineering Command (RDECOM).

"ADAPT Unattended Ground Sensor Using Android Operating System and Original Design Manufacturers" Mr. Mark Rich, Program Manager, Strategic Technology Office, DARPA.

16.     2013: "The U.S. Department of Defense confirmed in a statement on Friday that Apple's iOS 6 mobile operating system is secure enough to connect to secure Pentagon networks."

A105

17.     2013: "The U.S. Department of Defense confirmed in a statement on Friday that Apple's iOS 6 mobile operating system is secure enough to connect to secure Pentagon networks."

18.     2013: "Samsung's potential government deal signals new era for mobile security: Samsung may be ready to sign deals with the FBI and the U.S. Navy. Analysts say the news is proof that mobile in the enterprise has arrived. Samsung is close to inking a deal with the FBI and the U.S. Navy for mobile devices."

19.     2013: "National Institute of Standards and Technology (NIST), which examines and tests mobile devices and technologies for security clearance, granted the Apple software FIPS 140-2 certification (Level 1) last Friday. This approves iPhones and iPads running the software in conjunction with the U.S. government's lowest level of national security clearance."

20.     2013: "The U.S. Department of Defense announced today that it was further dropping its exclusive BlackBerry contract and opening all of its mobile communications networks to Apple, Google, and other device makers. 'The Department of Defense is taking a leadership role in leveraging mobile device technology by ensuring its workforce is empowered with mobile devices,' Defense Department Chief Information Officer Teri Takai said in a statement today."

21.     2013: "Samsung recently received the nod from the Pentagon for any Samsung device protected by the Knox security software, which includes the Galaxy S4 and other compatible tablets."

22.     2013: "For the first time, Apple's push into federal use opens up the U.S. government and military to competition for device procurement in the mobile space."

A106

23.     2014: "The mobile device management system–MDM–began operating Jan. 31 as a control system through which approved devices must operate to get access to Defense Department networks. The MDM enforces security policies by blocking or permitting certain functions on smartphones and tablets."

24.     2014: "By opening its networks to Samsung and Apple devices, Defense Information Systems Agency (DISA) intends to broaden the variety of mobile computers that troops and civilian Defense Department employees can use in the field, on bases, in offices and elsewhere to receive and send information and work almost anywhere at any time."

25.     2014: "Samsung has announced that five of its Galaxy devices have been approved for the U.S government's Defense Information System Agency (DISA) products list. The devices include the Galaxy S4, Galaxy S4 Active, Galaxy Note 3, the Galaxy Note Pro 12.2 and the Galaxy Note 10.1 2014 Edition. All of them are using Android 4.4 (KitKat) along with Samsung's KNOX secure workspace platform, which includes system-level encryption for enterprise-based apps."

26.     2014: "The United States Air Force is replacing 5000 legacy BlackBerry smartphones with Apple's iPhone, and eventually all of their BlackBerry users will have to make the changeover. The announcement, reported by Defense News, comes as the future of BlackBerry within the Department of Defense is debated, with the chips seeming to fall on the side of transitioning away from a network supporting a mish-mash of BlackBerry 6 and 7 devices to a mix of modern devices — though apparently without BlackBerry 10 in that mix."

27.     2015: "Navy Plans for Android and iOS Devices. The Navy Enterprise Networks (NEN) Program Office is making progress on plans to transition to more modern mobile devices. Early users will be able to choose between the iPhone 5c and 5s, but the Navy wants to be as

13

A107

flexible as possible and allow users to pick the devices that will work best for them, and plans to

approve a wider range of devices. Approval to use the iPhone 6 and iPad Air is expected in Jan.

or Feb. 2015, and approval to use Samsung Android phones and tablets is expected in March."

28.     2016: "This fiscal year Marines will receive Samsung smart phones that make

calling for fire support easier, quicker and more accurate. The Target Handoff System Version 2,

or THS V.2, is a portable system designed for use by dismounted Marines to locate targets,

pinpoint global positioning coordinates and call for close air, artillery and naval fire support

using secure digital communications."

29.     2016: "Both the LG Electronics G5 and V10 received a security certification from

the U.S. Defense Information Systems Agency, as well as a certification by the National

Information Assurance Partnership, which administers independent tests to see if the devices are

reliable and secure. The two newer LG smartphone models have joined the select list of official

devices that can be used by Department of Defense employees, according to the handset

manufacturer and a DOD website. LG's older models, the G3 and G4 also received DISA

certifications. The phones come equipped with LG's encryption technology from 2013, LG

GATE. The advanced tech has secure email options, supports Virtual Private Network (VPN),

and can remotely wipe the phone's memory."

30.     2016: "Use of Mobile Technology for Information Collection and

Dissemination": A DACS Technology Assessment Report: The Data & Analysis Center for

Software (DACS) was one of several United States Department of Defense (DoD)

sponsored Information Analysis Centers (IACs), administered by the Defense Technical

Information Center (DTIC). It was managed by the U.S. Air Force Research Laboratory (AFRL)

and operated by Quanterion Solutions Inc. under a long term DoD contract. The website is no

14

A108

longer available and was replaced by https://www.csiac.org/ DACS Report Number 518055:

Contract FA1500-10-D-0010; Prepared for the Defense Technical Information Center; Prepared

By: Chet Hosmer, Chief Scientist; Carlton Jeffcoat, Vice President, Cyber Security Division;

Matt Davis, Malware Analyst; Wetstone/Allen Corporation of America; 10400 Eaton Place;

Fairfax, VA 22030; Thomas McGibbon, DACS Director; Quanterion Solutions Inc. 100

Seymour Road Utica, NY 13502. (Paragraphs 79-84 below were taken from the Report)

31.     Mobile technology is increasingly being utilized as a tool for information

dissemination and collection across the Government. The Department of Defense (DoD),

Department of Homeland Security (DHS), Intelligence communities, and law enforcement are

among those agencies utilizing mobile technology for information management. The primary

mobile devices being utilized are the iPad®, iPhone®, Android™, and Windows Mobile™. The

open architecture of these devices is advantageous for rapid application development and release.

32.     New mobile technologies such as the iPhone®, iPad®, Android™ and similar

devices have revolutionized the way information can be distributed. In the past, mobile devices

such as Personal Data Assistants (PDAs) primarily focused on data storage and display. Today,

an increasingly large number of devices are focusing not only on data storage and display, but

also on communication and processing. As a result organizations have begun leveraging mobile

technology as a means of information dissemination. These organizations include, but are not

limited to, Government organizations such as the Department of Defense (DoD), the United

States Army, the Department of Homeland Security (DHS), and a number of critical

infrastructure organizations.

33.     Significant advancements in mobile technology have occurred since September

11, 2001, both in the advancement of the devices and the infrastructures that support them. For

15

example, mobile devices like the Android™ and iPad® can now operate equally and seamlessly via traditional cellular networks, as well as with infrastructure/ad hoc wireless networks.

34.     The Defense Advanced Research Projects Agency (DARPA) has launched a program known as the Transformative Apps Program. The purpose of this program is to place the correct mobile applications into the hands of warfighters. To facilitate this, a military application store is being created to promote collaboration between developers and users in the field.

35.     Another DoD initiative is Connecting Soldiers to Digital Applications (CSDA), sponsored by the Army Capabilities Integration Center (ARCIC) and the Army CIO/G6, with support from the Army Training and Doctrine Command (TRADOC) deputy commanding general for Initial Military Training, and other Army organizations. The purpose of this initiative is to determine the value of giving soldiers applications on mobile devices [ARMY]. During Phase One of the initiative the Army experimented with several types of smart phones to evaluate the effectiveness and usefulness of various mobile applications in the field. Devices tested included the Apple iPhone®, Google Android™ devices, and Microsoft Windows Mobile™ phones [C4ISR]. On these devices, applications were tested which covered a wide range of functions.

36.     DoD is also starting to integrate chemical and biological sensors into mobile devices. Researchers from the University of California, San Diego have developed a miniature chemical sensor which can detect harmful gas in the air and automatically send the information about the type and transmitting range of the gas. The chemical sensor is a silicon chip with hundreds of independent miniature sensors. These can identify the molecule of specific toxic gas and then report on it.

## COUNT I: TAKING OF PROPERTY WITHOUT JUST COMPENSATION

37.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

38.     Plaintiff is the sole holder of all rights, titles, and interests in and to the '497;
'033, '752; '761, '280, '891; '990, '189, '439 and '287 patents, including all rights to enforce
this patent and collect past and future damages for a "Government Takings".

39.     Plaintiff brings this claim on behalf of itself.

40.     The Government is prohibited from taking "property . . . for public use, without
just compensation." U.S. Const. Amend. V. The issuance of a patent to Plaintiff recognized a
property right in each of the inventions embodied in the relevant claims, and those property
rights were presumed valid, and when issued those property rights vested in Plaintiff. See, e.g.,
Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank, 527 U. S. 627, 642
(1999) (patents as property right); James v. Campbell, 104 U. S. 356, 358 (1882) (same).

41.     Plaintiff's patents granted him the right to dispose of, transfer, or exclude others
from the use of the invention. See Adams v. United States, 391 F.3d 1212, 1224 (Fed. Cir. 2004)
(Under the Takings Clause, "property" is defined as a "legally-recognized property interest such
as one in real estate, personal property, or intellectual property.")

42.     Upon information and belief, the United States has "taken" and continues to
"take" the Plaintiff's personal property for the benefit of the public without paying just
compensation for the "takings". Pursuant to the guidelines of a "Government Fifth Amendment
Takings of a Patent" through the power of "eminent domain": the Government has taken the
private and personal property subject matter as outlined in the Plaintiff's U.S. Patent No.
7,385,497 ("'497 Patent"), U.S. Patent No. 7,636,033 ("'033 Patent"), U.S. Patent No. 8,106,752
("'752 Patent"), U.S. Patent No. 8,334,761 ("761" Patent"), U.S. Patent No. 8,531,280 ("280

A111

Patent"), U.S. Reissue Patent No. RE43,891 ("'891 Patent"), U.S. Reissue Patent No. RE43,990

("'990 Patent"), U.S. Patent No. 9,096,189 ("'189 Patent"), U.S. Patent No. 9,589,439 ("'439

Patent"), and U.S. Patent No. 10,163,287 ("'287 Patent) specifications and patent claims that are

significantly the same or equivalent to the claimed inventions of the Plaintiff.

43.     It is the belief of the Plaintiff that the "Government" was given adequate notice,

made aware of, and told or signaled that the private and personal property subject matter as

outlined in the Plaintiff's patent(s) specifications and patent claims that was "taken" by the

"Government" are significantly the same or equivalent to the claimed inventions of the Plaintiff;

the "Government" has taken and used for the benefit of the public, the private and personal

property subject matter as outlined in the Plaintiff's patent(s) specifications and patent claims

that are significantly the same or equivalent to the claimed inventions of the Plaintiff; resulting in

the Government's manufacture and development of products, devices, methods, and systems that

are significantly the same or equivalent to the claimed inventions of the Plaintiff.

44.     It is the belief of the Plaintiff that the resulting economic impact of the "Takings"

is a reduction in value of the Plaintiff's property and by virtue of the access, disclosure,

manufacture, development or use, by or for the Government and its third party awardees, has

destroyed the Patent Owner's competitive edge; through the use, disposal, and right of a

government to take private or personal property for public use, the "Takings" has had a

substantial adverse impact (means unfavorable or harmful; preventing success or development)

on "the reasonable investment-backed expectations" of the Plaintiff.

45.     It is the belief of the Plaintiff that the character of the Government's action was

triggered when the "Takings" caused a permanent invasion of the Plaintiff's property and

A112

eliminated all economically beneficial uses of such property; without authorization and consent from the Patent Owner and without just compensation to the

46.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") on March 31, 2014 stayed the Plaintiff's complaint of a 28 U.S.C. § 1491(a), "Government Takings of a Patent under the Fifth Amendment Clause" and proceeded only on the 28 U.S.C. § 1498(a), "Government Infringement" claims.

47.     It is the belief of the Plaintiff that the Claims Court ("Government") decision to proceeded only on the 28 U.S.C. § 1498(a), "Government Infringement" claims,  has allowed the DOJ ("Government"), the DHS ("Government"), and the PTAB Court ("Government") to improperly "take" three independent patent claims (11, 74, and 81) of the '990 patent. The character of the Government's action was triggered when the "takings" caused a permanent invasion of the Plaintiff's property and eliminated all economically beneficial uses of such property by way of the Government's "takings" of Plaintiff's '990 patent.

48.     It is the belief of the Plaintiff that the Claims Court ("Government") decision to proceeded only on the 28 U.S.C. § 1498(a), "Government Infringement" claims,  has allowed the DOJ ("Government"),  and the Claims Court ("Government") to improperly "take" nine independent patent claims (1-9) of the '189 patent, eleven independent claims (13-23) of the '439 patent, and thirty-eight dependent claims (12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135, 148) of the '990 patent on what was flagged "jurisdictional discovery". The character of the Government's action was triggered when the "takings" caused a permanent invasion of the

Plaintiff's property and eliminated all economically beneficial uses of such property by way of the Government's "takings" of Plaintiff's '990 patent.

49.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, the Declaration of Dr. Sriram Vishwanath, that the "Government" knew, or should have known, should have been stricken from the record because he owned and was co-inventor of several patents and patent applications that covers wireless technology involving a communication device and that the Patent Owner's RE43,990 patent antedated his patents. Plaintiff believes the Government's action resulted in the "takings" of Plaintiff's three independent patent claims (11, 74, and 81) of the '990 patent. Dr. Vishwanath's claims involving a communication device can be found in provisional application 62/266,701 filed on 12-13-2015 (one month after the close of the IPR filed by DHS); patent application 15/377,902 filed on 12-13-2016 @ [0013] "Communications devices may be, e.g. mobile devices such as cell phones which may communize wirelessly to other user devices or base stations, fixed devices such as stationary base stations or communications devices which communicate, e.g., send and/or receive, RF signals"; the patent 10,110,306 issued on 10-23-2018. Dr. Vishwanath also filed on 12/03/2012, "Wireless communication methods, systems, and computer program products". After reviewing the patent application [US 20130083722 A1 or 13/701,449], the Plaintiff realized the very thing Dr. Vishwanath was fighting so hard to take away from the Patent Owner, he was equally fighting to get for himself. "The brief from Cato and ACUF reiterates the private property right… intellectual property. These amici cite an 1876 ruling: 'A patent for an invention

is as much property as a patent for land. The right rests on the same foundation... Neither an individual nor the public can trench upon or appropriate what belongs to the other.'"

50.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, eighteen prior art publications the DOJ ("Government"), the

DHS ("Government"), the Claims Court ("Government"), and the PTAB Court ("Government") knew, or should have known, did not antedate the priority filings (11-17-04) of the Plaintiff's inventions. The Plaintiff believes the Government's action to allow unqualified prior art is one of several ways the "Gov't" is "taking" the Patents asserted in Case No. 13-307C.

51.     It is the belief of the Plaintiff that when the Patent Owner introduced the Disclosure Document Deposit Request (Disclosure Document No. 565732) that was filed on Nov. 17, 2004 with the USPTO. The PTAB Court simply dismissed the document as being unimportant to the 2 ½ years spent prosecuting the RE43,990 patent asserted in the IPR; the estimated $45,000 dollars the Patent Owner spent on prosecuting the RE43,990 patent asserted in the IPR; and, the independent and dependent claims the Patent Owner will lose as a result of the PTAB Court choosing not to accept the Patent Owner's Disclosure Document. The Patent Owner's RE43,990 patent antedated Mostov's patent  under 102(b) and 102(e) – Mostov's Provisional Application 60/648,260 was filed on 01-28-2005. Plaintiff believes the Government's action resulted in the "takings" of Plaintiff's three independent patent claims (11, 74, and 81) of the '990 patent and Plaintiff's three substitute independent claims (154, 155, and 156) introduced in the IPR

52.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, three prior art patents (Astrin, Breed, and Mostov) that the DOJ ("Government"), the DHS ("Government"), the Claims Court ("Government"), the PTAB Court ("Government") knew, or should have known, did not antedate the priority filings (November 17, 2004)[1] of the Plaintiff's inventions. The Plaintiff believes the Government's action to allow unqualified prior art is one of several ways the "Government" is "taking" the Patents asserted in Case No. 13-307 C.

| 53. Reference | Filing Date | Publication Date | Basis for anticipation |
|---|---|---|---|
| U.S. Patent Application Publication No. 2006/0250235 ("Astrin") | | 11/09/2006 | 102(b) |
| U.S. Patent Application Publication No. 2006/0181413 ("Mostov") | 01/28/2005* | 08/17/2006 | 102(e) - 102(b) |
| U.S. Patent No. 7,961,094 ("Breed") | 11/29/2007 | | 102(e) |

* Mostov's Provisional Application [60/648,260] was filed on 01-28-2005. Plaintiff's Disclosure Document [565732] was filed on November 17, 2004.

---

[1] The Reissue U.S. Patent No. 43,990 patent ("'990 patent") is a reissue divisional of U.S. Patent No. 7,636,033 patent ("'033 patent") issued from U.S. Patent Application No. 12/155,573 ("'573 application") which is a continuation-in-part of the U.S. Patent Application No. 11/397,118 ("'118 application"), now U.S. Patent No. 7,385,497, ("'497 patent"). '118 application was filed on April 5, 2006 and a Disclosure Document Deposit Request (Disclosure Document No. 565732) was filed on November 17, 2004.  The DOJ ("Government") and the DHS ("Government") alleged that the following references were available as prior art under 35 U.S.C. 102(b) and (e) and therefore anticipate claims 11, 71 and 81 of the '990 patent.

54.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere

to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed

the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ

("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in

Case No. IPR2014-00714, eighteen prior art publications the DOJ ("Government"), the

DHS ("Government"), the Claims Court ("Government"), and the PTAB Court

("Government") knew, or should have known, did not antedate the priority filings (November

17, 2004) of the Plaintiff's inventions. The Plaintiff believes the Government's action to allow

unqualified prior art is one of several ways the "Government" is "taking" the Patents asserted in

Case No. 13-307 C.

55.     It is the belief of the Plaintiff that when the Patent Owner introduced the

Disclosure Document Deposit Request (Disclosure Document No. 565732) that was filed on

Nov. 17, 2004 with the USPTO to the PTAB, the PTAB Court simply dismissed the document as

being unimportant to the 2 ½ years spent prosecuting the RE43,990 patent asserted in the IPR;

the estimated $45,000 dollars the Patent Owner spent on prosecuting the RE43,990 patent

asserted in the IPR; and, the independent and dependent claims the Patent Owner will lose as a

result of the PTAB Court choosing not to accept the Patent Owner's Disclosure Document. The

Patent Owner's RE43,990 patent antedated Mostov's patent under 102(b) and 102(e) – Mostov's

Provisional Application 60/648,260 was filed on 01-28-2005. Plaintiff believes the

Government's action resulted in the "takings" of Plaintiff's three independent patent claims (11,

74, and 81) of the '990 patent and Plaintiff's three substitute independent claims (154, 155, and

156) introduced in the IPR.

56.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, the Declaration of Dr. Sriram Vishwanath, that the DOJ ("Government"), the DHS ("Government"), the Claims Court ("Government"), the PTAB Court ("Government") knew, or should have known, did not antedate the priority filings (November 17, 2004) of the Plaintiff's inventions. The Plaintiff believes the Government's action to allow an unqualified declaration as prior art is one of several ways the "Government" is "taking" the Patents asserted in Case No. 13-307 C.

57.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, the redundancy rulings of the PTAB Court ("Government"), that the DOJ ("Government"), the DHS ("Government"), the Claims Court ("Government"), the PTAB Court ("Government") knew, or should have known, that during the institution review of the Petitioners' petition for Inter Partes Review (IPR) and the Patent Owner's opposition to the IPR, the PTAB Court dropped Mostov as being redundant. The Patent Owner's patent [RE43,990] still antedated Astrin and Breed and the Patent Owner continued to argue Mostov throughout the proceedings. After eighteen months of litigation cost and time in the PTAB Court, the PTAB issued its Final Decision. In the PTAB Court's Final Decision, the PTAB added the Mostov patent back and dismissed the Astrin and Breed Patents as unqualified prior art. In *CRFD*

24

A118

*Research Ltd. v. Matal*, No. 2016-2198 (Fed. Cir. Dec. 5, 2017), the Federal Circuit determined

that the PTAB erred in its obviousness analysis, in part by failing to consider an argument the

IPR petitioner made in a ground that the PTAB determined was "redundant" to the instituted

grounds. The PTAB erred in its analysis, according to the court, because Hulu expressly

incorporated this argument in the instituted grounds, and the court determined that to refuse to

consider this argument "would also raise questions about the propriety of the Board's

redundancy decision." Plaintiff believes the Government's action to allow the opinions expressed

in the PTAB's Final Decision to be used as a guide for the direction the Claims Court should

adjudicate, is one of several ways the "Government" is "taking" the Patents asserted in Case No.

13-307 C.

58.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere

to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed

the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ

("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in

Case No. IPR2014-00714—under the allowed statues of 35 U.S.C. 102 and 35 U.S.C. 103—that

the DOJ ("Government"), the DHS ("Government"), the Claims Court ("Government"), the

PTAB Court ("Government") knew, or should have known, the rules governing the IPR

proceedings, only allow the petition under 35 U.S.C. 102 and 35 U.S.C. 103. Petitioner's IPR

petition included objections: 35 U.S.C. 101, "Operability"; 35 U.S.C. 112, "Lack of Utility"; 35

U.S.C. 112, "Indefiniteness"; 35 U.S.C. 120 "Benefit of Earlier Filing Date"; and, 35 U.S.C. 102,

"Anticipation" beyond the standard "single prior art patent" to "three prior art patents". The

Patent Owner introduced three substitute claims because the PTAB Court allowed the written

description objection. If the PO had left the description (§ 112) in the claims would have held

invalid and because I took the description (§ 112) out the claims were said to be invalid because

of broadening. Either way the Plaintiff claims was going to be "taken" by the PTAB

("Government"). "The PTAB may institute IPR proceedings only on the basis of certain prior

art that is potentially invalidating under § 102 (novelty) or § 103 (obviousness). The PTAB

may not institute IPR on any other unpatentability grounds, including, for example, § 101

(patentable subject matter) or § 112 (definiteness, enablement, written description)". Plaintiff

believes the Government's action resulted in the "takings" of Plaintiff's three independent patent

claims (11, 74, and 81) of the '990 patent and Plaintiff's three substitute independent claims

(154, 155, and 156) introduced in the IPR.

59.     It is the belief of the Plaintiff that the independent claims 13, 14, 15, 22, and 23 of

the asserted Patent 9,589,439 in Case No. 13-307 C, are significantly the same as independent

claims 1, 2, and 3 of the asserted Patent 9,096,189 in Case No. 13-307 C, that covers the

Plaintiff's "communication device" and/or "monitoring device", are significantly the same as

Reissued Patent RE43,990 independent claim 11. Plaintiff believes the Government's action

resulted in the "takings" of the independent patent claims listed above of the '439, '189, and '990

patent.

60.     It is the belief of the Plaintiff that the Claims Court ("Government"), which

initiated the unfair and unjust proceedings that was held at the PTAB Court ("Government") in

Case No. IPR2014-00714 participated in the "takings" of independent claims 11, 74, and 81 of

the '990 patent by allowing the unfair and unjust decisions of the PTAB Court ("Government")

to be carried over into Case No. 13-307 C.

61.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken"

independent claim 11 of the '990 patent; and, has "taken" the Plaintiff's use of independent

claims 13, 14, 15, 22, and 23 of the asserted '439 patent as substitute claims for independent claim 11 of the '990 patent in Case No. 13-307 C.

62.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of independent claims 1, 2, and 3 of the asserted '189 patent as substitute claims for independent claim 11 of the '990 patent in Case No. 13-307 C.

63.     It is the belief of the Plaintiff that the DOJ ("Government"), the DHS ("Government"), the PTAB Court ("Government"), and the Claims Court ("Government"), has unfairly and unjustly "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135, 148 of the '990 patent asserted in Case No. 13-307 C which depends on independent claims 11, 74, and 81 of the '990 patent that was unfairly and unjustly "taken" by the "Government".

64.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135, 148 of the ('990) patent asserted in Case No. 13-307 C which depends on the substitute independent claims 13, 14, 15, 22, and 23 of the asserted '439 patent and the independent claims 1, 2, and 3 of the asserted '189 patent, that are substantially and significantly the same as independent claim 11 of the '990 patent.

65.     It is the belief of the Plaintiff that the "takings" of the independent claims by the "Government" of the '439 and '189 patents that are substantially and significantly the same as independent claim 11 of the '990 patent, and the "takings" by the "Government" of the dependent claims of the '990 patent that depends on the substitute independent claims of the

'439 and '189 patents has resulted in a reduction in value of the Plaintiff's property by virtue of the "Government" dismissal of claims, access, disclosure, manufacture, development or use, by or for the Government and its third party awardees; has destroyed the Plaintiff's competitive edge; has had a substantial adverse impact (means unfavorable or harmful; preventing success or development) on "the reasonable investment-backed expectations" of the Plaintiff.

66. It is the belief of the Plaintiff that the independent claims 16, 17, and 18 of the asserted Patent 9,589,439 in Case No. 13-307 C, are significantly the same as independent claims 4, 5, and 6 of the asserted Patent 9,096,189 in Case No. 13-307 C, that covers the Plaintiff's "communication device" and/or "monitoring device", are significantly the same as Reissued Patent RE43,990 independent claim 74. Plaintiff believes the Government's action resulted in the "takings" of the independent patent claims listed above of the '439, '189, and '990 patent.

67. It is the belief of the Plaintiff that the Claims Court ("Government"), which initiated the unfair and unjust proceedings that was held at the PTAB Court ("Government") in Case No. IPR2014-00714 participated in the "takings" of independent claims 11, 74, and 81 of the '990 patent by allowing the unfair and unjust decisions of the PTAB Court ("Government") to be carried over into Case No. 13-307 C.

68. It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" independent claim 74 of the '990 patent; and, has "taken" the Plaintiff's use of independent claims 16, 17, and 18 of the asserted '439 patent as substitute claims for independent claim 74 of the '990 patent in Case No. 13-307 C.

69. It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of independent claims 4, 5, and 6 of the asserted '189 patent as substitute claims for independent claim 74 of the '990 patent in Case No. 13-307 C.

A122

70.     It is the belief of the Plaintiff that the DOJ ("Government"), the DHS ("Government"), the PTAB Court ("Government"), and the Claims Court ("Government"), has unfairly and unjustly "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135, 148 of the '990 patent asserted in Case No. 13-307 C which depends on independent claims 11, 74, and 81 of the '990 patent that was unfairly and unjustly "taken" by the "Government".

71.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135, 148 of the '990 patent asserted in Case No. 13-307 C which depends on the substitute independent claims 16, 17, and 18 of the asserted '439 patent and the independent claims 4, 5, and 6 of the asserted '189 patent, that are substantially and significantly the same as independent claim 74 of the '990 patent.

72.     It is the belief of the Plaintiff that the "takings" by the "Government" of the independent claims of the '439 and '189 patents that are substantially and significantly the same as independent claim 74 of the '990 patent, and the "takings" by the "Government" of the dependent claims of the '990 patent that depends on the substitute independent claims of the '439 and '189 patents has resulted in a reduction in value of the Plaintiff's property by virtue of the "Government" dismissal of claims, access, disclosure, manufacture, development or use with or for the public's benefit; by or for the "Government" and its third party awardees; has destroyed the Plaintiff's competitive edge; has had a substantial adverse impact (means

29

A123

unfavorable or harmful; preventing success or development) on "the reasonable investment-backed expectations" of the Plaintiff.

73.     It is the belief of the Plaintiff that the independent claims 19, 20, and 21 of the asserted Patent 9,589,439 in Case No. 13-307 C, are significantly the same as independent claims 7, 8, and 9 of the asserted Patent 9,096,189 in Case No. 13-307 C, that covers the Plaintiff's "communication device" and/or "monitoring device", are significantly the same as Reissued Patent RE43,990 independent claim 81. Plaintiff believes the Government's action resulted in the "takings" of the independent patent claims listed above of the '439, '189, and '990 patent.

74.     It is the belief of the Plaintiff that the Claims Court ("Government"), which initiated the unfair and unjust proceedings that was held at the PTAB Court ("Government") in Case No. IPR2014-00714 participated in the "takings" of independent claims 11, 74, and 81 of the '990 patent by allowing the unfair and unjust decisions of the PTAB Court ("Government") to be carried over into Case No. 13-307 C.

75.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" independent claim 81 of the '990 patent; and, has "taken" the Plaintiff's use of independent claims 19, 20, and 21 of the asserted '439 patent as substitute claims for independent claim 81 of the '990 patent in Case No. 13-307 C.

76.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of independent claims 7, 8, and 9 of the asserted '189 patent as substitute claims for independent claim 81 of the '990 patent in Case No. 13-307 C.

77.     It is the belief of the Plaintiff that the DOJ ("Government"), the DHS ("Government"), the PTAB Court ("Government"), and the Claims Court ("Government"), has unfairly and unjustly "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21,

22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119,

122, 124, 126, 132, 134, 135, 148 of the '990 patent asserted in Case No. 13-307 C which

depends on independent claims 11, 74, and 81 of the '990 patent that was unfairly and unjustly

"taken" by the "Government".

78.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken"

the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31,

32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135,

148 of the ('990) patent asserted in Case No. 13-307 C which depends on the substitute

independent claims 19, 20, and 21 of the asserted '439 patent and the independent claims 7, 8,

and 9 of the asserted '189 patent, that are substantially and significantly the same as independent

claim 81 of the '990 patent.

79.     It is the belief of the Plaintiff that the "takings" by the "Government" of the

independent claims of the '439 and '189 patents that are substantially and significantly the same

as independent claim 81 of the '990 patent, and the "takings" by the "Government" of the

dependent claims of the '990 patent that depends on the substitute independent claims of the

'439 and '189 patents has resulted in a reduction in value of the Plaintiff's property by virtue of

the "Government" dismissal of claims, access, disclosure, manufacture, development or use with

or for the public's benefit; by or for the "Government" and its third party awardees; has

destroyed the Plaintiff's competitive edge; has had a substantial adverse impact (means

unfavorable or harmful; preventing success or development) on "the reasonable investment-

backed expectations" of the Plaintiff.

80.     It is the belief of the Plaintiff that the Claims Court ("Government") abused its

discretion by disallowing the Plaintiff to bring an action against, or filed in its pleadings a claim

A125

against the Department of Justice (DOJ), more specifically an agency that operates under the

DOJ's umbrella; the National Institute of Justice (NIJ). The Plaintiff had an alleged infringement

claim against the NIJ. But when the issue was discussed in a teleconference hearing (Transcript;

December 02, 2016; Discovery). The Court disallowed the Plaintiff the opportunity to litigate

finding against the NIJ. Judge Braden states in a teleconference hearing on December 2, 2016;

"there is no such thing as the National Institute of Justice". NIJ is the research, development and

evaluation agency of the U.S. Department of Justice. NIJ awards grants and agreements for:

Research, development and evaluation (CFDA 16.560). NIJ funds physical and social science

research, development and evaluation projects about criminal justice through competitive

solicitations. The focus of the solicitations varies from year to year based on research priorities

and available funding. As a result of the Government actions outlined above, Plaintiff believes

the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the**

**door for the continued use by the government of Plaintiff's inventions without paying just**

**compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for

the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers

upon the patentee an exclusive property in the patented invention which cannot be appropriated

or used by the government itself, without just compensation…"

    81.    It is the belief of the Plaintiff that Judge Braden's "lack of impartiality" is the

only logical explanation to why Judge Braden issued on November 30, 2016 a Memorandum

Opinion and Order Denying the Government's Motion to Dismiss (Dkt. No. 94) pursuant to

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In a teleconference hearing

just two (2) days later on December 2, the Judge favored the DOJ ("Government") by giving

them another chance "a do-over" to file another Motion to Dismiss pursuant to Rules 12(b)(1)

A126

and 12(b)(6) of the Federal Rules of Civil Procedure on the very same devices she just ruled on (Transcript; December 02, 2016; Discovery). Under normal procedures the Department of Justice ("Government") would have at least had to ask to Judge for a chance to "redo" it over again and at least state the reason(s) why. The proper procedure would have been for the Department of Justice ("Government") to ask for leave of the Court to file a Motion for Re-consideration, stating the reason(s) why. If all else fails, the Department of Justice ("Government") could file a Motion of Appeal to the U.S. Court of Appeals for the Federal Circuit (CAFC), stating the reason(s) why. Judge Braden never gave an explanation to "why" she took it upon herself to grant the Department of Justice ("Government") leave to file another Motion to Dismiss on the same devices. The Plaintiff was ordered to do jurisdictional discovery on the same devices the he had done jurisdictional discovery on and had submitting his findings in a Response (Dkt. No.90; filed 07/05/2016) to the Government's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation…"

82.     It is the belief of the Plaintiff that the Claims Court ("Government") abuse its discretion by inappropriately and improperly, diverting and redirecting this case away from the products, devices, methods and processes the Plaintiff has alleged is being infringed by the Government to falsely accusing the Plaintiff of stating a Broad Agency Announcement (BAA) is

33

A127

a contract. Judge Braden initially states in her Opinion denying the Government's Motion to dismiss Certain Devices filed on November 30, 2016 (Dkt. No. 94). "*Hughes Aircraft Co.*, 534 F.2d at 898 (finding that the government's participation in a satellite program was "for the Government," because the program was vital to the military defense and security of the United States). Moreover, under section 1498(a), "Government authorization or consent" can be implied by circumstances. See TVI Energy Corp, 806 F.2d at 1060'. In this case, the February 12, 2016 Amended Complaint alleges that DHS contracted with iControl to develop and commercialize M-Lock. This contractual relationship supports a reasonable inference that the Government authorized the manufacture and use of the infringing device." Therefore, it was the M-Lock the Plaintiff is alleging the Government is infringing, not the contract with iControl. The Judge later states in her opinion on March 29, 2018 "**e. Patent Infringement Allegations Concerning Broad Agency Announcements Must Be Dismissed Under RCFC 12(b)(6)... As a result of** contracts with the [DNDO], Passport Systems, Inc., Panasonic Corporation, and the Samsung Group for the development and commercialization of the l"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone; 2"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone; NetS2 SmartShield G300 Radiation Detector Samsung Galaxy s6 Smartphone; NetS2 SmartShield G500 Radiation Detector Samsung Galaxy s6 Smartphone; and the Passport Systems Base Control Unit (BCU) "TOUGHBOOK 31" Panasonic Laptop... Indeed, the Fifth Amended Complaint fails to identify a single "contract" with the DNDO. Instead, it alleges only that the DNDO issued a BAA; a BAA, however, is not a "contract." *See* 48 C.F.R. § 2.101(b) (defining a "BAA" as "a general announcement of an agency's research interest including criteria for selecting proposals and soliciting the participation of all offerors capable of satisfying the Government's needs"). Again, without more, the Fifth Amended Complaint has not met the

A128

requirements of *Twombly* and *Iqbal.* And, conclusory allegations that the Government used or

authorized the use of the "Samsung Galaxy s6 Smartphone" in a manner that infringes Plaintiffs

patents are likewise insufficient, as such "(t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678; *see also*

*Sioux Honey Ass 'n,* 672 F.3d at 1062 (holding that a complaint "require[s] more than labels and

conclusions"). For these reasons, the court has determined that the patent infringement

allegations contained in paras. 161-67 of the August 10, 2017 Fifth Amended Complaint must be

dismissed under RCFC 12(b)(6)." Again, as noted above, the Plaintiff is alleging the

Government is infringing the numerous devices manufactured as a result of contracts with

DNDO, not the contracts themselves. As a result of the Government actions outlined above,

Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents

and has **open the door for the continued use by the government of Plaintiff's inventions**

**without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice

Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century:

"[A patent] confers upon the patentee an exclusive property in the patented invention which

cannot be appropriated or used by the government itself, without just compensation…"

83.     It is the belief of the Plaintiff that the Claims Court ("Government") abuse its

discretion for failing to realize that according to the Tucker Act the Federal Claims Court has

jurisdiction over all claims arising under a Federal Contract. Judge Braden initially states in her

Opinion denying the Government's Motion to dismiss Certain Devices filed on November 30,

2016 (Dkt. No. 94). "The court has held that a research grant or cooperative agreements from the

National Science Foundation (NSF) and the National Institute of Health (NIH) was a contract

within Tucker Act jurisdiction. The National Science Foundation (NSF) and the National

A129

Institute of Health (NIH) waiver of sovereign immunity under federal law within the Tucker Act, provides the United States Court of Federal Claims with jurisdiction over all claims arising under a Federal Contract and '[t]here is no further jurisdictional requirement that plaintiff make additional nonfrivolous allegation[s] that [he] is entitled to relief under the relevant money-mandating source'". Also, '[t]he February 12, 2016 Amended Complaint's NSF claims also allege sufficient facts to plausibly establish that the use of the accused devices was with the authorization or consent of the Government.' Authori-zation or consent can be implied from the circumstances." Judge Braden later states in her Opinion filed on March 29, 2018, (Dkt. No. 130). "The court does not have jurisdiction under 28 U.S.C. § 1498(a) to adjudicate patent infringement allegations concerning NSF and NIH grants and cooperative agreements, because any benefit to the Government, at best, would be incidental. In addition, none of the grants or cooperative agreements evidence any "express or implied authorization and consent by the [G]overmnent… Likewise, the award of NSF and NIH grants does not evidence implied authorization, because the Government does not direct or exercise control over the activities of awardees. Although the cooperative agreements may involve a measure of Government involvement, they do not contain any text evidencing Government "authorization [or] consent to infringe another's patent." As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture*, 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation…"

84. Upon information and belief, Judge Braden has "taken" all the independent claims asserted in the Final Amended Complaint of the '439 patent, and all of the independent claims in the Amended Complaint of the '189 patent that are the Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) devices (e.g. smartphones and other consumer devices). Sixty-one of the seventy-two alleged 28 U.S.C. 1498 "Government Infringement" claims of the Plaintiff in the Final Amended Complaint are relating to the Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) devices (e.g. smartphones and other consumer devices). Judge Braden made the following statement in the Memorandum Opinion and Order (Dkt. No. 130; filed 03/29/2018) "The paragraphs in the Fifth Amended Complaint that include patent infringement allegations "relating generally to smartphones and other consumer devices"... To support this allegation, the Fifth Amended Complaint repeatedly cites to paras... of the Fifth Amended Complaint. These paragraphs describe the Government's intent to "allow" or "approve" the "use" of various "smartphones and other consumer devices," e.g., "the iPhone... The Fifth Amended Complaint, however, does not allege that the Government's intent to "allow" or "approve" the use of "smartphones and other consumer devices" infringes Plaintiffs patents. Instead, the Fifth Amended Complaint alleges that the Government's use of these devices in combination with other "devices" or "programs," e.g., the "'Cell-All' initiative," infringes Plaintiffs patents... No factual allegations, however, support assuming that the Government used or authorized the use of these other "devices" or "programs" to infringe Plaintiffs patents... For these reasons, the court has determined that even if the August 10, 2017 Fifth Amended Complaint established jurisdiction as to the patent infringement allegations contained in paras... of the Fifth Amended Complaint, the allegations contained therein failed to state a claim upon which relief may be granted and must be dismissed under RCFC 12(b)(6)." The DOJ

37

A131

("Government") and the Claims Court ("Government") denial and dismissive attitude that the
"use by or manufacture for the Government"; that there was never "authorization and consent";
that the Plaintiff "failed to state a claim upon which relief may be granted and must be dismissed
under RCFC 12(b)(6)"; and, private conduct incidentally benefitting the Government does not
constitute use "for the benefit of the Government", never existed, has resulted in the "takings" of
Plaintiff's patents. Referring back to paras. 11 and 12 of this document, the Plaintiff has
produced a CD **Vol. I, Appx2** of the "Cell-All" initiative and an outline of minutes of where
certain information can be viewed that rebuts the opinion of the Claims Court. It is the belief of
the Plaintiff that the Government has "taken" the Plaintiff's '439 and '189 patents so that a
determination of whether the Government has infringed Plaintiff's patents cannot be made.

85.     It is the belief of the Plaintiff, that Judge Braden's "Lack of Impartiality" in the
Case (13-307 C) of ordering the Plaintiff to produce **all** of his discovery to the DOJ and never
ordered the DOJ to do the same, created an unfair advantage for the DOJ and has resulted in the
eventual "takings" of Plaintiff's patents. On May 24, 2017, the court convened a telephone status
conference. Pursuant to the status conference, the court grants Plaintiff leave to file a Final
Amended Complaint and a Final Amended Claim Chart by August 15, 2017. The court ordered
the Plaintiff in the telephone status conference: "to file a clean amended complaint that includes
**all** of your [Plaintiff] concerns, **all** of your [Plaintiff] charges against the Government in one
document"… "You're going to put together a **whole** fifth and final complaint and a final claim
chart, two documents". Judge Braden later states in her Opinion filed on March 29, 2018: Dkt.
No. 130) "The Fifth Amended Complaint also fails to allege that "the accused use or
manufacture was undertaken ... for the Government's benefit." *See Hughes Aircraft Co.,* 534 F.2d
at 897. The Fifth Amended Complaint contains no <u>factual</u> allegations establishing anything more

than "incidental benefit" to the NSF. *See Advanced Software Design Corp.,* 583 F.3d at 1379

(holding that "an interest in [a] program generally, or [where the Government] funds or

reimburses all or part of [a program's] costs, is too remote to make the [G]overnment the

program's beneficiary for the purposes underlying § 1498" (quoting *Larson,* 26 Cl. Ct. at 369));

*see also IRIS Corp.,* 769 F.3d at 1362 ("Incidental benefit to the [G]overnment is insufficient" to

satisfy the requirements of 28 U.S.C. § 1498(a).). Nor does the Fifth Amended Complaint allege

that "the Government gave its authorization or consent for the accused use or manufacture." *See*

*Hughes Aircraft Co.,* 534 F.2d at 897. The Fifth Amended Complaint does not contain any

<u>factual</u> allegations establishing that the NSF, at any time, authorized or consented to infringing

use or manufacture. For example, the Fifth Amended Complaint does not cite any portions of the

NSF grants or communications between the NSF and grant awardees "expressly" or "implicitly"

authorizing infringing conduct. *See Larson,* 26 Cl. Ct. at 369-70 ("[A]uthorization or consent

requires explicit acts or extrinsic evidence sufficient to prove the [G]overnment's intention to

accept liability for a specific act of infringement."). Nor does the Fifth Amended Complaint

include any <u>factual</u> allegations that could be construed as "express" or "implicit" authorization or

consent by the NSF to infringe Plaintiffs patents. *See Hughes Aircraft Co.,* 534 F.2d at 901

(holding that implied authorization may be presumed when the Government provides

"instructions ... specifications [,] or drawings which impliedly sanction and necessitate

infringement"); *see also IRIS Corp.,* 769 F.3d at 1362 (holding that "the [G]overnment ... clearly

provided its authorization or consent [,] because [the contractor] ... cannot comply with its legal

obligations without engaging in the allegedly infringing activities"). Instead, each of the NSF

grants incorporated a standard clause advising that the NSF "cannot assume any liability for ...

claims arising out of any work supported by an award for unauthorized use of patented ...

materials" or, more generally, "with respect to ... property of ... third parties." Therefore,

awardees were warned that the use of "property of ... third parties," including "patented ...

materials," was "unauthorized." *See Carrier Corp.,* 534 F.2d at 247-49 (holding that the

Government "cap limit ... authorization and consent" by "inclusion ... of a standard clause [that]

limits the Government's authorization and consent"). For these reasons, the court has determined

that the patent infringement allegations contained in paras. 184-85, 199-200, 235-36, 260-61,

265-66, 270-71, 275-76, 280-81, 285-86, 290-91, 295-96, 300-01, 305-06, and 350-51 of the

August 10, 2017 Fifth Amended Complaint failed to satisfy Plaintiffs burden to establish

jurisdiction under 28 U.S.C. § 1498(a). Further, the Government failed to produce the findings of

the at least seventy-two Freedom of Information (FOIA) Request relating to the seventy-two

infringement Claims asserted in Case No. 13-307 C. The Plaintiff submitted three hundred,

seventy-six FOIA requests to the DOJ ("Government"); the Claims Court ("Government"), and

the numerous various "Government" agencies in the third quarter of the year 2015. Included

were the seventy-two infringement claims asserted in the Case No. 13-307 C. Plaintiff did not

receive from the DOJ ("Government") and the Claims Court ("Government"), and the numerous

various "Government" agencies any of the information requested and needed to answer the

factual requirements of Judge Braden in a jurisdictional discovery. As a result of the Government

actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189,

'891, and '990 patents.

     86.    It is the belief of the Plaintiff that the Claims Court ("Government") has erred in

its decision regarding pre and post issuance. Judge Braden made the following statement in the

Memorandum Opinion and Order (Dkt. No. 130; filed 03/29/2018). "**g. Patent Infringement**

**Allegations Concerning Unissued Patent Applications and Pre-Issuance Use or**

**Manufacture Must Be Dismissed Under RCFC 12(b)(l)...**The Government argues that patent infringement allegations concerning... pre-issuance use or manufacture of the '439 Patent should be dismissed under RCFC 12(b)(l)... the '439 Patent issued on March 7, 2017, but the Fifth Amended Complaint alleges infringement of the '439 Patent, based on Government "programs" that were cancelled in April 2014, almost three years prior to issuance of the '439 Patent (a June 10, 2014 United States Government Accountability Office Report, explaining the DHS's decision to cancel the "Bio Watch Gen-3" program in April 2014). In addition, the Fifth Amended Complaint alleges infringement of the '439 Patent, based on NSF grants that expired prior to issuance of the '439 Patent. Am. Comp. paras. 184-85, 199-200, 260-61, 275-76, 280-81, 295-96, and 305-06. The court's jurisdiction under 28 U.S.C. § 1498(a) is limited to allegations "against the [G]overnment arising out of post-issuance [G]overnment use [or manufacture] of an invention." The Plaintiff has demonstrated he has a right to receive post-issuance damages for the ongoing and continuing use and manufacture of the seventy-two (72) alleged infringing products, devices, etc. Plaintiff never alleged infringement of a Government contract, solicitation, grant, or program (i.e. DNDO solicitation; NSF and NIH grants; Bio-Watch Gen 3 program). The Plaintiff is alleging the Government is infringing the numerous devices manufactured as a result of contracts, solicitations, grants, or programs, not the contracts, solicitations, grants, or programs themselves. The Plaintiff has further demonstrated he has a right to receive pre-issuance damages because the Plaintiff has satisfied the "actual notice" requirement and the "substantially identical" requirement under Section 154(d). As to damages, the jury awarded $1,405,708 in lost profit damages starting in September 2007, the time of the patent's issuance, and $167,455 in reasonable-royalty damages for the pre-issuance period starting in October 2006, the date the patent application was published. With respect to pre-

41

A135

issuance damages, the district court had already ruled, in denying a summary-judgment motion by MGA, that such damages would be permissible under 35 U.S.C. § 154(d) because the scope of the issued claims are substantially identical to the scope of the published application's claims. That case, *Innovention Toys, LLC v. MGA Entm't, Inc.*, 611 Fed. Appx. 693, 695 (Fed. Cir. 2015), explained that "[C]laims are 'identical' to their original counterparts if they are 'without substantive change.'" As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation…"

87.     It is the belief of the Plaintiff that Judge Braden erred in her decision to allow the opinions of the PTAB Court ("Government") to be entered into this Case No. 13-307 C. The Claims Court ("Government") and the PTAB Court ("Government") cooperatively, alone with the DOJ ("Government"), in collaboration, join forces to proceed with the "Takings" of Plaintiff's independent claims 11, 74, and 81 of the '990 Patent in the Inter Partes Review (IPR); independent substitute claims 154-156 asserted in the Inter Partes Review (IPR), and dependent claims of the '990 Patent asserted in this Case No. 13-307 C. The Plaintiff asserted in Case No. 13-307 C, the substitute independent claims of the '439 patent that the dependent claims of the '990 Patent depend on, in at least fifty-nine (59) of the infringement claims of Case No. 13-307 C. The DOJ ("Government") in its Motion; DEFENDANT THE UNITED STATES' LIST OF REMAININC PATENT INFRINGEMENT CLAIMS & REOUEST FOR STATUS

CONFERENCE; Case 1:13-cv-00307-EGB Document 148 Filed 11/02/18; GOVERNMENT'S LIST OF REMAINING PATENT INFRINGEMENT CLAIMS writes: "In answer to the Court's Orders, the Government submits that the following patent allegations[2] have not been expressly addressed by the Court… [2]The cited references are the accused instrumentalities identified in Plaintiff's Fifth Amended Complaint. DKT. 120, Complaint. For clarity we have also provided the particular patents and claims of those patents that are alleged to be infringed. The list does not include instances where Plaintiff asserted dependent claims (i.e., of the dismissed '439 Patent), but did not allege infringement of the underlying independent claim." Senior Judge Eric G. Bruggink; Order; Case 1:13-cv-00307-EGB Document 151 Filed 11/28/18 writes: "Plaintiff does not dispute that the eighteen claims at issue only allege infringement of dependent patent claims. As a matter of law, infringement of dependent patent claims is insufficient to demonstrate infringement of the patent entitling Plaintiff to compensation… Since Plaintiff could not prevail on its infringement claim, there is no reason for these patent claims to proceed to claim construction. The court therefore grants defendant summary judgement regarding the eighteen patent infringement allegations at issue. The eighteen patent infringement allegations set forth in the chart at the bottom of this order are dismissed." As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439' and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**.

88.     Upon information and belief Judge Braden, in the Memorandum Opinion filed on March 29, 2018 in Case No. 13-307 C, inability to clarify exactly what infringement claims was actually dismissed for lack of jurisdiction has resulted in confusion amongst the Partes and the current presiding Judge. When Plaintiff asked Judge Braden what infringement claims were

43

A137

dismissed for lack of jurisdiction, she couldn't provide that information (see the Transcript of August 17, 2018). Instead the Judge granted authority to the DOJ (Defendant) to pick-and-chose what infringement claims they believe were dismissed (this of course created a conflict of interest). The "Government" determined all of the fifty-nine (59) infringement claims involving the '439 patent was dismissed. When the Plaintiff provided the DOJ ("Government") with a worksheet list of all seventy-two infringement claims and ask the DOJ ("Government") to check off which of the seventy-two infringement claims was dismissed because of lack of jurisdiction the DOJ ("Government") could not provide the answers. When the Plaintiff provided the Claims Court ("Government"); Senior Judge Eric G. Bruggink presiding, with the same worksheet list of all seventy-two infringement claims and ask the Claims Court ("Government") to check off which of the seventy-two infringement claims was dismissed because of lack of jurisdiction the Claims Court ("Government"); Senior Judge Eric G. Bruggink presiding, could not provide the answers. As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439' and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**.

89.     It is the belief of the Plaintiff that Senior Judge Eric G. Bruggink has decided to continue with the "Takings" efforts of the DOJ ("Government) and the Claims Court ("Government") Judge Susan Braden. The Plaintiff has tried on several occasions to "fix" the problems by submitting Motions, only to have those Motions denied or stricken from the record. Plaintiff was also ordered not to submit any more Motions. Senior Judge Eric G. Bruggink; Order; Case 1:13-cv-00307-EGB Document 151 Filed 11/28/18 writes: "Next, to the extent that plaintiff's submission can be construed as a motion pursuant to RCFC 60(b), the court denies

A138

plaintiff's motion for relief from the March 29, 2018 opinion granting in part defendant's motion to dismiss. Plaintiff has not demonstrated that any of the grounds listed in RCFC 60(b)(1)-(6) are present that would entitle him to relief from dismissal of the patent infringement allegations addressed in that opinion…Likewise, to the extent plaintiff's submission can be construed as a motion for reconsideration under RCFC 59(a)(1) of the March 29, 2018 opinion granting in part defendant's motion to dismiss or the denial of plaintiff's motion for entry of a final judgement or for a certificate of appeal pursuant to RCFC 54(b), the court denies plaintiff's motion." As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**.

90.     It is the belief of the Plaintiff that Senior Judge Eric G. Bruggink has decided to continue with the "Takings" efforts of the DOJ ("Government) and the Claims Court ("Government") Judge Susan Braden. The Plaintiff filed a response (Case 1:13-cv-00307-EGB Document 156 Filed 01/09/19) to Senior Judge Eric G. Bruggink; Order (Case 1:13-cv-00307-EGB Document 151 Filed 11/28/18). The Judge docketed the Response under "Notice" when in fact it was a request for discovery documents. The Judge fail to "Order" the DOJ ("Government) to produce the discovery documents. The Plaintiff writes in the response: "Before the Plaintiff can respond to the Claim Court's order, '[i]f Plaintiff can identify post-issuance activity incorporated within these paragraphs that is not otherwise dismissed, the court will reconsider dismissal of those relevant portions', the Plaintiff specifically seeks all documents relating to (a)-request for proposals or applications; (b)- the awards, contracts, agreements or grants made to the third parties that includes the authorization and consent; (c)- the name of the products, devices, etc. and, (d)- date of commercialization for the seventy-two products, devices, etc. The Claim

Court has provided the Government with the tools to retrieve those documents from the various Government Agencies in the past (See the December 2, 2016 Transcript) and should therefore not have a problem doing the same. Plaintiff has a right to all of the Government's discovery documents pertaining to this case, but has not yet received any." As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**.

91.     It is the belief of the Plaintiff that United States Court of Appeals for the Federal Circuit (CAFC) has decided to continue with the "Takings" efforts of the DOJ ("Government) and the Claims Court ("Government"). The Plaintiff filed a PETITION for Writ of Mandamus (with appendix) pursuant to Fed. R. App. P. 21 by Petitioner Larry Golden. Service: 09/28/2018 by US mail. [554658] [MJL] [Entered: 10/03/2018 04:40 PM]. The CAFC ("Government") denied the petition and writes: Mr. Golden filed this petition asking the court to either adjudicate his takings claims or to direct the Claims Court to decide them… First, Mr. Golden has not clearly and indisputably shown that the Claims Court erred in staying his takings claims. The Claims Court concluded that those takings claims appeared to be duplicative of his claims under § 1498(a). Adjudication of the takings claims could therefore await adjudication of the § 1498(a) claims. That determination has not been shown to be clearly contrary to the law or the record here. Second, Mr. Golden has not shown that any delay here on the part of the Claims Court in adjudicating Mr. Golden's claims is so egregious as to warrant mandamus relief. The Claims Court has adjudicated a number of the claims asserted by Mr. Golden and has recently sought input from the parties as to what remains and how the case should proceed. We expect that all claims in the case will now be addressed. Moreover, any delay in reaching a final

46

A140

decision in this case is in no small way attributable to Mr. Golden's own strategy of adding claims every time he believes the government has prolonged this case. Finally, Mr. Golden has not shown entitlement to mandamus relief concerning the Claims Court's rejection of his motion to supplement his complaint, denial of his motion for summary judgment, and determinations concluding his claims, because he has not shown that an appeal after a final judgment in the case is not an adequate alternative means to obtain the relief he seeks. Plaintiff believes that at any time a case is filed by a Complainant under the statue 28 U.S.C. § 1491(a) "Government Takings of a Patent under the Fifth Amendment Clause" the Claims Court's options are to dismiss the case for lack of subject matter jurisdiction or to adjudicate the case as is. It is not within the Claims Court authority to change, at their discretion, the statue for which the Complainant has filed simply because the DOJ ("Government") and the Claims Court ("Government") believes the § 1491(a) appeared to be duplicative of his claims under § 1498(a). There were no claims under the § 1498(a) because the Plaintiff had not officially introduced any when the Judge made that decision for the Plaintiff. What law states, as the Appeals Court ("Government") has determined, "[a]djudication of the takings claims could therefore await adjudication of the § 1498(a) claims? Therefore it is contrary to the law or record. The Plaintiff has a right, according to the 28 U.S.C. § 1498(a) that states: "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture", to continue filing infringement claims against the Government. The key word in the statue is "Whenever". It means "at any time"; at all times"; "at whatever time"; "on whatever occasion", and, it also

47

A141

means, "a lack of restriction". It doesn't matter that the Plaintiff increased the number of infringement claims when the Claims Court ("Government") ordered the Plaintiff to do in the Amended Complaint (Dkt. No. 68, filed on 02/12/2016) and the Final Amended Complaint (Dkt. No. 120, filed on 08/10/2017). The reason for the delay in time is because the Claims Court ("Government") changed the statue. As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation…"

## RELIEF SOUGHT

92.     Plaintiff respectfully requests the following relief:

A.  entry of a judgment in favor of Plaintiff against Defendant ("Government") on all of Plaintiff's claims;

B.  entry of a judgment that Defendant has "Taken" Plaintiff's property within the meaning of the Fifth Amendment to the United States Constitution;

C.  entry of judgment awarding Plaintiff his full and just compensation, in an amount to be proven at trial, for the Defendant's ("Government") unconstitutional "taking" of Plaintiff's  property, including but not limited to expected royalties and other payments related to use of the patents;

D.  an accounting for damages suffered by Plaintiff and judgment requiring Defendant ("Government") to compensate Plaintiff for such damages;

E.  an award of any pre-judgment and post-judgment interest, costs, fees, expenses, and attorneys' fees to which Plaintiff may be entitled; and

F.  such other and further relief as the Court may deem just and proper.

93.    Plaintiff, on behalf of itself, hereby asserts that the amount claimed to be owed by Defendant ("Government") is greater than $1 billion.

## CONCLUSION

The attached Exhibits are in support of the Petitioner's 28 U.S.C. § 1491 "Gov't Takings case:

EXHIBIT 1: Copy of the Plaintiff's Disclosure Document Deposit Request (Dis. Doc. No. 565732) filed at the USPTO on 11/17/2004.

EXHIBIT 2: Requirements for a 28 U.S.C. § 1491 "Fifth Amendment Government Takings of a Patent.

EXHIBIT 3: Additional Notices given the United States.

EXHIBIT 4: Sample "Testing Mechanism" Claim Chart for the 28 U.S.C. § 1491 "Gov't Takings.

EXHIBIT 5: Copy of the list Plaintiff provided to both the DOJ ("Government") and the Claims Court ("Government"); Senior Judge Eric G. Bruggink presiding, to check off which of the seventy-two infringement claims was dismissed for lack of jurisdiction (see paragraph 88 of this document).

Volume I, Appendix 1, CD of Discovery Documents

Volume I, Appendix 2, CD of Cell-All Project

A143

Respectfully submitted,

s/
Larry Golden

Plaintiff, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

# In the United States Court of Federal Claims

No. 19-104C
(Filed: May 14, 2019)
NOT FOR PUBLICATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| LARRY GOLDEN, | Takings; takings of intangible patented subject matter; 28 U.S.C. § 1491 (2012); 28 U.S.C. § 1498(a) (2012); subject matter jurisdiction; duplicate claims. |
| *Plaintiff,* | |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER GRANTING
## DEFENDANT'S MOTION TO DISMISS

Pending before the court is defendant's motion to dismiss plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims. The motion is fully briefed. Oral argument is deemed unnecessary. The court grants defendant's motion, because plaintiff's complaint alleges a duplicative claim over which this court lacks jurisdiction and which also fails to state a claim.

The duplicate claims arise in a different proceeding, *Golden v. United States*, No. 13-307C. In that action, Mr. Golden first alleged in 2013 that the government was infringing one of his patents under 28 U.S.C. § 1498(a) (2012).[1] The court permitted Mr. Golden to amend his complaint four times over the next four years, and Mr. Golden added more patents and claims of infringement with each amendment. After plaintiff alleged for the first time in an amended complaint that the United States had "taken" the subject matter of his at least six of his patents, the court stayed his takings claims to consider the patent infringement allegations first, because the claims appeared to duplicate each other.

---

[1] The background facts are drawn from the briefing on this motion and the procedural history developed in *Golden*, No. 13-307C.

Amid amended complaints and procedural motions, the government petitioned for *inter partes review* ("IPR") of plaintiff's '990 Patent, just one of many patents involved in these cases, before the USPTO Patent Trial and Appeal Board. The PTAB decided to initiate IPR of three independent claims of the '990 Patent. Mr. Golden made a non-contingent motion to amend those claims. The PTAB's final decision granted Mr. Golden's motion to amend, which resulted in cancellation of those three independent claims of the '990 Patent. The PTAB denied plaintiff's request for rehearing.

After plaintiff's fourth amended complaint, the government moved to dismiss certain of Mr. Golden's patent infringement claims. The court denied that motion because plaintiff had stated sufficient facts to survive a motion to dismiss. Plaintiff sought to amend his complaint yet again. The court permitted plaintiff to file a fifth complaint comprehensively stating his claims against the United States. His 2017 final complaint alleged seventy-two patent infringement counts involving approximately ten patents, along with takings claims paralleling each patent infringement claim. *Golden*, No. 13-307C, ECF No. 120. Defendant moved to partially dismiss that complaint. The court granted defendant's motion, dismissing many of plaintiff's patent infringement claims. Mr. Golden appealed the dismissal to the Federal Circuit. The Federal Circuit dismissed the appeal. Mr. Golden next petitioned the Federal Circuit for a writ of mandamus, which the Federal Circuit denied.

*Golden*, No. 13-307C, was transferred to this judge in September 2018. The court has since lifted the stay on consideration of plaintiff's takings claims. The government filed a motion to dismiss plaintiff's takings claims and the court granted that motion. *See* Order of May 8, 2019. The court also determined how many patent infringement allegations remain and dismissed counts that relied solely on dependent patent claims. Mr. Golden's remaining patent infringement claims in the related action are awaiting claim construction.

Mr. Golden filed the present claim on January 17, 2019, alleging that, under 28 U.S.C. § 1491(a), he is entitled to compensation for the unauthorized use "for and by the United States, of inventions described in and covered by [several] United States Patent[s]." Compl. 1. Plaintiff alleges that his claim arises out of the Takings Clause of the Fifth Amendment of the United States Constitution and that various arms of the government, including the Department of Justice, Department of Homeland Security, this court, the Federal Circuit, and the PTAB, have taken the subject matter of his patents. The court consolidated this action with *Golden*, No. 13-

2

307C, on January 29, because the two claims share questions of law and fact.

Plaintiff's complaint, in large part, repeats the substance of his original takings claims in *Golden*, No. 13-307C. For instance, the jurisdiction section of both complaints alleges unauthorized use by the United States of the same patents. *Comp.* Compl. 3 *with Golden*, No. 13-307C, Compl. ¶ 3. He simply adds allegations that this court, the PTAB, and the Federal Circuit, in addition to the other accused entities, have also "taken" the subject matter of his patents.

"A trial court has discretion to dismiss a complaint which simply duplicates another pending related action." *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1577 (Fed. Cir. 1991). Mr. Golden's complaints repeat the same substantive allegations that the United States has "taken," through unauthorized use, the subject matter of his patents. Because Mr. Golden's takings claims are duplicates, we dismiss the complaint to the extent that it alleges the same takings dismissed in *Golden*, No. 13-307C.

Even if plaintiff's complaint did not duplicate his other pending action, we must also dismiss plaintiff's takings claim for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h). Plaintiff, even though he is proceeding *pro se*, must demonstrate that the court has jurisdiction over his claim. *Reynolds v. Army & Air Force Exchange Serv.*, 846 F.2d 746, 747-48 (Fed. Cir. 1988). The court accepts as true plaintiff's factual allegations but is not required to credit conclusory or frivolous statements. *Id.*; *see also Bell v. Hood*, 327 U.S. 678, 682 (1946).

As discussed in our order granting defendant's motion to dismiss the takings claims in *Golden*, No. 13-307C, plaintiff cannot label what amounts to a patent infringement claim a "taking" in order to proceed under this court's Tucker Act jurisdiction. The Supreme Court first held that the Tucker Act did not waive the United States' sovereign immunity for the unauthorized use of a patent in 1894. *Schillinger v. United States*, 155 U.S. 163, 168-69 (1894). Congress thereafter passed the predecessor to 28 U.S.C. § 1498(a), waiving sovereign immunity with respect to certain patent claims against the United States. Since then, patent infringement claims are pursued exclusively under § 1498(a). *Zoltek v. United States*, 442 F.3d 1345, 1350-53 (Fed. Cir. 2006) (reciting the history between *Schillinger* and § 1498 and finding that *Schillinger* remains the law), *vacated on other grounds*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc). In his response, plaintiff in fact relies on *Christy, Inc. v. United States*, 141 Fed. Cl. 641, 657-60 (2019) in which this court found that "patent rights are not cognizable property interests for

3

Takings Clause purposes." This court does not have jurisdiction to decide claims for patent infringement under the Tucker Act.[2]

Finally, as we held in the related action, plaintiff fails to state a claim to the extent that his complaint alleges a taking by the actions of this court, the Federal Circuit, or the PTAB. When considering a motion to dismiss under Rule 12(b)(6), the court takes factual allegations as true and makes reasonable inferences in plaintiff's favor, but plaintiff's complaint must plead facts that demonstrate "plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[L]abels and conclusions" are not sufficient to state a claim. *Twombly*, 550 U.S. at 555. Here, plaintiff must at least point to "a cognizable Fifth Amendment property interest" and a "government[] action that amount[s] to a compensable taking of that interest." *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1348 (Fed. Cir. 2013).

Plaintiff appears to argue that the cancellation of his '990 independent claims in the IPR at the PTAB constitutes a taking by the PTAB. Setting aside whether an action by the PTAB could ever constitute a government taking, plainly the cancellation was the result of Mr. Golden's voluntary amendment of his claims. Nor could the actions of the Federal Circuit and this court result in a taking of patent rights. Both courts *adjudicate* rights in patents, and, in any event, as Mr. Golden himself notes, both courts have allowed his patent claims to continue in Docket No. 13-307C.

In sum, plaintiff's takings claim duplicates his related patent action in Docket No. 13-307C, asserts claims over which this court does not have jurisdiction, and fails to state a takings claim. Defendant's motion is granted pursuant to Rule 12(b)(1) and 12(b)(6). Plaintiff's complaint is therefore dismissed. The Clerk is directed to enter judgment accordingly.

ERIC G. BRUGGINK
Senior Judge

---

[2] Plaintiff is not without recourse. His remaining patent infringement claims are moving on to claim construction. *Golden*, No. 13-307C, May 8, 2019 Order at 5.

4

7018 0040 0001 1393 4304